UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SYNCHRONOSS TECHNOLOGIES, INC., <br> Plaintiff, <br> v. <br> DROPBOX INC., et al., <br> Defendants. | Case No. 4:16-cv-00119-HSG (KAW) <br><br> **ORDER ON JOINT DISCOVERY LETTER** <br> Re: Dkt. Nos. 207, 219 |

On August 22, 2018, Plaintiff Synchronoss Technologies, Inc. ("Plaintiff" or "Synchronoss") and Defendant Dropbox Inc. ("Defendant" or "Dropbox") (collectively, "the parties") filed a redacted Joint Discovery Letter Brief. (Dkt. No. 207.) Also on August 22, 2018, Dropbox filed a Motion to File Under Seal portions of the parties' aforementioned Joint Discovery Letter Brief ("Motion to File Under Seal"). (Dkt. No. 206.) On August 29, 2018, the Court denied Dropbox's aforementioned Motion to File Under Seal. (Dkt. No. 215.) Subsequently, on September 5, 2018, the parties filed an unredacted version of the Joint Discovery Letter Brief initially filed on August 22, 2018. (Dkt. No. 219.)

For the reasons set forth below, the Court ORDERS Plaintiff Synchronoss to produce to Defendant Dropbox the documents relating to the accounting treatment of Plaintiff's licenses.

## I. BACKGROUND

Dropbox seeks discovery of documents related to the valuation of licenses covering the asserted patents,[1] and Synchronoss recently issued a Form 10-K filing restating the value of several lump-sum licenses to the asserted patents in this case. (Dkt. No. 219 at 1-2.) Both arguments from Dropbox (Defendant) and Synchronoss (Plaintiff) will be addressed in turn.

---

[1] The asserted patents in this case are U.S. Patent Nos. 6,671,757 ("the '757 patent"), 6,757,696 ("the '696 patent"), and 7,587,446 ("the '446 patent"). (Compl. at 3, Dkt. No. 1.)

United States District Court
Northern District of California

### A. Arguments from Defendant Dropbox

Dropbox states that it is hard to conceive of a more narrowly tailored request for discovery than its seeking of documents relating to the valuation of licenses covering the patents-in-suit. (*Id.* at 2) Dropbox also states that Synchronoss refuses to provide that discovery, arguing that the documents are irrelevant and belatedly making unsubstantiated claims of burden, and that those arguments are unavailing. (*Id.*) Dropbox further asserts that the documents that it seeks are plainly discoverable, because Rule 26(b)(1) permits discovery of "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." (*Id.*) Moreover, during discovery, "[r]elevance has been broadly construed to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." (*Id.*) (citing *Positive Techs., Inc. v. Sony Elecs., Inc.*, 2013 WL 1209338, at *1 (N.D. Cal. Mar. 25, 2013)). Dropbox contends that the documents it seeks meet the above described standard because they relate to the values of licenses paid for the very patents asserted in this case and thus speak directly to the first *Georgia-Pacific* factor for determining a reasonable royalty rate, or "royalties received by the patentee for the licensing of the patent in suit." (Dkt. No. 219 at 2) (citing *Georgia-Pac. Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970)).

Dropbox indicates that Synchronoss has identified eight licenses to the patents asserted in this case, including lump-sum licenses executed with: (1) OnMobile Global Ltd. ("OnMobile") and VoxMobili, (2) Newbay Software and Research in Motion, (3) Openwave Messaging Inc. ("Openwave") and Openwave Mobility, and (4) F-Secure, Inc. ("F-Secure"). (Dkt. No. 219 at 2.) Dropbox further notes that on July 2, 2018, Synchronoss publicly admitted in its 10-K filing for 2017 that the licensing fees listed on the face of some of these licenses were not an objective measure of the value of the licensed rights because those licenses were executed as part of, and virtually simultaneously with, transactions where Synchronoss purchased the licensee or their cloud-related assets related to the subject matter of the asserted patents. (*Id.*) The restatement recognized that the value Synchronoss attributed to the licenses was inflated and should actually have been part of the consideration for these acquisitions. (*Id.*) Synchronoss also disclosed in its Form 10-K filing that this license-then-purchase scheme occurred at least twice. (*Id.*)

Dropbox further notes that it seeks documents concerning Synchronoss' determination that the value of the licenses covering the asserted patents should be lower than the amount reflected on their face, and instead should also be linked to the related acquisitions. (*Id.*) Dropbox states that the central question for determining damages for patent infringement is the determination of a reasonably royalty, which can be derived from "a hypothetical negotiation between the patentee and the infringer based on [the *Georgia-Pacific* factors]." (*Id.* at 2-3) (citing *Wordtech Sys., Inc. v. Integrated Networks Sols., Inc.,* 609 F.3d 1308, 1319 (Fed. Cir. 2010)). As Dropbox previously noted above, the first *Georgia-Pacific* factor takes into account "[t]he royalties received by the patentee for the licensing of the patent in suit, providing or tending to prove an established royalty." (Dkt. No. 219 at 3) (citing *Georgia-Pac.*, 318 F. Supp. at 1120). "Actual licenses to the patented technology are highly probative as to what constitutes a reasonable royalty for those patent rights because such actual licenses most clearly reflect the economic value of the patent technology in the marketplace." (Dkt. No. 219 at 3) (citing *Laser Dynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 79 (Fed. Cir. 2012)).

### B. Arguments from Plaintiff Synchronoss

Synchronoss mentions at the meet-and-confer for this letter, Dropbox counsel answered with an unequivocal "Yes" when asked if the subject discovery request was directed to an amendment to its answer being sought by Dropbox through its motion for leave of court to amend the answer to assert a defense of unclean hands. (Dkt. No. 219 at 4.) At this meet-and-confer, Synchronoss counsel refused to agree to such discovery as there was no current pleading support. (*Id.*) Synchronoss was thus surprised when reviewing Dropbox's present arguments to see how the scope of the request had enlarged, because Synchronoss states that Dropbox seeks permission from the Court to effectively conduct a fishing expedition into Synchronoss' accounting practices related to the unclean hands defense that it sought the Court's leave to assert less than one month prior to the close of fact discovery. (*Id.*)

In July of 2017, Synchronoss filed restated 10-K financial disclosures with the U.S. Securities and Exchange Commission ("SEC") for 2015 and 2016 relating to the accounting treatment of payments made pursuant to several licenses and acquisitions made by Synchronoss,

3

specifically, Synchronoss brought patent infringement lawsuits and entered into license and settlement agreements with F-Secure, Openwave and OnMobile. Synchronoss also acquired each of those defendants and initially, pursuant to the payment terms of the license and the settlement agreements, Synchronoss recorded the license fee payments as revenue in its disclosures to the SEC. (*Id.*) Synchronoss also recently filed a restatement with the SEC, *for accounting purposes only*, to record these license fees as part of the accounting for the acquisition or divestiture of the companies, reversing the recorded revenue. (*Id.*) (emphasis theirs). Synchronoss also maintains that the restatements are also publicly available, are already in Dropbox's possession, and explain the change in accounting treatment from revenue to accounting for the acquisition. (*Id.*)

Synchronoss also argues that Dropbox seeks burdensome, irrelevant discovery of all communications and documents related to the restatement and the change in accounting treatment. (*Id.*) Specifically, Synchronoss asserts that at the outset, the requested documents related to the restated accounting treatment are not responsive to the document requests that Dropbox attempts to "shoehorn them into," as each of the Requests for Production ("RFPs") listed by Dropbox as requiring production of documents related to an accounting treatment do not "constitute, refer, or relate" to any license, settlement agreement, or resolution of any other litigation as requested by RFPs Nos. 1, 2, and 61; instead, they relate to SEC practices and procedures dealing with accounting treatments and as a result, Synchronoss contends that these documents simply are not responsive to the categories identified by Dropbox. (*Id.*)

Synchronoss further argues that the documents that Dropbox is requesting are not relevant to any claim or defense in this case, as the issues in this action are whether Dropbox infringes Synchronoss' patents, whether the patents are valid, and the damages Synchronoss has suffered. (*Id.*) Hence, Synchronoss avers that these "accounting documents" have low probative value compared with the excessive burden imposed on Synchronoss to collect and produce the requested documents, e.g. hundreds of thousands of documents collected from numerous employees relating to effectively whether the same sum of money is reported as revenue or an acquisition discount to the SEC. (*Id.*) Synchronoss further maintains that the requested documents are necessarily cumulative of the restated 10-K's themselves that are already in Dropbox's possession. (*Id.*)

4

Synchronoss additionally states that Dropbox already has the restatement, and it does not need the hundreds of thousands of documents leading up to the restatement. (*Id.* at 4-5.) Synchronoss also clarifies that it has agreed to produce or has already produced all licenses, acquisition documents, contemporaneous documents related to the acquisitions, contemporaneous documents related to the licenses, and Synchronoss' SEC filings for the relevant time periods, and thus, such documents are not addressed by this Joint Letter Brief. (*Id.* at 5.)

Again, Synchronoss reiterates that Dropbox seeks documents related to the ***accounting treatment*** of monies received related to those licenses and acquisitions. (*Id.*) (emphasis theirs). Synchronoss argues that at the outset, these documents are not relevant to any party's claims or defenses as required by Federal Rule of Civil Procedure 26(b)(1) and are not responsive to the document requests noted above. (*Id.*) Synchronoss further asserts that the documents requested by Dropbox do not relate directly to the licenses or acquisitions that resulted from prior litigation suits involving the asserted patents. (*Id.*) Instead, the requested documents relate to the financial treatment and filings required by the SEC describing those licenses and are also not contemporaneous with the licenses or acquisitions themselves or with the hypothetical negotiation that would have occurred in the present case. (*Id.*) Thus, Synchronoss states that documents relating to the restated financial treatment from 2017 would thus have a low probative value. (*Id.*) (citing *Sentius Int'l, LLC v. Microsoft Corp.*, No. 5:13-cv-00825-PSG, 2015 WL 451950, at *6 (N.D. Cal. Jan. 27, 2015) ("To the contrary, courts have found that settlement agreements have limited probative value when they, like the Lucent JMOL, occurred in a different time frame than the hypothetical negotiation at issue.")).

Synchronoss also argues that to the extent that the requested documents are relevant to the *Georgia-Pacific* factors as contended by Dropbox above, they are necessarily cumulative of the restated 10-K's that were filed by Synchronoss and are already in Dropbox's possession. (Dkt. No. 219 at 5.) Synchronoss thus asserts that Dropbox cannot argue that the financial documents that have been produced and will be produced would be insufficient to calculate a reasonable royalty. (*Id.*) (citing *Mediatek, Inc. v. Freescale Semiconductor, Inc.*, 2013 U.S. Dist. LEXIS 122911, at *16-17 (N.D. Cal. Aug. 28, 2013)).

5

1  Synchronoss adds that these requested documents also are not otherwise relevant to any other party's claims or defenses, and even though Dropbox may allege that the discovery could relate to a potential unclean hands defense that it would amend its answer to assert, there is currently not an unclean hands defense asserted by any party. (Dkt. No. 219 at 5, n.1.)

Moreover, Synchronoss contends that the documents requested by Dropbox are also highly burdensome to produce because Synchronoss has determined that the requested documents relating to the restated financials comprise well over 100,000 documents in the possession of over 50 custodians. (Dkt. No. 219 at 5.) Hence, Synchronoss asserts that undertaking such a collection would take weeks and heavily burden Synchronoss in return for a very low probative value due to the cumulative nature of the documents. (*Id.*) As a result, Synchronoss concludes that the proportionality of producing such documents weighs against requiring Synchronoss to conduct such a search. (*Id.*) (citing *Mediatek, Inc.*, 2013 U.S. Dist. LEXIS 122911, at *18-19.)

### C. Responses from Defendant Dropbox

In its portion of the Joint Letter Brief, Dropbox characterizes and responds to two main arguments raised by Synchronoss in their portion: (1) the licenses following the restatement are irrelevant and (2) the requested documents involve "accounting". (Dkt. No. 219 at 3.)

First, Dropbox characterizes Synchronoss as asserting that because it no longer intends to affirmatively rely on the licenses at issue following the 10-K restatement, then the licenses are irrelevant. (*Id.*) Dropbox argues that *Georgia-Pacific*, however, is not so limited because each lump-sum license provides patent rights to the very patents asserted by Synchronoss in this case. (*Id.*) Dropbox further points out that until it discovered that the licenses were valued at less than their purported $10 million face value, Synchronoss relied on these licenses in its preliminary damages contentions. (*Id.*) Dropbox then reasons that now that the face value of these licenses has been undermined, Synchronoss no longer wishes to rely on them. (*Id.*) This, however, does not negate the relevance of those licenses to Dropbox because Dropbox may still rely on those licenses in its own damages arguments. (*Id.*) Furthermore, Dropbox argues that under *Georgia-Pacific*, there is no basis for Synchronoss to limit discovery to only those licenses it believes are beneficial to its arguments. (*Id.*)

6

1    Second, Dropbox characterizes Synchronoss as suggesting that the requested documents
2    concern "accounting" questions that are, somehow, distinct from the question under the first
3    *Georgia-Pacific* factor or "[t]he royalties received by the patentee for the licensing of the patent in
4    suit, providing or tending to prove an established royalty." (Dkt. No. 219 at 2-3) (citing *Georgia-*
5    *Pac.*, 318 F. Supp. at 1120). Dropbox asserts that distinction makes no sense however because
6    according to Synchronoss' public filings, documents related to the accounting of its patent licenses
7    directly address "***the fair value of the [patent] licenses***." (Dkt. No. 219 at 3) (emphasis theirs).
8    Thus, Dropbox avers that the accounting documents requested speak directly to the relevant
9    question under *Georgia-Pacific*, and even if Synchronoss could articulate a reason why the
10   requested documents do not ultimately undermine the face value of the relevant licenses (a
11   position that Dropbox states is undermined by Synchronoss' decision to withdraw reliance on these
12   licenses following the company's restatement), that does not render the requested documents
13   immune from discovery. (*Id.*) Dropbox then indicates that the Court has observed in the past that
14   even where it is "unclear whether some of the discovery sought may be correlated to the value of
15   Plaintiff's patented invention, and therefore admissible," all that a party "is required to do at this
16   point" is make a "preliminary showing of relevance for discovery purposes pursuant to the
17   *Georgia-Pacific* factors." *Positive Techs.*, 2013 WL 707914 at \*6.

18   Finally, Dropbox responds to Synchronoss' burden argument by declaring that any burden
19   associated with the request is minimal and vastly outweighed by the relevance. (Dkt. No. 219 at
20   3.) Dropbox mentions that initially, Synchronoss never raised the issue of burden in the parties'
21   meet-and-confer, nor has it identified what burden it believes is associated with the requested
22   production. (*Id.*) Dropbox further states that the notion that there is not an easily accessible set of
23   materials related to Synchronoss' recent restatement of its accounting in connection with these
24   licenses is simply not credible. (*Id.*) Even if there were some burden, Dropbox argues, it would be
25   dwarfed by the relevance of these materials. (*Id.*) Dropbox concludes by stating that Synchronoss
26   cannot be permitted to cherry-pick licenses to support its astronomical damages request–totaling
27   in the hundreds of millions of dollars–while refusing to provide discovery on licenses that may
28   undermine its position by citing an unsubstantiated and unverified "burden." (*Id.*)

7

**II.     Legal Standard**

Under Rule 26(b)(1), "[a] party may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." *Drone Techs., Inc. v. Parrot S.A.*, 838 F.3d 1283, 1299 (Fed. Cir. 2016) (citing Fed.R.Civ.P. 26(b)(1)); *see also Micro Motion, Inc. v. Kane Steel Co.*, 894 F.2d 1318, 1323 (Fed. Cir. 1990) (explaining that discovery may not be had unless it is relevant to the subject matter of the pending action). The relevant information "need not be admissible at the trial" so long as it appears "reasonably calculated to lead to the discovery of admissible evidence." *Id.* Relevance has been broadly construed to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case. *See Hickman v. Taylor*, 329 U.S. 495, 501 (1947).

"Relevancy for discovery is flexible and has a broader meaning than admissibility at trial." *See Phoenix Solutions Inc. v. Wells Fargo Bank*, N.A., 254 F.R.D. 568, 582–83 (N.D. Cal. 2008), citing *Eggleston v. Chicago Journeymen Plumbers' Local Union No. 130, U.A.,* 657 F.2d 890, 903 (7th Cir. 1981). Thus, the relevancy standard for the purpose of discovery should not be conflated with the relevancy standard for admissibility at trial. *See Barnes & Noble, Inc. v. LSI Corp.*, C 11–02709 EMC LB, 2012 WL 1564734 *5 (N.D. Cal. May 2, 2012).

This broad scope of relevant, discoverable information is also limited by the responsibility of the parties to "take reasonable steps to avoid imposing undue burden or expense on a person" producing the requested discovery, and the court may, "[o] n motion or on its own ... limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that: (1) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (2) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (3) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." Fed. R. Civ. P. 26(b)(2)(C); *see also Digital Reg of Texas, LLC v. Adobe Sys. Inc.,* No. CV 12-01971-CW (KAW), 2013 WL 5442269, at *2 (N.D. Cal. Sept. 30, 2013).

## III. Discussion

As an initial matter, the Court first finds that the RFP most on point out of Dropbox's RFP Nos. 1, 2 and 61 to be RFP No. 1,[2] which states, in its entirety:

> **Request for Production No. 1:** All documents that constitute, refer or relate to any license, current or past, to any claim of any Patent-in-Suit or any intellectual property portfolio containing any Patent-in-Suit, including but not limited to, the executed license, drafts of such licenses, side letters to such licenses, negotiations of such licenses, communications about such licenses, and payments on such licenses.

Although erring on the broad side, RFP No. 1 still seeks relevant and discoverable information, specifically, documents pertaining to the first *Georgia-Pacific* factor, or the "royalties received by the patentee for the *licensing* of the patent in suit, providing or tending to prove an established royalty." *Georgia-Pac.*, 318 F. Supp. at 1120 (emphasis added). Furthermore, even though Dropbox could have drafted this RFP to specifically request documents relating to the accounting treatment of Synchronoss' licenses – which may be a request that would be clearer and more narrowly tailored for Synchronoss to fulfill – the Court finds that the documents requested here by Dropbox are sufficiently responsive to RFP No. 1 so as to justify production.[3]

Therefore, the Court finds that Dropbox is entitled to production of documents relating to the accounting treatment of Synchronoss' licenses. As Rule 26 outlines, the scope of relevant and discoverable information is broad, and Dropbox should be entitled to obtain any documents relating to licenses that would be relevant to ascertaining, quantifying, or confirming the damages amount resulting from infringement of the very patents asserted in this case, such as through any of the *Georgia-Pacific* factors, for example.

---

[2] Although Synchronoss mentions that it has already "agreed to produce or has already produced all licenses, acquisition documents, contemporaneous documents related to the acquisitions, contemporaneous documents related to the licenses, and Synchronoss's SEC filings for the relevant time periods" (Dkt. No. 219 at 7), it is still under the obligation to produce documents responsive to at least RFP No. 1, because they pertain to licenses regardless of any time period.

[3] Furthermore, because the requested discovery that Dropbox is seeking seems to be primarily responsive to RFP No. 1, the Court assumes that Dropbox will be satisfied with production of the requested accounting treatment documents even though Dropbox has not argued that RFP Nos. 2 and 61 must be satisfied. *See* (Dkt. No. 219 at 3) ("Dropbox contends that the documents are highly relevant to the reasonable royalty calculation and responsive to ***at least*** Request for Production Nos. 1, 2 and 61") (emphasis added).

9

The Court also finds unavailing Synchronoss' argument that the requested documents relating to the restated accounting treatment are not responsive to any of the RFPs because they do not "constitute, refer, or relate" to any of the licenses, and instead pertain to SEC practices and procedures dealing with accounting treatments. Synchronoss does not foreclose the highly likely possibility that the requested documents could *both* relate to SEC practices and procedures dealing with accounting treatments *and* be responsive to a RFP requesting documents that "constitute, refer, or relate" to any of Synchronoss' licenses. For example, Synchronoss publicly admitted in its 10-K filing that the fees listed on the face of some of the licenses were not an objective measure of the value of the licensed rights because those licenses were executed as part of, and virtually simultaneous with, transactions where Synchronoss purchased the licensee outright or their cloud-related assets directly relating to the subject matter of the asserted patents. (Dkt. No. 219 at 2.) This demonstrates that many connections, although subtle, exist between the restated accounting treatments and the licenses Synchronoss owns regarding the asserted patents. Accordingly, Synchronoss has not conclusively proven that the restated accounting treatment documents have nothing to do with the asserted patent licenses in this case, and as a result, those requested accounting treatment documents are still responsive to at least RFP No. 1 because directly or indirectly, they still "constitute, refer, or relate" to the aforementioned licenses owned by Synchronoss. Moreover, the requested accounting treatment documents also still fall under the broad ambit of permissible discovery proscribed by Rule 26 because they still relate to the asserted patents, the issue of infringement damages, and at least one of the *Georgia-Pacific* factors.

The discovery sought also does not appear to be unreasonably cumulative or duplicative, because even though Dropbox may already possess the restated 10-K financial disclosures or other publicly available information, Dropbox is still requesting discovery that shows how Synchronoss determined the value of the licenses covering the asserted patents to be lower than the amount reflected on their face, which is information Dropbox simply does not have nor can acquire from other avenues. In other words, Dropbox is seeking information that cannot be readily discerned or derived from publicly available data. Dropbox has also not had ample opportunity to obtain the requested accounting treatment documents because they have been withheld by Synchronoss.

Finally, although Synchronoss mentions that it'd be "highly burdensome" to produce the requested discovery because it comprises "well over 100,000 documents in the possession of over 50 custodians" and "would take weeks and heavily burden" Synchronoss, the Court agrees with Dropbox that any burden associated with the request is not only minimal, but also outweighed by the overwhelming relevance of the documents.

To reiterate, the requested accounting treatment documents are relevant and responsive because they pertain directly to the valid determination of damages via license royalty rates acquired from the *Georgia-Pacific* factors, and can explain how that determination is made. Dropbox also indicates that Synchronoss never raised or identified any particular production burden during any of their meet-and-confers. Synchronoss' complained-of production burden is also considerably alleviated by the convenient electronic means of storing and transporting documents enjoyed and afforded by today's modern information age. In addition, 100,000 documents may not be a particularly large or burdensome amount, especially compared to the average quantity of discovery exchanged or produced in patent litigation cases. Nonetheless, even assuming Synchronoss is subject to a substantial burden, the production of the requested discovery is warranted here mainly due to the high probative value of the aforementioned responsive accounting treatment documents.

Moreover, addressing the argument raised by Synchronoss that Dropbox may allege that the requested discovery could relate to a potential unclean hands defense (which is currently not in the case, but which Dropbox intends to amend its answer to add) (Dkt. No. 219 at 5, n.1), the Court notes that there is nothing precluding a party from seeking discovery pertaining to a potential defense, and neither party cites any authority stating that doing so is not possible.

Accordingly, the Court hereby ORDERS Synchronoss to produce the documents relating to the accounting treatment of its licenses to Dropbox.

IT IS SO ORDERED.

Dated: September 26, 2018

KANDIS A. WESTMORE
United States Magistrate Judge