1  Thomas H. L. Selby (*pro hac vice*)
   David M. Krinsky (*pro hac vice*)
2  Adam D. Harber (*pro hac vice*)
   Christopher J. Mandernach (*pro hac vice*)
3  Sarah L. O'Connor (*pro hac vice*)
   D. Shayon Ghosh (SBN 313628)
4  James M. Rice (*pro hac vice*)
   WILLIAMS & CONNOLLY LLP
5  725 Twelfth Street, N.W.
   Washington, D.C.  20005
6  Telephone:  (202) 434-5000
   Facsimile:   (202) 434-5029
7  E-mail:  tselby@wc.com
   E-mail:  dkrinsky@wc.com
8  E-mail:  aharber@wc.com
   E-mail:  cmandernach@wc.com
9  E-mail:  soconnor@wc.com
   E-mail:  sghosh@wc.com
10 E-mail:  mrice@wc.com

11 Stephen E. Taylor (SBN 058452)
   Jonathan A. Patchen (SBN 237346)
12 Karan S. Dhadialla (SBN 296313)
   TAYLOR & PATCHEN, LLP
13 One Ferry Building, Suite 355
   San Francisco, CA 94111
14 Telephone: (415) 788-8200
   Facsimile:  (415) 788-8208
15 E-mail:  staylor@taylorpatchen.com
   E-mail:  jpatchen@taylorpatchen.com
16 E-mail:  kdhadialla@taylorpatchen.com

17 Attorneys for Defendant DROPBOX, INC.

18         **IN THE UNITED STATES DISTRICT COURT**

19         **NORTHERN DISTRICT OF CALIFORNIA**

20                **OAKLAND DIVISION**

21 SYNCHRONOSS TECHNOLOGIES, INC.,        No. 4:16-cv-00119-HSG-KAW

22                          Plaintiff,      **DROPBOX, INC.'S NOTICE OF MOTION**
                                            **AND MOTION TO STRIKE PORTIONS**
23              v.                          **OF THE EXPERT REPORTS OF**
                                            **CHRISTOPHER ALPAUGH**
24 DROPBOX, INC.,
                                            Date:    May 16, 2019
25                         Defendant.       Time:    2:00 PM
                                            Place:   Courtroom 2, 4th Floor (Oakland)
26                                          Judge:   Hon. Haywood S. Gilliam, Jr.

27 ────────────────────────────
          **REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**
28

NOTICE OF MOTION AND REQUESTED RELIEF ...................................................1
MEMORANDUM OF POINTS AND AUTHORITIES ..............................................1
I.      BACKGROUND .......................................................................................2
        A.      The '757 Patent .............................................................................2
        B.      The Dropbox System .....................................................................4
        C.      Synchronoss' Infringement Contentions........................................4
        D.      Mr. Alpaugh's Infringement Expert Report....................................5
        E.      Mr. Alpaugh's Rebuttal Expert Report...........................................6
II.     ARGUMENT .............................................................................................7
        A.      The Court Should Strike Mr. Alpaugh's Undisclosed Infringement
                Theories.........................................................................................7
                1.      Mr. Alpaugh's New Theory Regarding the "Difference Transaction
                        Generator" Limitation.........................................................8
                2.      Mr. Alpaugh's New Theory Regarding the "Data Store" and
                        "Storage Server" Limitations .............................................12
        B.      The Court Should Strike Opinions in Mr. Alpaugh's Rebuttal Expert
                Report That Rely on Undisclosed Contentions...............................15
                1.      Mr. Alpaugh's Reliance on a Previously Undisclosed Priority and
                        Conception Date for the '757 Patent, as well as Supporting
                        Evidence............................................................................15
                2.      Mr. Alpaugh's Reliance on Apple's Previously Undisclosed
                        Alleged Practice of the Claims of the Patents-in-Suit ...............21
III.    CONCLUSION.........................................................................................25

## TABLE OF AUTHORITIES

### FEDERAL CASES

*Adobe Sys. Inc. v. Wowza Media Sys.*, No. 11-cv-02243-JST, 2014 WL 709865
    (N.D. Cal. Feb. 23, 2014)................................................................7, 10, 24, 25

*Apple Inc. v. Samsung Elecs. Co., Ltd.*, No. 5:12-cv-0630-LHK-PSG, 2014 WL
    173409 (N.D. Cal. Jan. 9, 2014) ..................................................................7

*Apple, Inc. v. Samsung Elecs., Inc.*, No. C 11-1846 LHK (PSG), 2012 WL
    2499929 (N.D. Cal. June 27, 2012) ..............................................................16

*ASUS Comput. Int'l v. Round Rock Research, LLC*, No. 12-cv-02099 JST (NC),
    2014 WL 1463609 (N.D. Cal. Apr. 11, 2014) .....................................7, 11, 14, 25

*Blue Spike, LLC v. Adobe Sys., Inc.*, No. 14-cv-01647-YGR (JSC), 2015 WL
    335842 (N.D. Cal. Jan. 26, 2015) ................................................................16

*Digital Reg of Tex., LLC v. Adobe Sys. Inc.*, No. CV 12-01971-CW (KAW), 2014
    WL 1653131 (N.D. Cal. Apr. 24, 2014) ...................................................7, 14

*Finjan, Inc. v. Blue Coat Sys., Inc.*, No. 13-cv-03999-BLF, 2015 WL 3640694
(N.D. Cal. June 11, 2015) .............................................................7, 11, 14

*Finjan, Inc. v. Proofpoint, Inc.*, No. 13-cv-05808-HSG, 2016 WL 612907 (N.D.
Cal. Feb. 16, 2016).................................................................................1, 7, 14

*Genentech, Inc. v. Trustees of Univ. of Penn.*, No. C 10-2037 LHK (PSG), 2012
WL 424985 (N.D. Cal. Feb. 9, 2012) ...............................................16, 25

*Harvatek Corp. v. Cree, Inc.*, No. C 14-05353 WHA, 2015 WL 4396379 (N.D.
Cal. July 17, 2015) ........................................................16, 18, 20, 21

*In re Foster*, 343 F.2d 980 (C.C.P.A. 1965) ...................................................15

*Mahurkar v. C.R. Bard, Inc.*, 79 F.3d 1572 (Fed. Cir. 1996) ........................15

*MediaTek Inc. v. Freescale Semiconductor, Inc.*, No. 11-cv-5341 YGR, 2014 WL
2854773 (N.D. Cal. June 20, 2014) ...............................................14

*Ojmar US, LLC v. Sec. People, Inc.*, No. 16-cv-04948-HSG, 2018 WL 1640126
(N.D. Cal. Apr. 5, 2018) ...........................................................1

*OpenTV, Inc. v. Apple, Inc.*, No. 15-cv-02008-EJD (NC), 2016 WL 3196643
(N.D. Cal. June 9, 2016) ...........................................15, 16, 18, 21

*Richtek Tech. Corp. v. uPI Semiconductor Corp.*, No. C 09-05659 WHA, 2016
WL 4269095 (N.D. Cal. Aug. 15, 2016) ...............................................24

*Shared Memory Graphics LLC v. Apple, Inc.*, 812 F. Supp. 2d 1022 (N.D. Cal.
2010) ...........................................................................11

*Sycamore IP Holdings LLC v. AT&T Corp.*, No. 2:16-CV-588-WCB, 2017 WL
4517953 (E.D. Tex. Oct. 10, 2017)...............................................23

*Thought, Inc. v. Oracle Corp.*, No. 12-cv-05601-WHO, 2015 WL 5834064 (N.D.
Cal. Oct. 7, 2015)........................................................16, 18, 21

*Thought, Inc. v. Oracle Corp.*, No. 12-cv-05601-WHO, 2016 WL 3230696 (N.D.
Cal. June 13, 2016) ...............................................................11

*Verinata Health, Inc. v. Ariosa Diagnostics, Inc.*, 236 F. Supp. 3d 1110 (N.D. Cal.
2017) ...............................................................................1

## OTHER AUTHORITIES

35 U.S.C. § 102(b) ...............................................................................15

35 U.S.C. § 119 ...................................................................................15

Patent L.R. 3-1 ......................................................................... passim

Patent L.R. 3-1(c) ............................................................................................................7

Patent L.R. 3-1(f) ..................................................................................................... passim

Patent L.R. 3-1(g) .................................................................................................... passim

Patent L.R. 3-2(b) .................................................................................................... passim

Patent L.R. 3-2(e) .................................................................................................... passim

Patent L.R. 3-6 ...........................................................................................7, 18, 23

DROPBOX, INC.'S NOTICE OF MOT. AND MOT. TO STRIKE PORTIONS OF ALPAUGH REPORTS
CASE NO. 4:16-CV-00119-HSG-KAW

1                         **NOTICE OF MOTION AND REQUESTED RELIEF**

2                 **TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:**

3         PLEASE TAKE NOTICE that on May 16, 2019, at 2:00 p.m., or as soon thereafter as the

4 matter may be heard, in the courtroom of the Honorable Haywood S. Gilliam, Jr., located at 1301

5 Clay Street, Oakland, California, defendant Dropbox, Inc. ("Dropbox") will and hereby does

6 move this Court for an Order striking portions of two expert reports of Christopher Alpaugh, a

7 technical expert witness retained by plaintiff Synchronoss Technologies, Inc. ("Synchronoss").

8 This motion is based on this Notice and Motion, the accompanying exhibits, the Declaration of

9 Adam D. Harber in Support of Dropbox Inc.'s Motion to Strike Portions of the Expert Reports of

10 Christopher Alpaugh ("Harber Decl."), the pleadings on file in this case, matters on which this

11 Court may take judicial notice, and such oral argument as the Court permits.[1]

12                    **MEMORANDUM OF POINTS AND AUTHORITIES**

13         Having realized that the infringement theory that it advanced in its contentions does not

14 hold water, Synchronoss has tried to grant itself a mulligan by serving a report from its expert

15 Christopher Alpaugh with entirely new (albeit no more meritorious) bases for alleged

16 infringement.  And having hidden the ball throughout discovery regarding the conception and

17 priority dates for the patents-in-suit and its contention that certain products practice the asserted

18 claims, Synchronoss served a responsive report from the same expert disclosing brand-new

19 theories and evidence on those issues.   These belated disclosures flout the Patent Local Rules.

20 Those Rules "are designed to require parties to crystallize their theories of the case early in the

21 litigation and to adhere to those theories once they have been disclosed." *Verinata Health, Inc.*

22 *v. Ariosa Diagnostics, Inc.*, 236 F. Supp. 3d 1110, 1113–14 (N.D. Cal. 2017) (internal quotation

23 omitted).   If this policy has any meaning, it must protect a party from learning of new

24 infringement theories, asserted conception and priority dates, and the identities of products a

---

[1] Dropbox presents its motion to this Court, instead of Judge Westmore, given the Court's precedent of deciding such motions in the first instance, even in cases with referrals to a Magistrate Judge.  *See, e.g.*, *Ojmar US, LLC v. Sec. People, Inc.*, No. 16-cv-04948-HSG, 2018 WL 1640126 (N.D. Cal. Apr. 5, 2018); *Finjan, Inc. v. Proofpoint, Inc.*, No. 13-cv-05808-HSG, 2016 WL 612907 (N.D. Cal. Feb. 16, 2016).

1   plaintiff contends embody the asserted patents—*for the first time*—when reading the opposing
2   party's expert reports.

3          For these and the reasons that follow, Dropbox respectfully requests that the Court strike
4   these new theories from Mr. Alpaugh's expert reports.

5   **I.      BACKGROUND**

6          **A.      The '757 Patent**

7          Synchronoss asserts in this case that certain of Dropbox's synchronization and backup
8   products infringe two patents, U.S. Patent Nos. 6,671,757 ("the '757 patent") and 7,587,446
9   ("the '446 patent").  Dkt. No. 1 ("Complaint").  Most relevant to this motion is the '757 patent,
10  which was filed on January 26, 2000.  The patent was granted and issued on December 30, 2003.
11  The '757 patent claims a system for synchronizing data between networked devices through a
12  central data store or storage server.  Ex. 1, Abstract.[2]  Claim 1 is illustrative:

13         A system for synchronizing data between a first system and a second system, comprising:

14                 a first sync engine on the first system interfacing with data on the first system to
15                 provide difference information in a difference transaction;

16                 a data store coupled to the network and in communication with the first and
                   second systems; and

17                 a second sync engine on the second system coupled to receive the difference
18                 information in the difference transaction from the data store via the network, and
                   interfacing with data on the second system to update said data on the second
19                 system with said difference information;

20                 wherein each said sync engine comprises a data interface, a copy of a previous
                   state of said data, and a difference transaction generator.

21  *Id.* at 46:58–47:8.  The remaining independent claims of the '757 patent, claims 16 and 24, differ
22  slightly in their terminology—they claim a first and second "device" instead of a first and second
23  "system"—but are otherwise identical in all relevant respects.  *Id.* at 48:1–24, 48:51–64.

24         The '757 patent discloses synchronizing data using "difference information," which the
25  parties have agreed should be construed as "information that comprises only the changes to one

26

27  _____
    [2] Unless otherwise noted, all exhibits are to the concurrently filed Declaration of Adam D.
28  Harber.

system's data which have occurred on that system, and instructions for implementing those changes." Dkt. No. 168 at 2.  In particular, when data on a first system is changed, that system generates "difference information" representing the changes to that system's data and transmits it to a central data store or storage server.  Ex. 1, Abstract; *id.* at 6:47–7:19.  The central data store or storage server then sends the difference information to a second system, so that the second system can receive the changes to the data on the first system.  *Id.* at Abstract; *id.* at 6:47–7:19.  Figure 4 of the '757 patent depicts the claimed synchronization mechanism:



Figure 4

As the Court recognized in its Claim Construction Order, the '757 patent specifies precisely how these first and second systems generate difference information: "by comparing a prior version of the data against a more current version."  Dkt. No. 168 at 6 (citing '757 Patent, 12:18–21, 14:38–42, 12:12–14).  Accordingly, the claims require each of the first and second "system" or "device" to comprise a "copy of a previous state of said data."  Ex. 1, 46:58–47:8, 48:1–24, 48:51–64.  The Court construed "copy of a previous state of said data" to mean "a copy of a previous version of the data that is used in a comparison against a copy of the current version of the data to generate difference information."  Dkt. No. 168 at 5–7.  The claims further require each "system" or "device" to comprise a "difference transaction generator."  Ex. 1, 46:58–47:8, 48:1–24, 48:51–64.   The parties agreed to construe "difference transaction generator" as "software that compares a current state of the data to a previous state of the data to generate difference information, and then places the difference information into a difference transaction."  Dkt. No. 168 at 4.

1

**B.     The Dropbox System**

2

Dropbox allows users to synchronize files between multiple devices.  Users may read,

3

modify, or write their Dropbox files through the Dropbox desktop client, the Dropbox mobile

4

client, the Dropbox website, or through applications connected to Dropbox.  Dropbox partitions

5

each file into four-megabyte (4 MB) blocks, and these blocks are uploaded to and downloaded

6

from a set of block data servers or "block servers."  Ex. 6 at 1–2.  Encrypted versions of these

7

blocks are stored on separate storage servers.

8

When a Dropbox desktop client detects that a block of a file has changed, it

9

10

11

12

13

14

15

**C.     Synchronoss' Infringement Contentions**

16

Synchronoss served its first set of infringement contentions pursuant to Patent Local Rule

17

3-1 on February 15, 2017.  Ex. 7.  Dropbox thereafter made the source code for the accused

18

products available for inspection on May 5, 2017.  Synchronoss and its expert Mr. Alpaugh

19

reviewed the source code for four days between June 19 and August 1, 2017.  Dkt. No. 170, at 6–

20

7.  On December 7, 2017, the Court issued its Claim Construction Order, in which the Court

21

construed several disputed claims.  Dkt. No. 168.  From January 16 through February 27, 2018,

22

Synchronoss and Mr. Alpaugh again inspected Dropbox's source code—this time for two and a

23

half weeks.  Dkt. No. 178 at 5.  Dropbox made its source code available for Synchronoss'

24

inspection each time Synchronoss requested it.

25

26

27

28

1    After Dropbox repeatedly requested that Synchronoss supplement its infringement

2    contentions to make reference to Dropbox's source code,[3] the parties reached an agreement

3    whereby Dropbox would not oppose Synchronoss' request for leave to amend its contentions to

4    add source code citations so long as Synchronoss did so by March 30, 2018.  Dkt. No. 195.  On

5    that day, Synchronoss filed supplemental infringement contentions, which included citations to

6    Dropbox technical documentation and source code.   Ex. 8; Ex. 9.   Synchronoss never

7    subsequently amended or supplemented its infringement contentions, nor requested to do so.

8           **D.      Mr. Alpaugh's Infringement Expert Report**

9           On December 3, 2018, Synchronoss served Mr. Alpaugh's Infringement Report on

10   Dropbox ("the Infringement Report").  Ex. 3.  The Report contained several key infringement

11   theories concerning one of the two patents-in-suit—the '757 patent—that fundamentally differed

12   from the theories identified in Synchronoss' infringement contentions.   In particular, Mr.

13   Alpaugh's Infringement Report relied on a different accused functionality in the Dropbox system

14   for both the "difference transaction generator" limitation and the "data store" and "storage

15   server" limitations from what Synchronoss had identified in its contentions.  On December 14,

16   Dropbox notified Synchronoss that the Infringement Report violated the Patent Local Rules by

17   introducing several new theories of infringement.  Ex. 23.  Dropbox's letter included citations to

18   specific paragraphs of the Infringement Report opining on these new theories and to the portions

19   of Synchronoss' supplemental infringement contentions related to the same limitations.  *Id.* at 2.

20   On January 4, 2019, the parties met and conferred by phone on the issue and reached an impasse.

21   Synchronoss did not identify even one citation where it believed the new theories that Dropbox

22   identified appeared in Synchronoss' infringement contentions.  Harber Decl., ¶ 29.  Synchronoss

23   offered no other response to Dropbox's letter.  *Id.*

24

25

26   ───────────────────────

27   [3]  After producing its source code and technical documentation, Dropbox requested that
     Synchronoss supplement its infringement contentions, ***repeatedly***, beginning on May 15, 2017.
     Ex. 19 at 2–3.  Synchronoss consistently declined to do so, until February 6, 2018.  Ex. 20.

28

1

### E.    Mr. Alpaugh's Rebuttal Expert Report

2      On January 28, 2019, Synchronoss served a second expert report from Mr. Alpaugh ("the
3  Rebuttal Report").  Among other things, this Report provides Mr. Alpaugh's opinions regarding
4  the validity of the patents-in-suit in response to the report of Dropbox's expert, Dr. Roberto
5  Tamassia.  Ex. 4, ¶ 1.  Mr. Alpaugh's Rebuttal Report includes (i) an asserted conception and
6  priority date for the '757 patent that Synchronoss never identified in its Patent Local Rule 3-1
7  contentions or Interrogatory Responses; (ii) reliance on a series of documents as supposed
8  corroboration for its newly asserted conception date that had never been identified in its
9  contentions under the Patent Local Rules or Interrogatory Responses; and (iii) opinions that rely
10  on the assertion that certain products of Synchronoss' licensee, Apple, practice the claimed
11  invention, despite Synchronoss never having identified Apple as practicing the claimed invention
12  in its contentions under the Patent Local Rules.  Ex. 5.

13      On February 6, Dropbox alerted Synchronoss that these opinions (and several documents
14  purportedly supporting them) were improper because Synchronoss failed to make the relevant
15  disclosures under Patent Local Rules 3-1(f), 3-1(g), and 3-2(b), and asked that they be
16  withdrawn.  Ex. 20.  Synchronoss did not assert—as it could not—that the theories and
17  documents were properly disclosed in its Contentions or Interrogatory Responses.  And it
18  initially agreed to withdraw certain opinions relying on the contention that Apple's products
19  embodied the claimed invention.  Ex. 25.  Synchronoss later indicated it would not withdraw
20  these opinions, however, after Dropbox asked that Synchronoss agree, consistent with its
21  obligation under the Patent Local Rules, that Mr. Alpaugh "will not offer any opinions that rely
22  on an assertion that any Apple products, or any other products or instrumentalities not disclosed
23  by Synchronoss pursuant to Patent L.R. 3-1(g), practice(d) any claim(s) of the patents-in-suit."
24  Ex. 26.  The parties met and conferred by phone on February 15, 2019, but were unable to
25  resolve the disputes.  Harber Decl., ¶ 30.

26

27

28

1    II.    **ARGUMENT**

2         A.    **The Court Should Strike Mr. Alpaugh's Undisclosed Infringement Theories**

3         Through Mr. Alpaugh's opening expert report, Synchronoss attempts to fundamentally

4    alter its infringement theory for the '757 patent, in clear violation of the Patent Local Rules.  The

5    Rules are "designed to require parties to crystallize their theories of the case early in the

6    litigation and to adhere to those theories once they have been disclosed."  *ASUS Comput. Int'l v.*

7    *Round Rock Research, LLC*, No. 12-cv-02099 JST (NC), 2014 WL 1463609, at *1 (N.D. Cal.

8    Apr. 11, 2014) (internal quotation omitted).  To effectuate this purpose, Patent Local Rule 3-1(c)

9    requires that a plaintiff provide "[a] chart identifying specifically where each limitation of each

10   asserted claim is found within each Accused Instrumentality."   A party may only amend its

11   contentions during fact discovery for good cause.  Patent L.R. 3-6.

12        "Expert reports," therefore, "may not introduce theories not set forth in the infringement

13   contentions."  *Digital Reg of Tex., LLC v. Adobe Sys. Inc.*, No. CV 12-01971-CW (KAW), 2014

14   WL 1653131, at *2 (N.D. Cal. Apr. 24, 2014) (citing *Apple Inc. v. Samsung Elecs. Co., Ltd.*, No.

15   5:12-cv-0630-LHK-PSG, 2014 WL 173409, at *1 (N.D. Cal. Jan. 9, 2014)).  That does not mean,

16   of course, that expert reports cannot expand on theories disclosed in infringement contentions,

17   since "[i]nfringement contentions need not disclose specific evidence, whereas expert reports

18   must include a complete statement of the expert's opinions, the basis and reasons for them, and

19   any data or other information considered when forming them."  *Proofpoint*, 2016 WL 612907, at

20   *1 (quoting *Digital Reg*, 2014 WL 1653131, at *2).  "The threshold question in deciding whether

21   to strike an expert report is whether the expert has permissibly specified the application of a

22   disclosed theory or impermissibly substituted a new theory altogether."  *Id.* (quoting *Digital Reg*,

23   2014 WL 1653131, at *2).   There is no prejudice requirement to strike an undisclosed

24   infringement theory:  "[i]f the theory is ***new***, prejudice is 'inherent in the assertion of a new

25   theory after discovery has closed.'"  *Finjan, Inc. v. Blue Coat Sys., Inc.*, No. 13-cv-03999-BLF,

26   2015 WL 3640694, at *2 (N.D. Cal. June 11, 2015) (quoting *Adobe Sys. Inc. v. Wowza Media*

27   *Sys.*, No. 11-cv-02243-JST, 2014 WL 709865, at *15 n.7 (N.D. Cal. Feb. 23, 2014)).

28

As set forth below, Mr. Alpaugh's infringement options for two claim limitations of the '757 patent are far more than just the application of a previously disclosed theory. They impermissibly attempt to substitute a new infringement theory altogether for what is in the contentions, and they should be stricken.

### 1.   Mr. Alpaugh's New Theory Regarding the "Difference Transaction Generator" Limitation

The '757 patent claims a specific system for synchronizing changes to data between two devices or systems. As this Court explained in its Claim Construction Order, the patented system identifies changes to data by "comparing a prior version of the data against a more current version." Dkt. No. 168 at 6 (citing '757 Patent, 12:18–21, 14:38–42, 12:12–14). Those changes are then sent from one device or system to another, through a central data store, and are applied to a second version of the data on the second system or device. '757 Patent, Abstract. To accomplish this, each independent claim of the '757 patent requires the presence, on each device or system, of a "sync engine," which includes a "difference transaction generator." '757 Patent, 46:58–47:8, 48:1–24, 48:51–64. The parties have agreed to construe the term "difference transaction generator" as "software that compares a current state of the data to a previous state of the data to generate difference information, and then places the difference information into a difference transaction." Dkt. No. 168 at 4.

After proceeding through discovery with one theory about what aspects of Dropbox's accused system meet the "difference transaction generator" limitation, Mr. Alpaugh's expert report introduces a wholly new theory that was not disclosed in Synchronoss' infringement contentions. In particular, Synchronoss' infringement contentions identified two supposed aspects of the Dropbox system as meeting the "difference transaction generator" limitation of the asserted claims. First, Synchronoss asserted that a part of the Dropbox system called the "block server" contains a "block server sync engine" that "compare[s] the current state of the data ███ to a previous state of the data ██████████ to generate difference information ██████ and place it into a difference transaction." Ex. 9 at 29–30, 107–08, 119–20, 148. In other words, under this contention, the "difference transaction generator" is

1    alleged to be a part of the Dropbox system ████████████████████████████████

2    ████████████████████████████████████████████.   Second,

3    Synchronoss contended that each Dropbox desktop client, which is the software that Dropbox

4    users can install on their computers, meets the "difference transaction generator" limitation

5    through a "desktop client sync engine" that "compares a current state of the data ██ ██

6    ████████████   to a previous state of the data ████████████   to generate

7    difference information ███████, and then places the difference information into a difference

8    transaction."   *Id.* at 30, 108–09, 118–19, 149–50.   Under this contention, the "difference

9    transaction generator" is allegedly a part of the Dropbox system ██████████████████

10   ████████████████████████████████████████████████████████████

11   ████████████.

12         Critically, despite having had access to Dropbox's source code for almost a year before

13   submitting its supplemental infringement contentions, Synchronoss' contentions did not mention

14   or cite ████████████████   *at all*, and mentioned ████████████   only in passing

15   (and without any discussion) as part of a lengthy block quote from a Dropbox blog post.   *Id.* at

16   12–13.   For both the "block server sync engine" and the "desktop client sync engine" described

17   above, Synchronoss' contentions say that "[s]oftware associated with the difference transaction

18   generator is found at:" and identify specific lines in Dropbox's source code.   *Id.* at 30–31, 107–

19   09, 119–20, 149–50.   Neither citation is to anything in the ████████████████.

20         Upon receiving Mr. Alpaugh's Infringement Report, Dropbox was surprised to learn that

21   Mr. Alpaugh's infringement theory for the "difference transaction generator" limitation, unlike

22   the theory in Synchronoss' contentions, is premised—*in its entirety*—on ████████████

23   ████.   Ex. 3, ¶¶ 98–99, 111–113, 115, 144, 155, 162, 164, 168, 170, 188, 198.   Mr. Alpaugh's

24   report contains extensive discussion of how ████████████████████, as well as

25   opinions regarding ████████████████████████████████████████████████

26   ████████████████████, none of which appeared anywhere in Synchronoss'

27   contentions.   *Id.*, ¶¶ 21–61, 113, 144, 155, 162, 168, 188; *see* '757 Patent, 12:22–23.   In sum,

28

more than 27 pages of Mr. Alpaugh's 166-page Infringement Report concern ███████████ —

after those features played no discernable role in Synchronoss' infringement contentions.

　　　This is not simply a matter of citing new or additional source code or expanding on

disclosed theories; it is an attempt by Synchronoss to substitute a new theory for how Dropbox

infringes the claim limitation.  While Synchronoss' contentions asserted that Dropbox infringed

the "difference transaction generator" limitation by comparing either ██████████████

████████████████████████, and nowhere mentioned or cited any

code in the ███████████████, Ex. 9 at 29–30, 107–09, 118–19, 149–50, Mr. Alpaugh's

infringement theory is focused on an entirely different comparison (between ██████████████

███████████) and how it allegedly is performed by ███████████, Ex. 3, ¶¶ 114,

163, 169.  Specifically, Mr. Alpaugh opines that each Dropbox desktop client maintains a

███████████████████████████████████ and that this

███████████████████████████████ that is used in a

comparison against a copy of the current version of the data."  *Id.*  Thus, Mr. Alpaugh contends

that the contents of ████████████████████████████ —

are "used in a comparison against . . . the current version of the data."[4]  *Id.*

　　　This new, undisclosed (and still erroneous[5]) theory violates the Patent Local Rules.  To

the extent Synchronoss intended to rely on ████████ as the foundation for its infringement theory,

it "was required . . . to make that notion clear in the contentions," because the Patent Local Rules

"require the patentee to describe with specificity where each limitation of each asserted claim is

found."  *Wowza*, 2014 WL 709865, at *14.  "[T]he degree of specificity . . . must be sufficient to

---

[4] These quotes are taken from Mr. Alpaugh's opinions relating to the "copy of a previous state of said data" limitation, because Mr. Alpaugh provides no other opinions about how the accused products include "software that compares a current state of the data to a previous state of the data to generate difference information," as required by the parties' agreed-upon construction of "difference transaction generator."  Dkt. No. 168 at 4.

[5] Dropbox's ████████ also does not meet the claim limitations of the '757 patent, as is abundantly clear from the Court's Claim Construction Order.  But Dropbox will present that argument to the Court, if necessary, at an appropriate later time.

provide reasonable notice to the defendant why the plaintiff believes it has a 'reasonable chance of proving infringement.'" *Blue Coat*, 2015 WL 3640694, at *2 (quoting *Shared Memory Graphics LLC v. Apple, Inc.*, 812 F. Supp. 2d 1022, 1025 (N.D. Cal. 2010)). The contentions provided no such notice here. Nor did they even identify or cite the software operation that now forms the basis of Mr. Alpaugh's infringement theory for this limitation: ██████████ ██████, which purportedly "generates difference information." Ex. 3, ¶¶ 113, 168, 188. Not only did the contentions fail to mention ████████████, but they include no explanation of how ██████████ allegedly generates difference information—or even that Synchronoss was contending that it did so. Ex. 9 at 12–13. The contentions cited a single line of code that ***calls*** ██████, but they offered no explanation as to how that line of code contributes to the purported generation of difference information, if at all, and they did not address Mr. Alpaugh's newly revealed theory of infringement based on ██████████████.

Courts in this District consistently strike expert opinions articulating infringement theories that are not explicitly disclosed in a party's contentions. For example, in *Thought, Inc. v. Oracle Corp.*, No. 12-cv-05601-WHO, 2016 WL 3230696 (N.D. Cal. June 13, 2016), the court struck an infringement theory because the plaintiff's contentions had "failed to specifically identify" the allegedly infringing components "in connection with the functionality" claimed. *Id.* at *7–8. Even where, unlike here, the plaintiff could argue that it had "'implicitly' disclosed its reliance on those [components] when it described that functionality," the court found that argument "not persuasive." *Id.* at *8. It held, "this Court's infringement contention disclosure requirements avoid implicit infringement theories by requiring express ones." *Id.* Similarly, in *ASUS*, another court in this District struck portions of an expert report relying on "data elements [that] were not previously identified in [the plaintiff's] infringement contentions as infringing elements." 2014 WL 1463609, at *4. "Although the infringement contentions include[d]" a single mention of the element "in a copied and pasted chart, nowhere d[id] the contentions explain this element or how it infringes a claim in the [asserted] patent." *Id.* Here too, Synchronoss' failure to disclose its reliance on ██████████ in its infringement contentions bars it from introducing those theories belatedly through Mr. Alpaugh.

## 2.   Mr. Alpaugh's New Theory Regarding the "Data Store" and "Storage Server" Limitations

Mr. Alpaugh's Infringement Report also impermissibly shifts Synchronoss' theory of how Dropbox infringes the "data store" and "storage server" limitations, which appear in each independent claim of the '757 patent. Ex. 1, 46:58–47:8, 48:1–24, 48:51–64.   The specific synchronization system in the '757 patent requires that synchronization occur through a centralized storage server or data store.   The Abstract notes that, in the claimed system, "[d]ifference information is transmitted *to the data store* by the first sync engine and received *from the data store* from the second sync engine."   *Id.* at Abstract (emphasis added).   In that regard, independent claims 1 and 24 require the "data store" or "storage server" to be "in communication with" the first and second "system" or "device."   *Id.* at 46:58–47:8, 48:51–64. Independent claim 16 similarly requires the "second device . . . to receive . . . data change transactions from, and provide second change transactions . . . to, said data store."   *Id.* at 48:1– 24.   Apparently realizing more than eighteen months after Dropbox made its source code available for inspection that, in fact, the systems and devices in the Dropbox system do *not* communicate with the instrumentality Synchronoss had identified as the "data store" and "storage server" in its infringement contentions, Synchronoss is attempting to change theories in its expert report.  Its new, undisclosed theory should be stricken.[6]

In particular, in its infringement contentions, Synchronoss asserted that "[t]he Accused Products include a data store, for example, storage servers, including, but not limited to ███████ ███████████████████████████ coupled to a network and are in communication, for example, to receive difference information from and to send difference information, with the first and second systems over a network . . . ."  Ex. 9 at 15; *see also id.* at 135–37 (identifying "██████████████████████████" as a "storage server").  It identified the same

---

[6] As with Synchronoss' new theory regarding the "difference transaction generator" limitation, Synchronoss does not show infringement of the asserted claims even under its new theory regarding the "data store" and "storage server" limitations.  Dropbox will present that argument, if necessary, at an appropriate later time.

servers—██████████████—as the instrumentality that met the "data store" limitation of claim 16. *Id.* at 73. Synchronoss even included an annotated diagram of the Dropbox system in its contentions, in which it identified "Storage Servers" as the sole accused "Data Store" in the Dropbox system:



*E.g.*, *id.* at 16 (red circle added); *see also id.* at 74 (similar diagram for the "data store" limitation of claim 16); *id.* at 137 (similar diagram for the "storage server" limitation of claim 24).

Mr. Alpaugh's expert report, however, identifies an entirely different component as the putative "data store" and thus is based on an entirely different infringement theory. Mr. Alpaugh now asserts that "████████████████████████████████████████ ██████████████████████ a storage server." Ex. 3, ¶¶ 103, 184 (emphasis added). Mr. Alpaugh also relies on ██████████████████████████████████████████ ██████████████████—as meeting the claims' requirement that the "data store" or "storage server" be in communication with the first and second system or device. Ex. 3, ¶¶ 100–103, 148–151, 182–184. But Synchronoss's contentions never identify the block server as part of the "data store". To the contrary, as the above diagram illustrates, Synchronoss' contentions clearly

differentiated between ▮▮▮▮▮▮▮▮▮▮▮▮▮ storage servers (which Synchronoss labeled "Data Store") and ▮▮▮▮▮▮▮▮ (which Synchronoss labeled "Sync Engine"—an entirely different claim limitation).

Thus, the Infringement Report "identif[ies] a different component" than Synchronoss named in its infringement contentions as the allegedly infringing instrumentality for the "data store" and "storage server" limitations. *Blue Coat*, 2015 WL 3640694, at *3–4. As other courts in this District have done, this Court should strike those new theories. In *Blue Coat*, for example, the plaintiff's infringement contentions identified a "policy engine" generating a "categorized cache" as satisfying certain limitations of the asserted patent, but the expert's opinions on the same limitations identified a "policy cache" instead. *Id.* at *3. Because "the policy cache is qualitatively different from the categorized cache identified in Plaintiff's contentions," and because the contentions and the report "affirmatively identify a different component" as satisfying these limitations, the court granted the defendant's motion to strike the "new theory." *Id.* at *3–4; *see also MediaTek Inc. v. Freescale Semiconductor, Inc.*, No. 11-cv-5341 YGR, 2014 WL 2854773, at *2 (N.D. Cal. June 20, 2014) (striking expert's reliance on a "Clock Controller Module" as satisfying a "clock controller" limitation where plaintiff's infringement contentions had "disclosed the General Power Controller, . . . a different module in [the defendant's product], as satisfying the 'clock controller' limitation"). As in these cases, Mr. Alpaugh's new opinions do not just build on a previously identified theory; they "impermissibly substitute[] a new theory" in its place. *Proofpoint*, 2016 WL 612907, at *1 (quoting *Digital Reg*, 2014 WL 1653131, at *2). The Court should strike this new theory.

*           *           *

Because "[a] party may not use an expert report to introduce new infringement theories [or] new infringing instrumentalities . . . not disclosed in the [party's] infringement contentions," *Proofpoint*, 2016 WL 612907, at *1 (quoting *ASUS*, 2014 WL 1463609, at *1), Dropbox respectfully requests that the Court strike the following paragraphs of the Infringement Report:

1

- Paragraphs 21–61, 113, 115, 162, 164, 168, 170, and 198 ("difference transaction generator"); and

2

3

- Paragraphs 100–103, 147–151, 182–184 ("data store" and "storage server").

4

**B.   The Court Should Strike Opinions in Mr. Alpaugh's Rebuttal Expert Report That Rely on Undisclosed Contentions**

5

6       As with his Infringement Report, Synchronoss uses Mr. Alpaugh's Rebuttal Report to

7   introduce several new theories that it never disclosed in its contentions, as the Patent Local Rules

8   require, or during fact discovery. The Court should strike those undisclosed theories.

9

**1.   Mr. Alpaugh's Reliance on a Previously Undisclosed Priority and Conception Date for the '757 Patent, as well as Supporting Evidence**

10

11      Mr. Alpaugh's Rebuttal Report identifies a specific priority and conception date for the

12  '757 patent, ████████, which Synchronoss at no point identified during fact discovery—not

13  in its initial Patent Local Rule 3-1 disclosures, not in its supplemental disclosures, and not in

14  response to multiple interrogatories Dropbox served on the exact subject (and repeatedly pressed

15  Synchronoss to answer). To support this undisclosed date, and the subsequent "reduction to

16  practice" of the claimed invention, Mr. Alpaugh likewise relies on documents that Synchronoss

17  failed to identify under the Patent Local Rules. These undisclosed opinions flout the District's

18  Patent Local Rules and should be stricken.[7]

19      Patent Local Rule 3-1 requires a patent holder alleging infringement to identify

20  definitively and early in the case the specific priority date it asserts for the patent at issue, as well

21  as the specific date(s) on which the claimed invention was conceived and reduced to practice.

22  *See* Patent L.R. 3-1(f); *OpenTV*, 2016 WL 3196643, at *2 ("OpenTV had an obligation to

23

24  [7] It bears noting that Mr. Alpaugh's opinions regarding priority date are also legally defective. First, he conflates priority date with conception date. *See, e.g.*, *OpenTV, Inc. v. Apple, Inc.*, No. 15-cv-02008-EJD (NC), 2016 WL 3196643, at *2 (N.D. Cal. June 9, 2016) ("A priority date refers to the date of the earliest filed patent application, . . . [and] [a] conception date will necessarily predate a priority date.") (citing 35 U.S.C. § 119 and *Mahurkar v. C.R. Bard, Inc.*, 79 F.3d 1572, 1577 (Fed. Cir. 1996)). Second, his opinions rejecting prior art on the basis that it post-dates ████████ are contrary to the one-year statutory bar of 35 U.S.C. § 102(b) (pre-AIA). *See, e.g.*, *In re Foster*, 343 F.2d 980, 986 (C.C.P.A. 1965). Dropbox will present these arguments to the Court, if necessary, at an appropriate later time.

25

26

27

28

15

disclose its conception date . . . under the Patent Local Rules."); *Thought, Inc. v. Oracle Corp.*, No. 12-cv-05601-WHO, 2015 WL 5834064, at *5 (N.D. Cal. Oct. 7, 2015); *Harvatek Corp. v. Cree, Inc.*, No. C 14-05353 WHA, 2015 WL 4396379, at *2 (N.D. Cal. July 17, 2015).  Courts in this District have been clear that this Rule "requires a patent holder to assert a ***specific date*** of conception, not a date range."  *Harvatek*, 2015 WL 4396379, at *2 (emphasis added); *accord OpenTV*, 2016 WL 3196643, at *2; *Thought, Inc.*, 2015 WL 5834064, at *5.  The same requirement of specificity applies to the priority date contention.  *See, e.g.*, *Blue Spike, LLC v. Adobe Sys., Inc.*, No. 14-cv-01647-YGR (JSC), 2015 WL 335842, at *7 (N.D. Cal. Jan. 26, 2015) ("This rule requires a patentee to assert a particular date—not a start date, end date, or date range.").  Patent Local Rule 3-2(b) also requires the production and identification "by production number" of "***[a]ll*** documents evidencing the conception, reduction to practice, design, and development of each claimed invention, which were created on or before the date of application for the patent in suit or the priority date identified pursuant to Patent L.R. 3-1(f), whichever is earlier."  Patent L.R. 3-2 & 3-2(b) (emphasis added).  It is not enough for the party to produce such documents at some point during discovery; they "must accompany the Rule 3-1 disclosures."  *Thought, Inc.*, 2015 WL 5834064, at *2; *accord, e.g.*, *Apple, Inc. v. Samsung Elecs. Co.*, No. C 11-1846 LHK (PSG), 2012 WL 2499929, at *1 (N.D. Cal. June 27, 2012) (calling it "unacceptable" under the Patent Local Rules for one party to require the other to "comb through the extraordinarily voluminous record to find" theories or evidence not disclosed in the contentions).  The purpose of these Rules is to give defendants fair and clear notice that will guide how they conduct discovery and develop their defenses in the litigation—in other words, to avoid "litigation by ambush."  *See, e.g.*, *Genentech, Inc. v. Trustees of Univ. of Penn.*, No. C 10-2037 LHK (PSG), 2012 WL 424985, at *2 (N.D. Cal. Feb. 9, 2012).

Mr. Alpaugh's opinions regarding the priority and conception date for the '757 patent, as well as the evidence he uses to support this date and the subsequent reduction to practice of the claimed invention, are in clear violation of these Rules.  To begin with, Mr. Alpaugh's asserted conception and priority date for the '757 patent—"███████████████," Ex. 4, ¶¶ 12, 143—appears nowhere in Synchronoss' original or amended Rule 3-1 contentions.  When

16

Synchronoss initially served its contentions on February 15, 2017, it asserted that: (i) "[t]he claims of the '757 patent are entitled to an priority date at least as early as January 26, 2000," and (ii) "[t]he conception and reduction to practice of the claims of the Asserted Patents occurred in late 1995/early 1996." *See* Ex. 7 at 3.  When it supplemented other aspects of its contentions more than a year later, Synchronoss stated that its original Rule 3-1(f) contentions—*i.e.*, a January 26, 2000 "priority date" and a "late 1995/early 1996" conception and reduction-to-practice time frame—"remain[ed] in effect."  *See* Ex. 8 at 5.  This alone is sufficient to strike the different and more specific date in Mr. Alpaugh's report and the opinions relying on that date.

The same is true of much of the evidence on which Mr. Alpaugh relies to support the conception and reduction to practice of the claimed invention of the '757 patent.  When serving its initial Rule 3-1 contentions, Synchronoss identified two Bates ranges' worth of produced documents in its Rule 3-2(b) disclosure.  *See* Ex. 7 at 5 (identifying SYNCH_DROPBOX0004467–4911, 5083–5113).  Its supplemental contentions pursuant to Rule 3-2(b) added more than 1500 pages.  *See* Ex. 8 at 6–7.  Mr. Alpaugh's Rebuttal Report, however, relies heavily on documents that were neither identified in, nor produced with, these contentions.  *See* Ex. 5.  For example, the sole documentary evidence Mr. Alpaugh uses to substantiate his new and specific ██████████ priority and conception date is the ██████████ ███████████████████████████████ Ex. 4, ¶ 149.  This document was produced to Dropbox on October 2, 2018, after the official close of fact discovery in the case,[8] and was never identified in Synchronoss' Rule 3-2(b) disclosures nor cited in any of Synchronoss' Rule 3-1(f) contentions or written discovery responses.  Mr. Alpaugh's Rebuttal Report likewise contains a discussion of documents he claims evidence ████████████ reflecting supposedly ██████████████ to reduce the claimed invention of the '757 patent to practice.  Ex. 4, ¶¶ 164–

---

[8] Synchronoss produced this file during a one-month extension for the limited purpose of allowing the parties to take remaining, already-noticed depositions after the September 21, 2018 deadline for completing fact discovery, and any related document production cleanup.  *See* Dkt. No. 224.

66.[9]  However, none of these documents were identified in, or produced with, Synchronoss' Rule 3-1 disclosures, as the Local Rules require.  *See* Ex. 7 at 5; Ex. 8 at 6.  Synchronoss' failure to identify these documents in its original or supplemental Rule 3-1 disclosures alone is sufficient basis to strike Mr. Alpaugh's opinions relying on that evidence in his report.

The law is clear that a party may not fulfill its Rule 3-1(f) or 3-2(b) obligations by disclosing in discovery the information that it was required to provide in its Patent Local Rule disclosures.  *See, e.g.*, Patent L.R. 3-6 ("The duty to supplement discovery responses does not excuse the need to obtain leave of court to amend contentions.").  In *Harvatek*, for example, a court in this District struck documents produced by a patentee just two months after the Rule 3-1 and 3-2 disclosure deadline, as well as any other "belatedly-produced evidence" of a conception date inconsistent with the contentions.  2015 WL 4396379, at *1–2.  It reached that conclusion notwithstanding the fact that the patentee specifically called those documents to the defendant's attention as materials that "may provide evidence of invention" prior to the conception date previously identified in the patentee's contentions.  *Id.* at *1 (internal quotation marks omitted). The patentee, as the court noted, had failed to "seek leave to supplement its disclosures or production, as required by Patent L.R. 3–6."  *Id.*; *accord, e.g.*, *OpenTV*, 2016 WL 3196643, at *3 (precluding plaintiff from "relying on supporting documentation other than what was specifically identified in OpenTV's Patent Local Rule 3[-]2(b) disclosures"); *Thought, Inc.*, 2015 WL 5834064, at *2, *4–5 (noting that the document disclosures required by Rule 3-2 "must accompany the Rule 3-1 disclosures" and striking productions and revised dates served several months after the date of the Rule 3-1 disclosures).

It nevertheless is worth noting how Synchronoss' conduct during fact discovery only compounded its failure to make proper disclosures under the Patent Local Rules.  Dropbox served multiple interrogatories on these very topics, and Synchronoss repeatedly refused to

---

[9]    Mr. Alpaugh specifically relies on SYNCH_DROPBOX0033858, SYNCH_DROPBOX0022322, SYNCH_DROPBOX0033848, SYNCH_DROPBOX0005042, SYNCH_DROPBOX0005030, SYNCH_DROPBOX0005048, and MULTER002693.  Ex. 4 at 62–66.

1   identify either the specific date or the supporting evidence that now appear in Mr. Alpaugh's

2   expert report.  For example, Dropbox served an interrogatory asking Synchronoss to "describe in

3   detail the conception and reduction to practice of the claimed subject matter, including the date

4   of conception and reduction to practice" for each asserted claim of the patents-in-suit.  Ex. 12 at

5   12.  Synchronoss' response—like its Rule 3-1 disclosures—referred to inventors' activities

6   ███████████████████████████ and asserted that "███████████████████████

7   ████████████████████████████████████████████████████" the

8   solution for which the '757 patent allegedly was created.  *Id.* at 13.  According to Synchronoss,

9   ██████████████████████████████████████████████████████████

10  ██████████████████████████████████████████████████████████

11  ████████████████████  *Id.*  Synchronoss concluded its interrogatory response with the

12  cryptic statement that ██████████████████████████████████████████

13  ████████████████████████  *Id.*  Because

14  ████████, in effect, Synchronoss' response identified a three-year period in which it claimed the

15  conception and reduction-to-practice of the patents-in-suit occurred.

16      Dropbox later served a further interrogatory asking Synchronoss to "identify the earliest

17  claimed priority date" for "each asserted claim of each Patent-in-Suit."   Ex. 15 at 6.

18  Synchronoss responded with the same priority date identified in its Rule 3-1 disclosures: "███

19  ██████████████████████████."   *Id.*   Moreover, although Dropbox had repeatedly pressed

20  Synchronoss about the vagueness of its previous disclosures, Synchronoss' response to this

21  interrogatory *still* did not identify either the conception date or the supporting evidence that now

22  appears in Mr. Alpaugh's report.  Instead, Synchronoss claimed only that "██████████████

23  ████████████████████████████████" and that the "████████████████

24  ████████████████████████████████████████."  *Id.*

25      A month later, in response to further questions from Dropbox, Synchronoss reaffirmed

26  those dates, writing that "████████████████████████████████████████████

27  █████████████████████████████████."  Ex. 16 at 5–6.  Synchronoss also

28  supplemented its response to clarify its view that "███████████████████████████

1  ▉▉▉▉▉▉▉▉▉." *Id.* at 5.  This, like the dates Synchronoss identified as its priority and conception

2  dates, is flatly inconsistent with the position Mr. Alpaugh has now taken in his expert report—

3  that ***both*** the conception date and the priority date for the '757 patent are ▉▉▉▉▉▉▉.  Thus,

4  even in its recent and supplemental interrogatory responses provided at Dropbox's urging,

5  ***Synchronoss never identified the*** ▉▉▉▉▉▉ ***date that pervades Mr. Alpaugh's Rebuttal***

6  ***Report***.

7         The fact that Mr. Alpaugh's posited conception date is ***after*** the vague date range

8  identified in Synchronoss' infringement contentions does not excuse Synchronoss' clear

9  violations of the Patent Local Rules.[10]  If that were sufficient, any litigant could evade the

10  requirement that it identify a specific conception date by naming a general timeframe far earlier

11  than any date it might later rely on, and then claiming the opposing party is not prejudiced.  But

12  that is not the law, and for good reason.  The requirement in the Patent Local Rules exists to

13  ensure Dropbox had early notice of Synchronoss' precise contentions so it could take discovery

14  relating to the bases for those contentions and explore whether Synchronoss can actually

15  establish ▉▉▉▉▉▉ as a specific priority or conception date.  Instead, Dropbox was deprived

16  of that opportunity and could only pursue—and ***did*** pursue—discovery relating to Synchronoss'

17  generalized allegations.  *See, e.g.*, *Harvatek*, 2015 WL 4396379, at *2 (noting that open-ended

18  priority date contentions and late disclosures of documents supporting conception prejudiced the

19  defendant by rendering it "unable to focus its discovery efforts on a specific conception date").

20  Yet even then, Synchronoss failed to provide the information and evidence on which Mr.

21  Alpaugh now relies.  Synchronoss' varied and vague disclosures prevented Dropbox from being

22  able "to focus its discovery efforts on a specific conception date" while also permitting

23  Synchronoss and Mr. Alpaugh an improper "preview of [Dropbox's] invalidity contentions

24  before offering a concrete conception date" in Mr. Alpaugh's Rebuttal Report.  *Id.*

25  ───────────
[10] Although Mr. Alpaugh's ▉▉▉▉▉▉ date is later in time than the "late 1995/early 1996"
26  timeframe identified in Synchronoss' infringement contentions, it is ***earlier*** in time than ▉▉▉▉
▉▉▉▉▉▉▉▉▉▉▉▉ that Synchronoss
27  adopted in its October 2018 supplemental interrogatory responses, just as the parties had
concluded fact discovery and were embarking on the preparation of their expert disclosures.

28

1    Accordingly, Dropbox respectfully requests that the Court strike Mr. Alpaugh's Rebuttal

2    Report to the extent that it relies on, seeks to justify, or otherwise refers to either (i) the ███

3    ███ priority and conception date that ought to have been (but was not) specified in

4    Synchronoss' Rule 3-1(f) infringement contentions, or (ii) documents that Synchronoss was

5    required to produce and identify (but did not) in its Rule 3-2(b) disclosures.  *See, e.g.*, *OpenTV*,

6    2016 WL 3196643, at *3 (precluding plaintiff from "asserting conception and reduction to

7    practice dates other than those identified in OpenTV's October 15, 2015, disclosures under

8    Patent Local Rule 3-1(f) and 3-2(b)"); *Thought, Inc.*, 2015 WL 5834064, at *5 (striking

9    plaintiff's "recent productions of its invention date and amended invention date" where

10   "[n]either Thought's Rule 3-1 and 3-2 disclosures, nor its responses to [defendants']

11   interrogatories, provided a response sufficient for [plaintiff] to rely on a May 1996 invention

12   date"); *Harvatek*, 2015 WL 4396379, at *3 (granting motion to strike plaintiff's "belated

13   disclosures and to preclude it from asserting a conception date prior to the filing date of the

14   application for the '737 patent," the only date disclosed in the plaintiff's Rule 3-1 disclosures).

15   Dropbox has identified in the attached Exhibit 5 each of the statements, paragraphs, and

16   documents in Mr. Alpaugh's Rebuttal Report that fit this criteria.  *See* Ex. 5.

17   ## 2.  Mr. Alpaugh's Reliance on Apple's Previously Undisclosed Alleged Practice of the Claims of the Patents-in-Suit

18

19   Finally, Mr. Alpaugh's Rebuttal Report relies on the assertion that certain products of a

20   licensee, Apple, embody the claims of the patents-in-suit, despite having failed to disclose that

21   contention or the supporting documents under the Patent Local Rules.  These assertions, and the

22   opinions relying on them, should be stricken from Mr. Alpaugh's report.

23   Patent Local Rule 3-1(g) is clear:  "[i]f a party claiming patent infringement wishes to

24   preserve the right to rely, ***for any purpose***, on the assertion that its own or its licensee's

25   apparatus, product, device, process, method, act, or other instrumentality practices the claimed

26   invention, the party shall identify, separately for each asserted claim, each such apparatus,

27   product, device, process, method, act, or other instrumentality that incorporates or reflects that

28   particular claim."  Patent L.R. 3-1(g) (emphasis added).  Moreover, "[i]f a party identifies

21

instrumentalities pursuant to Patent L.R. 3-1(g)," the party must produce "documents sufficient to show the operation of any aspects or elements of such instrumentalities the patent claimant relies upon as embodying any asserted claims." Patent L.R. 3-2(e).

Synchronoss complied with neither of these requirements for its licensee Apple. Despite multiple rounds of supplementation and numerous requests from Dropbox, Synchronoss never identified in its Local Rule 3-1 disclosures any Apple products that it believed embodied the asserted claims or produced documents supporting such an assertion. When Synchronoss served its initial disclosures pursuant to Patent Local Rule 3-1 on February 15, 2017, it asserted vaguely that "many [] systems and methods are combined by licensees to practice the patented claims." Ex. 7 at 4. The disclosures did not identify any specific licensee's allegedly embodying system or method, *see id.* at 3–4, and Synchronoss produced no documents showing the operation of any licensee's system or method pursuant to Patent Local Rule 3-2(e). *Id.* at 6. Dropbox wrote Synchronoss the next day to note that Synchronoss had "fail[ed] to provide the disclosure required by the Patent Local Rules" because, among other things, it "did not identify any products from any licensee." Ex. 17 at 3. Given Synchronoss' deficient disclosure, Dropbox stated its "understand[ing] that Synchronoss does not 'wish[] to preserve the right to rely, for any purpose' on the assertion that any of its licensee's products practice . . . any claim of any Patent in Suit." *Id.* Synchronoss responded, in March 2017, that it would "supplement its disclosure [under Patent Local Rule 3-1(g)] with regard to licensees." Ex. 18 at 3. It never did so.

After almost a year without supplementation, Dropbox wrote Synchronoss again, noting that Synchronoss' failure to supplement its Rule 3-1(g) disclosures made it "impossible for Dropbox to assess any of Synchronoss' assertions regarding its (purported) licenses and licensees." Ex. 21 at 2. Dropbox also pointed out that Synchronoss had not produced any documents showing the operation of any licensee's products, as required by Patent Local Rule 3-2(e). *Id.* at 1–2. Given this, Dropbox informed Synchronoss that it would move to exclude the use of any product for which Synchronoss had not complied with its disclosure requirements under the Local Rules. *Id.* at 2. Synchronoss subsequently agreed to "supplement its disclosure to identify the instrumentalities that allegedly practice or embody any asserted claims, provide

detailed claim charts with regard to licensees, and produce related documents by March 30[, 2018].”  Ex. 22 at 1–2.  It did not do so.  Instead, Synchronoss’ supplemental Rule 3-1 disclosures of that date merely stated that “Synchronoss will supplement its Infringement Contentions with charts that identify where each limitation of each asserted claim of the Patents-in-Suit are found within its own or its licensee’s apparatus, product, device, process, method, act, or other instrumentality practices the claimed invention will be produced on April 6.”  Ex. 8 at 5. On April 6, 2018, Synchronoss served claim charts for one of its own products, but served no claim charts or evidence for any Apple product.  Ex. 10.  And on June 28, 2018, after the Court granted Synchronoss leave to serve formally the amended infringement contentions it sent Dropbox on March 30, Synchronoss served a version of its Rule 3-1 disclosures that simply incorporated these charts by reference, failing to add Apple or any additional licensees.  Ex. 11 at 5.

In short, at no point during fact discovery did Synchronoss indicate in its Rule 3-1 disclosures that it was intending to rely on any Apple product as practicing the asserted claims, nor did Synchronoss produce any documents sufficient to show the operation of any such Apple product.[11]

Nevertheless, Mr. Alpaugh’s rebuttal expert report contains several opinions that rely on the assertion that certain Apple products practice the claimed invention.  Mr. Alpaugh relies on

---

[11] Synchronoss included a vague reference to Apple deploying its technology in a late-submitted supplementation to an interrogatory addressing commercial success.  However, Synchronoss failed to supplement its disclosures under Rule 3-1(g), or seek leave to do so; failed to provide any documentation under Rule 3-2(e); and failed to supplement its response to Interrogatory No. 10, which specifically asked Synchronoss to identify products it claimed embodied the patents, to identify any Apple products.  Ex. 14 at 8–9.  Regardless, the law is clear that discovery responses cannot be used to circumvent the disclosure requirements of the Patent Local Rules or the “good cause” requirement for supplementation.  *See* Patent L.R. 3-6; *see also Sycamore IP Holdings LLC v. AT&T Corp.*, No. 2:16-CV-588-WCB, 2017 WL 4517953, at *3 (E.D. Tex. Oct. 10, 2017) (“[T]he Local Patent Rules require new theories of infringement to be presented in infringement contentions, not in emails or interrogatory responses.  More importantly, the Rules provide that a belated effort to amend infringement contentions, as here, requires leave of court, which in turn requires a showing of good cause. Sycamore has sought to bypass not only the formal step of amending its infringement contentions, but also the leave-of-court requirement and the requisite good-cause showing.”).

this undisclosed assertion in two ways.  First, he opines (incidentally, without support) that

██████████████████████████████████████████████████████████████████

████.  Ex. 4, ¶¶ 1396–98.   And second, Mr. Alpaugh asserts in support of his opinions

regarding "██████████████████████████████████████████████████████████

████████████" that the technology used in █████████████████████████████

████████████████████████████████████████████.  *Id.*, ¶ 1392–93.

These assertions are plainly barred by Synchronoss' failure to make proper disclosures under the Patent Local Rules.  As noted above, Synchronoss never complied with the requirement in Patent Local Rule 3-1(g) to identify its contention that certain Apple products embodied the asserted claims, or with the requirement in Patent Local Rule 3-2(e) to produce documents sufficient to show the operation of those products.  That alone is sufficient to strike the offending portions of Mr. Alpaugh's report. *See Wowza*, 2014 WL 709865, at *15 (striking portion of expert report that relied on embodiment assertion where the plaintiff failed to disclose under Patent Local Rule 3-1(g)); *cf. Richtek Tech. Corp. v. uPI Semiconductor Corp.*, No. C 09-05659 WHA, 2016 WL 4269095, at *2–3 (N.D. Cal. Aug. 15, 2016) (holding that a motion for leave to supplement 3-1(g) disclosures one month before the close of discovery "d[id] not even pay lip service to the requirement to seek this amendment diligently").

Synchronoss, for its part, does not dispute that its Rule 3-1(g) disclosures fail to identify Apple or that it failed to produce the required documentation.  It asserts, however, that its failures are excused because Dropbox took discovery concerning Apple in the case.  That argument is both wrong and legally foreclosed.  To begin with, the fact that Dropbox took discovery regarding Apple does not mean that it knew Synchronoss was going to contend in the litigation that any Apple product embodied the claimed invention.  To the contrary, Dropbox made clear in multiple letters that it understood Synchronoss ***not*** to be asserting that any licensee's product embodied the claimed invention, and Synchronoss never did anything to correct that understanding.  Ex. 17 at 3; Ex. 21 at 2.  Instead, Dropbox took such discovery because there was a license agreement between Synchronoss' predecessor FusionOne and Apple.  Moreover, neither Synchronoss nor any third party ever produced documents sufficient to show

the operation of the Apple products at issue, which would have allowed Dropbox to test Synchronoss' undisclosed contention.

Regardless, it would vitiate the Patent Local Rules if a party could excuse its failure to make proper disclosures by pointing to tangentially-related information gleaned during fact discovery.  The purpose of the disclosures required by the Patent Local Rules is "to further the goal of full, timely discovery and provide all parties with adequate notice of and information with which to litigate their cases." *Wowza*, 2014 WL 709865, at *13 (quoting *Genentech, Inc. v. Trustees of Univ. of Pennsylvania*, 2012 WL 424985, at *2 (N.D. Cal. Feb. 9, 2012)).  Allowing belated assertions of constructive notice to abdicate parties of the requirements of Local Rules 3-1 and 3-2 would create a perverse incentive for litigants to engage in gamesmanship, and would completely undermine a litigant's ability to rely on the opposing party's disclosures—upending the entire purpose of the Rules.  *See ASUS*, 2014 WL 1463609, at *1; *Genentech*, 2012 WL 424985, at *2.

Accordingly, Dropbox respectfully requests that the Court strike paragraph 1393 after the second sentence, and paragraphs 1396 to 1398 of Mr. Alpaugh's Rebuttal Report for failure to comply with Patent Local Rules 3-1(g) and 3-2(e).

## III.     CONCLUSION

For the foregoing reasons, Dropbox respectfully requests that the Court strike the portions of the Infringement Report and the Rebuttal Report discussed above.

Dated: February 22, 2019          Respectfully submitted,

By: /s/ *Adam D. Harber*
Thomas H.L. Selby (*Pro Hac Vice*)
David M. Krinsky (*Pro Hac Vice*)
Adam D. Harber (*Pro Hac Vice*)
Christopher J. Mandernach (*Pro Hac Vice*)
Sarah L. O'Connor (*Pro Hac Vice*)
D. Shayon Ghosh (SBN 313628)
James M. Rice (*Pro Hac Vice*)

WILLIAMS & CONNOLLY LLP

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Stephen E. Taylor (SBN 058452)
Jonathan A. Patchen (SBN 237346)
Karan S. Dhadialla (SBN 296313)

TAYLOR & PATCHEN, LLP

Attorneys for Defendant DROPBOX, INC.