# Redacted version of document sought to be sealed

MARK L. HOGGE (*Pro Hac Vice*)
NICHOLAS H. JACKSON (SBN 269976)
DENTONS US LLP
1900 K Street, NW
Washington, D.C.  20006
Telephone: (202) 496-7500
Facsimile: (202) 496-7756
E-mail: mark.hogge@dentons.com
E-mail: nicholas.jackson@dentons.com

SARAH S. ESKANDARI (SBN 271541)
JENNIFER D. BENNETT (SBN 235196)
KEVIN GREENLEAF (SBN 256896)
DENTONS US LLP
One Market Plaza
Spear Tower, 24th Floor
San Francisco, CA 94105
Telephone: (415) 267-4000
Facsimile: (415) 267-4198
E-mail: sarah.eskandari@dentons.com
E-mail: jennifer.bennett@dentons.com
Email: kevin.greenleaf@dentons.com

Attorneys for Plaintiff
SYNCHRONOSS TECHNOLOGIES, INC.

**UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**OAKLAND DIVISION**

| | |
|---|---|
| SYNCHRONOSS TECHNOLOGIES, INC., <br><br> Plaintiff, <br><br> vs. <br><br> DROPBOX, INC., <br><br> Defendant. | Case No.  4:16-cv-00119-HSG-KAW <br><br> **SYNCHRONOSS' OPPOSITION TO DROPBOX, INC.'S MOTION TO STRIKE PORTIONS OF THE EXPERT REPORTS OF CHRISTOPHER ALPAUGH** <br><br> Date:       May 16, 2019 <br> Time:      2:00 p.m. <br> Place: Courtroom 2, 4th Floor (Oakland) <br> Judge: Hon. Haywood S. Gilliam, Jr. |

1

# TABLE OF CONTENTS

2

I.     INTRODUCTION ........................................................................................ 1

3

II.    ARGUMENT.............................................................................................. 1

4

     A.    Mr. Alpaugh's Expert Report on Infringement Is Based on
          Synchronoss' Infringement Contentions and Discloses No New

5

          Theories. ........................................................................................ 1

6

          1.    Mr. Alpaugh's Expert Report on Infringement Opined on a

7

               Theory of Infringement Regarding the "Difference Transaction
               Generator" Element That Synchronoss' Had Presented in Its

8

               Infringement Contentions. ................................................... 2

9

          2.    Mr. Alpaugh's Expert Report on Infringement Opined On
               Theories of Infringement Regarding the "Data Store" and

10

               "Storage Server" Elements That Synchronoss Had Presented in
               Its Infringement Contentions. ................................................ 6

11

     B.    Mr. Alpaugh's Rebuttal Expert Report on Validity Is Based on

12

          Synchronoss' Previously Disclosed Positions. .................................... 9

13

          1.    Mr. Alpaugh Relies on Priority and Conception Dates for the
               '757 Patent, and Supporting Evidence for Those Dates, That

14

               Were Previously Disclosed by Synchronoss. ........................... 9

15

          2.    Mr. Alpaugh Properly Relied on ███████ Practice of the Claims
               of the Asserted Patents in His Rebuttal Expert Report

16

               Regarding Validity................................................................ 15

17

III.    CONCLUSION......................................................................................... 16

18

19

20

21

22

23

24

25

26

27

28

SYNCHRONOSS' OPPOSITION TO DROPBOX'S MOTION TO STRIKE

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Federal Cases**

4

*In re Abbott Labs. Norvir Anti-Trust Litig.*,
5
    No. C 04-1511 CW, 2007 WL 4365506 (N.D. Cal. Dec. 13, 2007) ..............................................15

6

*Apple Inc. v. Samsung Elecs. Co.*,
7
    No. 12-cv-0630-LHK PSG, 2013 WL 3246094 (N.D. Cal. June 26, 2013).....................................5

8

*Digital Reg of Tex., LLC v. Adobe Sys. Inc.*,
8
    No. CV 12-01971-CW, 2014 WL 1653131 (N.D. Cal. Apr. 24, 2014) .......................................6, 9

9

*Finjan, Inc. v. Proofpoint, Inc.*,
10
    No. 13-CV-05808-HSG, 2015 WL 9023166 (N.D. Cal. Dec. 16, 2015) ................................2, 3, 4

11

*Finjan, Inc. v. Symantec Corp.*,
    No. 14-cv-02998-HSG (JSC), 2018 WL 620156 (N.D. Cal. Jan. 30, 2018) ...................................5

12

*Golden Bridge Tech. Inc. v. Apple, Inc.*,
13
    No. 12-cv-4882-PSG, 2014 WL 1928977 (N.D. Cal. 2014) ...........................................................5

14

*Keithley v. The Homestore. com, Inc.*,
    553 F. Supp. 2d 1148, 1151-52 (N.D. Cal. 2008).........................................................................15

15

**Other Authorities**

16

Fed. R. Evid. 703 ...................................................................................................................................15

17

Local Rule 3-1 ...........................................................................................................................................2

18

Local Rule 3-1(f) .....................................................................................................................................10

19

Local Rule 3-2(b).............................................................................................................................11, 12

20

Rule 30(b)(6) ...........................................................................................................................................12

21

22

23

24

25

26

27

28

Plaintiff, Synchronoss Technologies, Inc. hereby opposes the Motion to Strike Portions of the Expert Reports of Christopher Alpaugh presented by Defendant, Dropbox, Inc ("Dropbox").

## I.   INTRODUCTION

Having reviewed Synchronoss' disclosures, contentions, and expert reports, Dropbox must recognize that the asserted patents are valid, and that Dropbox's accused products infringe the claims of those patents.  Instead of defending against Synchronoss' allegations on the merits, Dropbox is attempting to improperly strike portions of Mr. Alpaugh's expert reports that are most damaging to Dropbox's positions.

Consistent with the Patent Local Rules, Synchronoss disclosed its positions regarding Dropbox's infringement of the asserted patents in Synchronoss' infringement contentions, and Synchronoss' expert, Christopher Alpaugh, has maintained and opined upon those positions in his expert report on infringement.  Mr. Alpaugh's expert report on infringement simply provides further context and explanation regarding the infringement theories that Synchronoss previously disclosed. Likewise, in Mr. Alpaugh's rebuttal expert report on validity, Mr. Alpaugh relies on contentions that had been previously disclosed to Dropbox.  Dropbox does not, and cannot, point to any real prejudice to it from the timing of the disclosures of Synchronoss' positions or from Mr. Alpaugh's expert reports that opine upon these positions.  In fact, this court granted Synchronoss' request to amend its contentions to specifically cite to the source code and in doing so, the Court acknowledged there would be no prejudice to Dropbox as they had been on notice.  (Dkt. No. 195.)  Accordingly, there is no proper reason for the Court to strike any portion of the expert reports of Mr. Alpaugh.  Dropbox's motion should be denied.

## II.   ARGUMENT

### A.   Mr. Alpaugh's Expert Report on Infringement Is Based on Synchronoss' Infringement Contentions and Discloses No New Theories.

Mr. Alpaugh's report on infringement is consistent with the infringement contentions and amended infringement contentions disclosed by Synchronoss to Dropbox on February 15, 2017 and March 30, 2018, respectively.  (Dkt. No. 275-9 (Plaintiff's Disclosure of Asserted Claims and Infringement Contentions, dated February 15, 2017); Dkt. No. 275-10 (Plaintiff's

First Supplemental Disclosure of Asserted Claims and Infringement Contentions, dated March 30, 2018)).

Patent Local Rule 3-1(c) provides that a plaintiff is to provide "[a] chart identifying specifically where each limitation of each asserted claim is found within each Accused Instrumentality." Synchronoss has done just that, offering its theories of infringement in compliance with the Patent Local Rules, and Mr. Alpaugh's expert report on infringement properly offers opinions that discuss those theories and the evidence supporting them.

### 1. Mr. Alpaugh's Expert Report on Infringement Opined on a Theory of Infringement Regarding the "Difference Transaction Generator" Element That Synchronoss' Had Presented in Its Infringement Contentions.

Dropbox alleges that Mr. Alpaugh's expert report on infringement presents a new theory regarding the "difference transaction generator" element. Specifically, Dropbox alleges that "Synchronoss' contentions did not mention or cite the ███████████████ at all, and mentioned the ███████████ only in passing (and without any discussion) as part of a lengthy block quote from a Dropbox blog post." (Dkt. No. 274-4 at 9.) Dropbox further asserts that "Mr. Alpaugh's infringement theory for the 'difference transaction generator' limitation, unlike the theory in Synchronoss' contentions, is premised—in its entirety—on the ██████████ ██████████ (*Id.*)

Dropbox's arguments rely solely on the fact that Synchronoss did not quote the source code in its infringement contentions, but instead only cited it. But there is no requirement for Synchronoss to quote lengthy lines of source code when its precise citations to lines of source code made abundantly clear Synchronoss' theory of infringement. Importantly, Synchronoss's citations to Dropbox's code in its supplemental infringement contentions sufficiently provided Defendants adequate notice as to the theories of infringement under the local rules. *See Finjan, Inc. v. Proofpoint, Inc.*, No. 13-CV-05808-HSG, 2015 WL 9023166, at *2-3 (N.D. Cal. Dec. 16, 2015) (reasoning that pinpoint citations to source code are not a *per se* requirement under Patent Local Rule 3-1, but are one way to meet that Rule, which can generally be met by providing notice of a patentee's theory of infringement, such as by identifying functionality). Further,

1   Dropbox's allegations are undermined by its own statements and by the source code of its

2   infringing products.  As Dropbox acknowledges, "█████████████████████████

3   ██████████████████████████████████████████

4   ██████████████████████████████████████████

5   ████████████████████████████████" (Dkt. 274-4 at 4.)  Dropbox further

6   acknowledges that "Synchronoss' contentions say that '[s]oftware associated with the difference

7   transaction generator is found at:' and identify specific lines in Dropbox's source code." (*Id.* at

8   9)  Dropbox thereby admits that Synchronoss has been specific in identifying infringement in its

9   contentions  by pointing to particular lines of source code.  Dropbox then states that "███████

10   ██████████████████████████ (*Id.*, citing Ex. 9 at 29–30, 107–09, 118–

11   20, and 148–50).  However, Dropbox apparently failed to read the cited code or hides the fact

12   that the cited code, reproduced below, calls █████████████████████████:

13                     ████████████████████████

14                       █ █████████████████████████

15                       ███████████████████ *See e.g.*, Synchronoss First

16                       Supplemental Infringement Contentions [Dkt. No. 274-12] at 4, 31, 53,

17                       83, 108–09, 118–119, 138–39, 143, and 149–50.  Synchronoss'

18                       contentions also cited ██████████████████████

19                       ██████████████████. *Id*. at 4, 15, 30, 53, 73, 108, 120, 135,

20                       138, 144, and 149.

21   Synchronoss' supplemental infringement contentions could not have been clearer, providing

22   *single-line, pinpoint citations* to ██████████████.  In addition to the portions of Mr.

23   Alpaugh's report that Dropbox specifically objects to, Mr. Alpaugh provided additional citations

24   to Dropbox's source code that has additional calls to a ██████████████████████

25   ████████████████████:

26                     ████████████████████████

27             ○   █████████████████████████████████

28                       █████████████████████████████

1    ███" *See, e.g.*, Synchronoss First Supplemental Infringement Contentions

2    [Dkt. 274-12] at 18, 53, 73, and 83. Synchronoss' contentions also cited

3    ████████████████████████████ *Id.* at 15, 73, and 135.

4    Again, Dropbox's argument relies solely on the fact that Synchronoss did not quote the source

5    code, but instead only cited it. Had Synchronoss quoted the cited source code, the word "████"

6    would have appeared dozens of times.  Dropbox has no excuse for ignoring or hiding that fact

7    given that Synchronoss provided pinpoint citations, contrary to what Dropbox did with its

8    contentions in citing dozens of entire files, consisting of thousands of lines of code, without any

9    pinpoint citations. Having identified previously, in its infringement contentions, the ████████

10   ████████████████ as central to the accused products meeting the "difference

11   transaction generator" limitation, Synchronoss properly maintained that theory in Mr. Alpaugh's

12   expert report on infringement.

13       Finally, Dropbox nonsensically argues that Synchronoss alleges ███████████

14   ██████████████████. This argument is meant to confuse the court. It is

15   impossible to ██████████████████ and expect to get useful results. Mr.

16   Alpaugh clearly testified ████████████████████████████

17   ████████████████████; below is one example:

18   ████████████████████████████
19
20
21   ████████████████████████████
22
23   ████████████████████████████
24
25
26
27   *See, e.g.*, Synchronoss First Supplemental Infringement Contentions [Dkt. 274-12] at 12

28   (emphasis added). Therefore, Dropbox is correct that Synchronoss' infringement contentions

1    disclosed ███████████, which is consistent with Mr. Alpaugh's report.

2        The Patent Local Rules do not require absolute precision in a party's contentions.  "While

3    greater specificity is certainly preferable, the Patent Local Rules do not require perfect clarity,

4    only reasonable notice that is 'as specific as possible' given the information of which the

5    plaintiff is aware." *Finjan, Inc. v. Blue Coat Sys.*, Inc., No. 13-cv-3999-BLF, 2015 WL 3640694,

6    at *3 (N.D. Cal. June 11, 2015).  Accordingly, it was appropriate and to be expected that, as

7    Dropbox puts it, "████████████████████████████████████████████

8    ████████████████████████████████████████████████████

9    ████████████████████████████████████████." (Dkt.

10   274-4 at 4.)  As this Court has reasoned, "Parties . . . need not 'prove up' their theories by

11   providing evidence beyond the material they have at the time they make their contentions."

12   *Apple Inc. v. Samsung Elecs. Co.*, No. 12-cv-0630-LHK PSG, 2013 WL 3246094, at *3 (N.D.

13   Cal. June 26, 2013).  Importantly, the "scope of contentions and expert reports are not . . .

14   coextensive." *Golden Bridge Tech. Inc. v. Apple, Inc*., No. 12-cv-4882-PSG, 2014 WL 1928977,

15   at *3 (N.D. Cal. 2014) (internal quotation marks omitted). "Contentions need not disclose

16   specific evidence, whereas expert reports must include a complete statement of the expert's

17   opinions, the basis and reasons for them, and any data or other information considered when

18   forming them." *Id*.  Consistent with the intent of the Patent Local Rules, the original and

19   amended infringement contentions of Synchronoss put Dropbox on notice of Synchronoss

20   theory of infringement.  *Finjan, Inc. v. Symantec Corp*., No. 14-cv-02998-HSG (JSC), 2018 WL

21   620156, at *6 (N.D. Cal. Jan. 30, 2018) (finding no prejudice where claims chart "disclosed

22   enough information to put [plaintiff] on notice" of challenged theory).

23       Given the content of Synchronoss' infringement contentions, Dropbox cannot genuinely

24   claim surprise at the opinions offered in Mr. Alpaugh's expert report on infringement regarding

25   "████████████████████████.  Synchronoss' position regarding

26   Dropbox's accused products meeting that element through the ██████████ has been

27   apparent in this case since the time those contentions were served back in 2017.  This position

28

was underscored by Synchronoss' responses to Dropbox's discovery requests.  Specifically, Dropbox posed the following request for admission:



(Exhibit 1, Dropbox's First Set of Requests for Admission, served on August 21, 2018, at 2.)  In response, Synchronoss, subject to its specific objections, admitted that ████████████ ████████████████████ (Exhibit 2, Synchronoss' Responses and Objections to Dropbox's First Set of Requests for Admission, served on September 20, 2018, at 4.)  As such, Synchronoss again made clear that ██████████████████████████████████ ████████████████

As this Court has reasoned, "[t]he threshold question in deciding whether to strike an expert report is . . . whether the expert has permissibly specified the application of a disclosed theory or impermissibly substituted a new theory altogether." *Digital Reg of Tex., LLC v. Adobe Sys. Inc.*, No. CV 12-01971-CW, 2014 WL 1653131, at *2 (N.D. Cal. Apr. 24, 2014).  Here, Mr. Alpaugh has relied solely on theories that were previously disclosed by Synchronoss.  Therefore, there is no proper basis to strike any part of his expert reports.

> **2.    Mr. Alpaugh's Expert Report on Infringement Opined On Theories of Infringement Regarding the "Data Store" and "Storage Server" Elements That Synchronoss Had Presented in Its Infringement Contentions.**

Dropbox incorrectly argues that Synchronoss' analysis of the "data store" and "storage server" elements of the '757 patent has changed.  Dropbox's argument is confusing because it conflates analyses from two claims with different limitations.  Claim 1 recites "a data store," and claim 24 recites "a storage server."  Synchronoss analyzed these two limitations differently.  Dropbox conjures "a new theory" by conflating analyzes from these different claims. For example, Dropbox mischaracterizes Mr. Alpaugh's testimony concerning claim 24 with the different claim limitations of claim 1:



(Dkt. No. 274-4 at 13 (citations omitted) (underline added).)  The underlined testimony clearly distinguishes between the "data store" and the "storage server."  Synchronoss now separately analyzes claims 1 and 24.

Claim 1 of the '757 patent includes the element, "a data store coupled to the network and in communication with the first and second systems…."  Synchronoss's infringement contentions stated the following concerning this limitation:



(Dkt No. 274-12, Synchronoss' Infringement Contentions, at 15 (emphasis added).)  This is consistent with Mr. Alpaugh's report, which states,



(Dkt. No. 274-6, Alpaugh Report at ¶ 103.)  Nothing's changed. Therefore, Synchronoss has consistently referred to ████ as the "data store."

Any discussion of the term ████████ concerning the data store is provide the context that the █████████████████████████ the data store. Dropbox's expert provided testimony consistent with this:

(Exhibit 6, Rebuttal Expert Report of Dr. Michael Freedman, dated January 28, 2019, at ¶¶ 74-75.)

Dropbox appears to conflate Synchronoss' analysis of "a storage server having an Internet connection" of claim 24 with the "data store" of claim 1.  Synchronoss's infringement contentions cited ██████████████████████████████████████████████ as being the recited "storage server":

(Dkt. 274-12, Synchronoss' Infringement Contentions, at 135-6 (emphasis added).)  Mr. Alpaugh's report is consistent with this: "██████████████████████████████████████ ██████████████████████████████████████████████████████████."  (Dkt. No. 274-6, Alpaugh Report at ¶ 182.)  His report cited the same code in the quote above from the infringement contentions.  (*Id*. at ¶¶ 182-84). As Mr. Alpaugh also opined:

1  (*Id.* at ¶ 184.)  Dropbox's own expert testified that ███████████████

2  ██████.  Exhibit 6, Rebuttal Expert Report of Dr. Michael Freedman, dated January 28, 2019, at

3  ¶¶ 74-75.  Synchronoss' analysis of the recited "storage server" have been consistent.

4         As shown, Synchronoss disclosed in its infringement contentions all of the positions upon

5  which Mr. Alpaugh has opined in his expert report on infringement.  Synchronoss sufficiently put

6  Dropbox on notice of its infringement positions in a timely manner, consistent with the Patent Local

7  Rules. Further, Mr. Alpaugh's expert report does not rely on any new or changed theories. Rather,

8  Mr. Alpaugh's report simply did exactly as required, namely, it "included a complete statement of

9  the expert's opinions, the basis and reasons for them, and any data or other information considered

10 when forming them." *Digital Reg of Texas, LLC v. Adobe Sys. Inc.*, No. CV 12-01971-CW (KAW),

11 2014 WL 1653131, at *2 (N.D. Cal. Apr. 24, 2014). Accordingly, there is no basis for striking any

12 portion of that expert report.

     **B.    Mr. Alpaugh's Rebuttal Expert Report on Validity Is Based on
            Synchronoss' Previously Disclosed Positions.**

13

14

15          **1.    Mr. Alpaugh Relies on Priority and Conception Dates for the '757
                   Patent, and Supporting Evidence for Those Dates, That Were
                   Previously Disclosed by Synchronoss.**

16

17        Synchronoss' position regarding the conception date for the invention described in the

18 asserted patent claims has not changed since this suit began, and Synchronoss properly complied

19 with the Patent Local Rules in disclosing the priority and conception dates for the patents in suit.

20 In his rebuttal expert report regarding validity, Mr. Alpaugh describes that he has reviewed the

21 corroborating evidence for the priority and conception dates and opines on the dates that he

22 believes are supported by the evidence.

23        With its initial responses to Dropbox's first set of interrogatories, served on February 8,

24 2017, Synchronoss indicated that the conception and reduction to practice of the patents in suit

25 was in the late 1995/early 1996 timeframe.  As Synchronoss stated:

26              In late 1995 and through early 1996, Richard Onyon, Leighton
                Ridgard, and Robert Garner were frustrated about not having the same
27              document versions available at home that they had recently edited at
                work, or vice versa without having to make a copy and take it with
28              them, then upload it to the other machine. The only existing options

were slow and laborious programs that allowed people to sync entire files from one machine to another via a physical connection. They wanted to do at least two things: 1) sync without contact, and 2) sync faster, without importing the entire document. The problem was how to sync two machines that weren't next to each other, i.e. within physical connection range. They decided to try to solve this problem. In or around early 1996, Mr. Ridgard built a prototype software program that was able to accomplish this. It was a rudimentary prototype. Shortly thereafter, Mr. Garner created the next version of the prototype that further refined the differencing engine aspect of the software, also enabling work across multiple machines. Around this time, Dave Moulter, Donald Cash, and Liam Stannard also joined FusionOne and provided input into certain sections of the invention including the specification and drawings, as well as other possible applications of the synchronization software, for example Mr. Stannard was able to utilize the invention on mobile phones. The dates of conception and reduction to practice for the patents are within the timeframe describe above.

(Exhibit 3, Plaintiff's Responses and Objections to Defendant's First Set of Interrogatories Nos. 1-7, dated February 8, 2017, at 13.)

Patent Local Rule 3-1(f) provides that a party's Disclosure of Asserted Claims and Infringement Contentions shall contain "[f]or any patent that claims priority to an earlier application, the priority date to which each asserted claim allegedly is entitled." (Patent Local Rule 3-1(f).)

With its initial infringement contentions, served on February 15, 2017, Synchronoss provided the following statement:

> Pursuant to Local Patent Rule 3-1(f): **The claims of the '757 patent are entitled to an priority date at least as early as January 26, 2000.** The claims of the '446 patent are entitled to a priority date at least as early as November 10, 2000. The claims of the '696 patent are entitled to a priority date at least as early as January 25, 2000. **The conception and reduction to practice of the claims of the Asserted Patents occurred in late 1995/early 1996.** Plaintiff further states that discovery is on-going and Plaintiff therefore specifically reserves the right to supplement, amend, and/or modify this identification.

(Dkt. No. 275-9 (Plaintiff's Disclosure of Asserted Claims and Infringement Contentions, dated February 15, 2017) at 3 (emphasis added).)  When serving its amended infringement contentions

1  on March 30, 2018, Synchronoss maintained its positions regarding the priority and conception

2  dates, stating:

3          Synchronoss is not supplementing its Patent L.R. 3-1(f)
        disclosures at this time. Synchronoss' Infringement Contentions for

4        Patent L.R. 3-1(f) remain in effect.
            Synchronoss reserves the right to update its infringement

5        contentions to reflect the results of its investigation and discovery in
        this matter.

6

7  (Dkt. No. 275-10 (Plaintiff's First Supplemental Disclosure of Asserted Claims and Infringement

8  Contentions, dated March 30, 2018) at 5.)  Accordingly, Synchronoss position regarding the dates of

9  conception and priority were made clear.

10         Beyond articulating the dates of conception and priority, Synchronoss also provided

11  documents in support of these dates.  Patent Local Rule 3-2(b) provides that, with its Disclosure of

12  Asserted Claims and Infringement Contentions, the party claiming patent infringement shall produce

13  or make available for inspection and copying:

14          All documents evidencing the conception, reduction to practice, design,
        and development of each claimed invention, which were created on or

15        before the date of application for the patent in suit or the priority date
        identified pursuant to Patent L.R. 3-1(f), whichever is earlier[.]

16

17  (Patent Local Rule 3-2(b).).  Synchronoss did just that, producing supporting documents with both

18  its initial and amended infringement contentions.  With its infringement contentions, Synchronoss

19  advised Dropbox of the documents that supported the dates of conception and priority, stating:

20          In accordance with Local Patent Rule 3-2 Plaintiff identifies the
        following documents produced alongside the disclosures made pursuant

21        to Local Patent Rule 3-1. Pursuant to obligations under the Scheduling
        Order and the Local Rules, Plaintiff will continue to supplement these

22        identifications as more information becomes available.
                                    * * *

23        Local Patent Rule 3-2(b)
            In accordance with the above, Plaintiff identifies the following

24        documents SYNCH_DROPBOX0004467 – 4911, 5083 – 5113. Plaintiff
        further states that discovery is ongoing and Plaintiff therefore

25        specifically reserves the right to supplement, amend, and/or
        modify this identification.

26

27  (Dkt. No. 275-9 (Plaintiff's Disclosure of Asserted Claims and Infringement Contentions, dated

28  February 15, 2017) at 5.)  With its amended infringement contentions, Synchronoss stated:

> Patent L.R. 3-2(b): In accordance with the above, in addition to documents identified in Synchronoss' Infringement Contentions, Synchronoss hereby supplements its disclosure by identifying the following documents: SYNCH_DROPBOX0005490 - 5627, SYNCH_DROPBOX0005924 - 6141, SYNCH_DROPBOX0006276 - 6281, SYNCH_DROPBOX0006343 - 6400, SYNCH_DROPBOX0006440 - 6510, SYNCH_DROPBOX0006544 - 7162, SYNCH_DROPBOX0007492 - 7530, SYNCH_DROPBOX0009606 - 9680, SYNCH_DROPBOX0009715 - 9969, SYNCH_DROPBOX00010049 -10073, SYNCH_DROPBOX00010127 - 10465.  Plaintiff further states that discovery is on-going and therefore specifically reserves the right to supplement, amend, and/or modify this identification.

(Dkt. 275-10 (Plaintiff's First Supplemental Disclosure of Asserted Claims and Infringement Contentions, dated March 30, 2018) at 6-7.)  Accordingly, Synchronoss had provided supporting evidence for its asserted dates of priority and conception.  Although Dropbox takes issue with the volume of documents cited by Synchronoss in identifying "two Bates ranges' worth of produced documents in its Rule 3-2(b) disclosure" and "more than 1500 pages" with its supplemental contentions (Dkt. No. 274-4 at 17), it is important to note that Patent Local Rule 3-2(b) calls for the production of "[a]ll documents evidencing the conception, reduction to practice, design, and development of each claimed invention, which were created on or before the date of application for the patent in suit or the priority date…."  Accordingly, the documents cited by Synchronoss relate to various key dates in the life of the claimed invention, and Synchronoss should not be faulted for the volume of documents required to be cited to comply with that Local Patent Rule.

Dropbox had all documents evidencing the dates for conception and priority before the depositions of the witnesses who testified on those subjects.  For example, Mr. Leighton Ridgard, one of the co-inventors of the patents in suit, was also Synchronoss' designee on various Rule 30(b)(6) technical subjects, including those regarding conception, reduction to practice, and priority dates for the patents in suit.  Prior to his deposition on November 8, 2018, Synchronoss had produced to Dropbox all documents supporting the priority dates and conception dates that Mr. Alpaugh cited in his rebuttal expert report on validity.[1]  Mr. Ridgard's testimony was

---

[1] Notably, it was the common practice of the parties in this case to produce documents relevant to a deposition right before that deposition.  In many instances, documents relevant to a

1  consistent with the conception and priority dates previously disclosed by Synchronoss.  For

2  example, Mr. Ridgard testified with the respect to the '757 patent:

3      Q.      Do you feel that anything that you did between 1998 and when
        the patent was filed in 2000 differed in concept of what the invention
4       was as to what we've already discussed?
                                                * * *
5       THE WITNESS:         Ultimately, the patent reflected what we had
        conceived prior to 1998.
6                                               * * *
7       Q.      So the invention that's in the '757 patent is -- is captured by
        what you and your coinventors did before 1998?
8
        A.      Yes.
9

10  (Exhibit 4, Transcript of November 8, 2018 Deposition of Leighton Ridgard, at 137:10-21.)  In his

11  rebuttal expert report on validity, Mr. Alpaugh relies on dates for conception and priority that are

12  consistent with this testimony.  As Mr. Alpaugh states:

13          It is my opinion, based on the testimony of the inventors, and
        various other evidence cited below, that the conception of the '757
14      patent occurred before June 12, 1997, and that the evidence established
        that the inventors were working to reduce the invention to practice at
15      least as early as June 12, 1997. It is also my opinion that the inventors
        testimony, and various other evidence cited below, establishes that the
16      inventors were diligent in further reducing their invention to practice
        and bringing it to market between June 12, 1997 and the filing date of
17      the patent. The basis for my opinion is below.

18  (Dkt. No. 274-8, Alpaugh Rebuttal Expert Report, dated January 28, 2019, at ¶ 143.)

19          Dropbox now complains that a document relied upon by Mr. Alpaugh in his rebuttal expert

20  report to support the June 12, 1997 priority and conception date was produced on October 2, 2018,

21  after the close of fact discovery in the case.  (Dkt. No. 274-4 at 17.)  What Synchronoss relegates

22  to a footnote is the critical information regarding the timing of that production:  "Synchronoss

23  properly produced this file during a one-month extension for the limited purpose of allowing the

24  parties to take remaining, already-noticed depositions after the September 21, 2018 deadline for

25

26  _____

27  deposition were produced during the deposition.  On some occasions, documents relevant to a
    deposition were produced after a deposition had taken place.  Accordingly, Dropbox cannot
    claim prejudice due to the timing of the production of documents bearing on the issue of the
28  conception and priority dates for the patents in suit.

1   completing fact discovery, and any related document production cleanup." (*Id*. at 17 n.8.)

2   Importantly, the Court had initially set a deadline of September 21, 2018 for fact discovery to be

3   completed (Dkt. No. 173). On September 24, 2018 and October 22, 2018, the Court issued Orders

4   permitting currently noticed depositions to be completed by November 9, 2018, and extending the

5   deadline for the Parties to serve their initial expert disclosures and reports until November 20,

6   2018 (Dkt. No. 224; Dkt. No. 232). Further, on November 19, 2018,  the Court issued an Order

7   permitting currently noticed depositions to be completed by November 29, 2018, and extended the

8   parties' deadline to serve initial expert disclosures and reports to December 3, 2018, and extended

9   the deadlines for further expert disclosures and reports accordingly (Dkt. No. 244).  The document

10  at issue was produced in time to allow Mr. Ridgard (and other's) depositions to be taken, and the

11  document was produced **more than a month before** Mr. Ridgard's deposition. As such,

12  Synchronoss' disclosures of its positions and documentary support for those positions was timely

13  and allowed Dropbox a sufficient opportunity to inquire about those positions at relevant

14  depositions of fact witnesses.  Dropbox will have a further opportunity to inquire about those

15  positions during the upcoming expert depositions. Thus, there is zero prejudice to Dropbox in this

16  regard.

17         If one considers the context in which Mr. Alpaugh is relying on the June 12, 1997, date in

18  question, the prejudice that Dropbox alleges is shown to be illusory.  Here, Synchronoss disclosed

19  in its infringement contentions that the conception/reduction to practice of the asserted patents

20  occurred in late 1995/early 1996 timeframe.  Mr. Alpaugh has stated in his rebuttal expert report

21  on validity that he has been able to corroborate the conception/reduction to practice date back to

22  June 12, 1997.  This is later in time, so there is no harm here.  This is not the case of a patentee

23  claiming a conception date, the accused infringer finding good prior art, and the patentee's expert

24  then arguing for an earlier conception date to predate the prior art.

25         If Dropbox were concerned about Synchronoss' alleged failure to comply with the Patent

26  Local Rules, it should have raised that issue in a timely fashion rather than wait until fact

27  discovery had closed to assert prejudice and attempt to strike Mr. Alpaugh's rebuttal expert report

28  regarding validity. However, Dropbox never raised this as an issue to Synchronoss. For example,

Dropbox had the option of filing a motion to compel compliance with the Patent Local Rules if it believed that Synchronoss was not complying with them.  *See In re Abbott Labs. Norvir Anti-Trust Litig.*, No. C 04-1511 CW, 2007 WL 4365506, at *2 (N.D. Cal. Dec. 13, 2007) (denying motion to estop a patent holder from asserting an earlier invention date, where patent holder had used "at the latest" language to qualify its interrogatory response regarding its invention date, because the movant had been "entitled to challenge the sufficiency of [patent holder's] responses by filing a motion to compel or otherwise seeking relief from the Court," but had instead proceeded with an expert report despite the imprecise nature of the patent holder's interrogatory response).  Dropbox has shown neither prejudice related to Synchronoss' disclosure of the priority or conception date, nor from Mr. Alpaugh's reliance on those dates in his rebuttal expert report regarding validity. *See, e.g., Keithley v. The Homestore. com, Inc*., 553 F. Supp. 2d 1148, 1151-52 (N.D. Cal. 2008) (finding that defendant was not materially prejudiced by the disclosure of a priority date with plaintiff's final infringement contentions, and refusing to strike the amended priority date).

As shown, there is no reason to strike the opinions of Mr. Alpaugh that relate to the priority and conception dates for the '757 patent.

> **2.      Mr. Alpaugh Properly Relied on ▮▮▮▮ Practice of the Claims of the Asserted Patents in His Rebuttal Expert Report Regarding Validity.**

Although Synchronoss did not identify in its infringement contentions the products of its licensee, ▮▮▮, that practice the claims of the asserted patents, there is nothing improper about Mr. Alpaugh's reliance on such evidence in providing his opinion.  As stated in Fed. R. Evid. 703, an expert "may base an opinion on facts or data in the case that the expert has been made aware of or personally observed."

Dropbox has been well-aware that it is Synchronoss' position that ▮▮▮ practices the claims of the asserted patents.  For example, in its interrogatory responses, Synchronoss stated:

> Synchronoss contends that the license to the technology transferred pursuant to the aforementioned license agreement with ▮▮▮▮▮▮▮▮▮ and Synchronoss assignee, FusionOne, Inc., later acquired by Synchronoss) was for the software and its patent protection, which includes the Patents-in-Suit and other

patents, which have claims that read on the technology transferred to ██████ (Exhibit 5, Synchronoss' Third Supplemental Responses to Dropbox's Second Set of Interrogatories, dated August 29, 2018, at 6.)

Dropbox had the opportunity to take discovery of ██████ and did conduct such discovery. As Dropbox itself recognizes, "Dropbox took such discovery because there was a license agreement between Synchronoss' predecessor FusionOne and ██████" (Dkt. No. 274-4 at 24.) In taking such discovery, it was made apparent to Dropbox that ██████ was practicing the claims of the asserted patents. Accordingly, there was no prejudice to Dropbox, since it knew that ██████ practiced those claims and had the opportunity to inquire about that subject. The fact that Dropbox did not probe that issue when given the opportunity should not be used to prevent Mr. Alpaugh from relying on ██████s practice of the claimed invention when rendering his opinion regarding patent validity.

## III.   CONCLUSION

For the foregoing reasons, Synchronoss respectfully requests that the Court deny Dropbox's motion to strike portions of the expert report of Mr. Alpaugh regarding infringement and portions of the rebuttal expert report of Mr. Alpaugh regarding validity.

1  Dated:  March 8, 2019                              By: _/s/ Sarah S. Eskandari_
2                                                          MARK L. HOGGE (*Pro Hac Vice*)
                                                           NICHOLAS H. JACKSON (SBN 269976)
3                                                          DENTONS US LLP
                                                           1900 K Street, NW
4                                                          Washington, D.C.  20006
                                                           Telephone: (202) 496-7500
5                                                          Facsimile: (202) 496-7756
                                                           E-mail: mark.hogge@dentons.com
6                                                          E-mail: nicholas.jackson@dentons.com

7                                                          JENNIFER D. BENNETT (SBN 235196)
                                                           SARAH S. ESKANDARI (SBN 271541)
8                                                          KEVIN GREENLEAF (SBN 256896)
                                                           DENTONS US LLP
9                                                          One Market Plaza
                                                           Spear Tower, 24th Floor
10                                                         San Francisco, CA 94105
                                                           Telephone: (415) 267-4000
11                                                         Facsimile: (415) 267-4198
                                                           E-mail: sarah.eskandari@dentons.com
12                                                         E-mail: jennifer.bennett@dentons.com
                                                           Email: kevin.greenleaf@dentons.com
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SYNCHRONOSS' OPPOSITION TO DROPBOX'S MOTION TO STRIKE

1

**CERTIFICATE OF SERVICE**

2

3
I, Sarah S. Eskandari, hereby declare:

4
I am over the age of eighteen years and not a party to the within action.  My business address

5
is Dentons US LLP, 1530 Page Mill Road, Suite 200, Palo Alto, California  94304-1125.

6
On March 8, 2019, I caused the following documents, described as: **SYNCHRONOSS'**

7
**OPPOSITION TO DROPBOX, INC.'S MOTION TO STRIKE PORTIONS OF THE EXPERT**

8
**REPORTS OF CHRISTOPHER ALPAUGH,** to be served via e-mail upon all counsel of record in

9
the above captioned matter.

10
I declare under penalty of perjury that the above is true and correct.  Executed on

11
March 8, 2019, in San Francisco, California.

12

13
By: _/s/ Sarah S. Eskandari_____
        Sarah S. Eskandari

14

15

16
109290654

17

18

19

20

21

22

23

24

25

26

27

28