UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SYNCHRONOSS TECHNOLOGIES, INC., <br><br> Plaintiff, <br><br> v. <br><br> DROPBOX INC., et al., <br><br> Defendants. | Case No. 16-cv-00119-HSG <br><br> **ORDER GRANTING DROPBOX'S MOTION FOR SUMMARY JUDGMENT AND DENYING AS MOOT SYNCHRONOSS'S MOTION FOR SUMMARY JUDGMENT** <br><br> Re: Dkt. Nos. 275, 297, 306, 313, 315, 317, 322, 324, 326, 330, 333 |

Pending before the Court are cross-motions for summary judgment filed by Plaintiff Synchronoss Technologies, Inc. ("Synchronoss") and Defendant Dropbox, Inc. ("Dropbox"), briefing for which is complete. Dkt. Nos. 317 ("Dropbox Mot."), 333, 362, 368 ("Dropbox Opp."), 387 ("Dropbox Reply"), 389. The Court held a hearing on these motions on June 14, 2019. For the reasons discussed below, the Court **GRANTS** Dropbox's motion for summary judgment, and thus **DENIES AS MOOT** Synchronoss's motion for summary judgment.

I.   **BACKGROUND**

This case concerns two patents related to data synchronization: U.S. Patent Nos. 6,671,757 ("the '757 Patent") and 7,587,446 ("the '446 Patent") (collectively, "the Asserted Patents").

A.   **The '757 Patent**

The '757 Patent is titled "Data Transfer and Synchronization," and claims a system and method for "efficiently, quickly and easily synchronizing devices which can couple to the Internet, or any network." *See* '757 Patent, 3:23–25. Synchronoss alleges that Dropbox directly infringes claims 1, 8, 9, 14, 16, 21, 24, 26, and 28 of the '757 Patent. *See* Dkt. No. 316-6 ("Alpaugh Report") ¶ 2(i). Independent claim 1 provides:

|**Claim 1**|
|---|
|1. A **system** for synchronizing data between a first system and a second system, comprising:<br>　a first sync engine on the first system interfacing with data on the first system to provide difference information in a difference transaction;<br>　a data store coupled to the network and in communication with the first and second systems; and<br>　a second sync engine on the second system coupled to receive the difference information in the difference transaction from the data store via the network, and interfacing with data on the second system to update said data on the second system with said difference information;<br>　wherein each said sync engine comprises a data interface, a copy of a previous state of said data, and a difference transaction generator.|

　　The '757 Patent's two other independent claims, claims 16 and 24, include similar limitations as claim 1:

|**Claim 16**|
|---|
|16. A **system**, comprising:<br>　a first device including at least a first data file and first differencing code, the first device having an input and an output coupled to a network to receive first device data change transactions from, and provide change transactions generated by the first differencing code based on said at least one data file to, said network;<br>　a data store coupled to the network having at least one data structure coupled to store change transactions; and<br>　a second device including at least a second data file and second differencing code, the second device having an input and an output coupled to the network to receive said first device data change transactions from, and provide second change transactions generated by the second differencing code based on said at least second data file to, said data store;<br>　wherein said first differencing code includes a first sync engine having a first data interface, a first copy of a previous state of said data, and a first difference transaction generator, and said second differencing code includes a second sync engine having a second data interface, a second copy of a previous state of said data, and a second difference transaction generator.|
|**Claim 24**|
|24. An Internet synchronization **system**, comprising:<br>　a storage server having an Internet connection;<br>　a first device coupled to the Internet and including a first device sync engine interfacing with data on the first device, the first device in communication with at least the storage server; and<br>　a second device coupled to the Internet and including a second device sync engine interfacing with data on the second device, the second device in communication with at least the storage server;|

> wherein each said device sync engine comprises a data interface, a copy of a previous state of said data, and a difference transaction generator.

In short, the '757 Patent discloses a system and method for synchronizing data between two systems or devices by transmitting from one system to another certain "difference information," which the parties agree means "information that comprises only the changes to one system's data which have occurred on that system, and instructions for implementing those changes." *See* Dkt. No. 168 at 3. This difference information is transmitted through what is called a "data store." *See, e.g.*, '757 Patent, 3:43–45.

### B. The '446 Patent

The '446 Patent incorporates the '757 Patent in its entirety, and is titled "Acquisition and Synchronization of Digital Media to a Personal Information Space." The invention "comprises a method for acquiring and maintaining a digital music store in personal information space, comprising: maintaining a personal information space identified with a user including data capable of being used on a client device, and transferring at least a portion of the data from the personal information space to an Internet-coupled device in response to a user request." '446 Patent, 3:45–51. Synchronoss alleges that Dropbox directly infringes claims 1, 2, 6–15, 18 and 19 of the '446 Patent. *See* Alpaugh Report ¶ 2(ii). Independent claim 1 provides:

**Claim 1**

1. A **method** of transferring media data to a network coupled apparatus, comprising:

 (a) maintaining a personal information space identified with a user including media data comprising a directory of digital media files, the personal information space being coupled to a server and a network;

 (b) generating a first version of the media data in the personal information space;

 (c) generating a digital media file, in response to an input from the user, comprising a second version of the media data in a same format as the first version in the personal information space, the second version including an update not included in the first version;

 (d) obtaining difference information comprising differences between the first version of the media data and the second version of the media data; and

 (e) transferring a digital media file over the network containing the difference information from the personal information space to the network coupled apparatus in response to a sync request made from a web browser at the network-coupled apparatus by the user.

Nine dependent claims add narrowing limitations such as (1) "including the step, prior to step (a), of receiving information into the personal information space," *see* '446 Patent, Claim 2; and (2) including a "directory of digital media files" to comprise the media data, *see id.,* Claim 6.

Additionally, claim 11 is independent, and provides:

| **Claim 11** |
|---|
| 11. A **system** for transferring digital media between a plurality of network coupled devices, comprising: |
| a personal information store identified with a user containing digital media comprising a directory of digital media files readable by an application program; and a processing device, a server and a network coupled with the personal information store, the processing device including: |
| an application data store holding a version of the digital media in the personal information store, and a device engine to: a) generate a digital media file, in response to an input from the user, comprising a second version of the media data in a same format as the first version in the personal information store, the second version including an update not included in the first version; (b) obtain difference information comprising differences between the first version of the media data and the second version of the media data; and (c) transfer a digital media file over the network containing the difference information from the personal information space to the network coupled apparatus in response to a sync request made from a web browser at the network-coupled apparatus by the user. |

Claim 11 has three dependent claims. *See id.* at 14:58–64.

## II. LEGAL STANDARD

A motion for summary judgment should be granted where there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). The purpose of summary judgment "is to isolate and dispose of factually unsupported claims or defenses." *Celotex v. Catrett*, 477 U.S. 317, 323–24 (1986). The moving party has the initial burden of informing the Court of the basis for the motion and identifying those portions of the pleadings, depositions, answers to interrogatories, admissions, or affidavits which demonstrate the absence of a triable issue of material fact. *Id.* at 323.

If the moving party meets its initial burden, the burden shifts to the non-moving party to present facts showing a genuine issue of material fact for trial. Fed. R. Civ. P. 56; *Celotex*, 477 U.S. at 324. The Court must view the evidence in the light most favorable to the nonmovant,

4

drawing all reasonable inferences in its favor. *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630–31 (9th Cir. 1987). Summary judgment is not appropriate if the nonmoving party presents evidence from which a reasonable jury could resolve the disputed issue of material fact in the nonmovant's favor. *Anderson*, 477 U.S. at 248. Nonetheless, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986) (internal quotation marks omitted).

Infringement is a question of fact. *Frank's Casing Crew & Rental Tools, Inc. v. Weatherford Int'l, Inc.*, 389 F.3d 1370, 1376 (Fed. Cir. 2004). The patent holder has the burden to prove that each accused product "includes every limitation of [an asserted] claim." *Dolly, Inc. v. Spalding & Evenflo Cos.*, 16 F.3d 394, 397 (Fed. Cir. 1994). The Court can resolve the issue on summary judgment only if "no reasonable jury could find that every limitation recited in the properly construed claim either is or is not found in the accused device." *Frank's Casing Crew*, 389 F.3d at 1376 (internal quotation mark omitted); *see also TechSearch, L.L.C. v. Intel Corp.*, 286 F.3d 1360, 1371 (Fed. Cir. 2002) ("[A]ll of the elements of the claim, as correctly construed, must be present in the accused system."). "Any deviation from the claim precludes" a finding of literal infringement. *Telemac Cellular Corp. v. Topp Telecom, Inc.*, 247 F.3d 1316, 1330 (Fed. Cir. 2001). The absence from the accused product of one limitation in the claim means that, as a matter of law, there is no literal infringement of that claim. *Frank's Casing Crew*, 389 F.3d at 1376.

### III. DROPBOX'S MOTION FOR SUMMARY JUDGMENT

Dropbox moves for summary judgment on three grounds: (1) Dropbox does not directly infringe the asserted patents; (2) the Dropbox system does not satisfy each limitation of the asserted '757 Patent claims; and (3) the asserted '446 Patent claims are invalid and otherwise not infringed.

#### A. Direct Infringement

Turning first to whether there is direct infringement, which is a threshold issue, Dropbox argues that it is entitled to summary judgment on all asserted claims because Synchronoss has not

5

identified any evidence to establish that Dropbox has directly infringed either the '757 or '446 Patent.

### 1. Direct Infringement of the '757 Patent

As to the '757 Patent, Synchronoss's expert characterizes the infringement as relating to a three-part system: a "first and second system," which operate on "Dropbox desktop client" machines, and a Dropbox central server. *See, e.g.*, Alpaugh Report ¶¶ 96, 100, 105, 142, 148, 154, 182, 188, and 192. These systems correspond to the three common aspects of the asserted claims: (1) a first "system" or "device" comprising specific software—specifically, a first "sync engine," "differencing code," or "device sync engine," depending on the claim at issue; (2) a second "system" or "device" comprising similar software; and (3) a central "data store" or "storage server" through which synchronization occurs. *See* '757 Patent, 46:58–47:8, 48:1–24, 48:51–64.

Dropbox contends that it is entitled to summary judgment that it does not directly infringe the asserted '757 Patent claims because "there is no genuine dispute that **Dropbox** does not make, use, sell, or offer to sell the accused system." Dropbox Mot. at 8. In particular, Dropbox argues that only its customers "use" the patented system for purposes of infringement, because only Dropbox customers "put the invention into service, *i.e.*, control the system as a whole and obtain benefit from it." *Id.* at 8–9 (quoting *Centillion Data Sys., LLC v. Qwest Commc'ns Int'l, Inc.*, 631 F.3d 1279, 1284 (Fed. Cir. 2011)). Nor does Dropbox "make," "sell," or "offer to sell" the accused system, according to Dropbox, for two reasons. *Id.* at 9–11. First, the required configuration of two systems or devices in communication with a data store or storage server only exists after the user downloads and installs the desktop client. *Id.* at 9. In other words, Dropbox does not make, sell, or offer to sell an infringing "complete invention." *Id.* at 8–9 (quoting *Rotec Indus., Inc. v. Mitsubishi Corp.*, 215 F.3d 1246, 1252 & n.2 (Fed. Cir. 2000)). Second, the accused system requires both software and hardware, but Dropbox undisputedly does not make, sell, or offer to sell any hardware. *Id.* at 10.

Synchronoss responds to Dropbox's arguments in three ways. First, although Synchronoss does not dispute that to directly infringe, Dropbox must make, sell, or offer to sell a "complete invention," Synchronoss nonetheless contends that Dropbox's argument "misreads the claims and

6

rejects the Court's claim construction." Dropbox Opp. at 7. In particular, Dropbox relies on the Court's construction of the term "[first/second] system," which is:

> a collection of elements or components organized for a common purpose, and may include hardware components of a computer system, personal information devices, hand-held computers, notebooks, or any combination of hardware which may include a processor and memory which is adapted to receive or provide information to another device; or any software containing such information residing on a single collection of hardware or on different collections of hardware"

*Id.*; Dkt. No. 168 at 9–10. Synchronoss focuses exclusively on the language "or any software containing such information residing on a single collection of hardware or on different collections of hardware" to argue that Dropbox directly infringes the '757 Patent by making, selling, and offering for sale software that infringes once it is "in residence" on a user's hardware. Dropbox Opp. at 7–8. More to the point, Synchronoss claims that "[t]he participle phrase 'residing on hardware' describes location; it is not an independent requirement of the claims." *Id.* at 8. "In other words," Synchronoss contends, "the asserted claims are claiming the 'software' residing on hardware, but not the hardware itself." *Id.*

Contrary to Synchronoss's position, the Court's claim construction order unambiguously held that "[first/second] system" did not cover software alone. *See* Dkt. No. 168 at 10 ("Defendants' third argument concerning stand-alone software does not apply here, as the Court understands the '757 Patent's use of the term 'software' to reference software in combination with a hardware component or element."). In fact, when discussing this claim term at the *Markman* hearing, Synchronoss disclaimed any notion that the asserted claims need not encompass "hardware," as it now suggests:

> [**Counsel for Dropbox**]: To the extent, Your Honor, that construction means -- again, we believe that Synchronoss has advanced the position in its briefing that that language seems to indicate just software. To the extent the construction is -- to the extent the code [sic] understands that language to be software in combination with hardware, we think that's -- we think that's appropriate as a construction.
>
> **The Court**: And that's what the specification says verbatim.
>
> [**Counsel for Synchronoss**]: That's what our proposed construction

7

> actually says, "or any software containing such information residing on a single collection of hardware or on different collections of hardware," Your Honor.
>
> **The Court**: Right. So it sounds like no one's arguing that a device could be software completely detached from hardware, correct?
>
> [**Counsel for Synchronoss**]: That's correct, Your Honor.

Dkt. No. 165 at 30:3–19.

At the hearing on the pending motions, Synchronoss's principal argument in support of its "in residence" theory of direct infringement was that the present claims are "exactly" like those in *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292 (Fed. Cir. 2011). The Court disagrees. The *Uniloc* court in fact rejected an argument similar to Synchronoss's here, holding that the defendant's non-infringement argument based on the claims requiring both client-side and remote components was "severely hampered by the language of" the claim, which "focuse[d] exclusively on the 'remote registration station.'" *Id.* at 1309. And liability for direct infringement could rest with the defendant because "only one party, Microsoft, ma[de] or use[d] the remote registration station." *Id.* Unlike in *Uniloc*, the claimed systems here comprise both a storage server and two client devices. *See* '757 Patent at 46:58–47:8, 48:1–24, 48:51–64. And critical to the present dispute, unlike Microsoft in *Uniloc*, Dropbox does not make nor use the entire claimed combination of components.

Synchronoss next argues that notwithstanding the need for Dropbox users to complete the invention, Dropbox may be liable for "divided infringement" under *Akamai Technologies, Inc. v. Limelight Networks, Inc.*, 797 F.3d 1020 (Fed. Cir. 2015). Dropbox Opp. at 9–10. Divided infringement refers to a narrow situation where absent third parties are involved in practicing steps in a claimed method, but where the third parties' acts "are attributable to the [defendant] such that [the defendant] is responsible for the infringement." *Akamai*, 797 F.3d at 1022. Courts "will hold an entity responsible for others' performance of method steps in two sets of circumstances: (1) where that entity directs or controls others' performance, and (2) where the actors form a joint enterprise." *Id.* Whether a single entity "directs or controls the acts of another" turns on "general principles of vicarious liability," including whether the alleged infringer "acts through an agent (applying traditional agency principles) or contracts with another to perform one or more steps of

8

a claimed method," or where the "alleged infringer conditions participation in an activity or receipt of a benefit upon performance of a step or steps of a patented method and establishes the manner or timing of that performance." *Id.* at 1022–23.

The Court finds Synchronoss's reliance on *Akamai* unavailing. Synchronoss does not allege that Dropbox forms a joint enterprise with its users. Nor has Synchronoss put forward any evidence that Dropbox adequately directs or controls the user's performance. For example, Synchronoss does not contend that Dropbox conditions its users' receipt of a benefit upon performing certain actions that manifest infringement. Instead, Synchronoss merely relies on Dropbox's provision of instructions for using its software to demonstrate Dropbox's control. Dropbox Opp. at 9. But those facts, at most, might support a theory of induced infringement, a theory of liability Synchronoss does not advance in this case.

As a final salvo, Synchronoss argues that summary judgment is at least unwarranted because Dropbox has admitted to using the accused software on its own hardware. Dropbox Opp. at 7. But the only factual support for this is a passing deposition statement that Dropbox employees have stored PDFs on Dropbox. *See* Dkt. No. 367-12, at 40:23–41:10. No one argues, however, that storage alone constitutes infringement of the '757 Patent, and thus this statement alone does not warrant denying Dropbox's motion for summary judgment as to direct infringement of the '757 Patent.

Because there is no genuine dispute that Dropbox does not make, use, sell, or offer to sell a complete infringing invention, the Court **GRANTS** Dropbox's request for summary judgment that it does not directly infringe the '757 Patent.[1]

### 2. Direct Infringement of the '446 Patent

Dropbox next moves for summary judgment that it does not directly infringe the '446 Patent. Dropbox Mot. at 11–12. The '446 Patent contains both system and method claims. As to the system claim (claim 11 and corresponding dependent claims), Dropbox argues that it does not

---

[1] Because the Court grants Dropbox's request for summary judgment that it does not directly infringe the '757 Patent, the Court need not consider Dropbox's alternative ground for summary judgment: that the Dropbox system does not satisfy each limitation of the asserted '757 Patent claims.

9

directly infringe "for the same reason it does not directly infringe the claims of the '757 Patent: they recite a system that includes both hardware and software elements configured in a certain way, and Dropbox neither sells nor configures the complete accused system." *Id.* at 11. In particular, claim 11 requires a "processing device." And yet, Synchronoss only maintains that the "processing device" limitation is satisfied in Dropbox's accused system by a "computer . . . together with the Dropbox desktop client." *See* Alpaugh Report ¶ 262. As was true with the '757 Patent, however, there is no dispute that Dropbox's customers complete the system by supplying their own computers.

Synchronoss's only response concerning the system claims is to repeat its characterization of the Court's claim construction order and the phrase "any software containing such information residing on a single collection of hardware or on different collections of hardware." Dropbox Opp. at 11 ("As discussed above, this limitation is met once the Dropbox software is in residence on any hardware . . . and where the software resides has no impact on whether Dropbox infringes."). As discussed above, the Court finds this argument unavailing.

As to the '446 Patent's method claims (claim 1 and corresponding dependent claims), Dropbox contends that under *Akamai*, direct infringement of a method claim only "occurs where all steps of a claimed method are performed by or attributable to a single entity." Dropbox Mot. at 12; 797 F.3d at 1022. Here, however, claim 1 includes a step of "generating a first version of the media data," which Dropbox contends that Synchronoss's expert admits is performed by the Dropbox user. *Compare* '446 Patent, 13:53–54, *with* Alpaugh Report ¶ 222 (noting that this is accomplished through "[u]ploading one or more photo or video files to Dropbox"). As Synchronoss responds, however, Dropbox takes claim 1 out of context. Although it may be necessary for a user to upload a photo or video before Dropbox's software begins functioning, that does not necessarily mean that the generation of a first version of the media data is performed by the user. Instead, as Synchronoss's expert states, the Dropbox software does the generation once it receives the uploaded photo or video. Alpaugh Report ¶ 222. It is thus not undisputed that Dropbox is entitled to summary judgment as to the asserted method claims of the '446 Patent.

Because there is no genuine dispute that Dropbox does not make, use, sell, or offer to sell a

complete infringing invention, the Court **GRANTS** Dropbox's request for summary judgment that it does not directly infringe the '446 Patent's systems claims. But the Court **DENIES** Dropbox's request for summary judgment on this ground as to direct infringement of the '446 Patent's method claims.

### B. Invalidity and Non-Infringement of the '446 Patent

Dropbox further argues that summary judgment is warranted in its favor as to all asserted claims of the '446 Patent because: (1) the claims are invalid as indefinite; and (2) Dropbox does not infringe the claims for various reasons. For reasons that follow, the Court **GRANTS** Dropbox's request for summary judgment as to the '446 Patent on the grounds that the relevant claims are invalid as indefinite.[2] The Court thus does not reach Dropbox's alternative arguments concerning non-infringement.

As to definiteness, Dropbox contends that one particular impossibility permeates all of the claims: the claims require "generating a [single] digital media file" that itself "compris[es] a directory of digital media files." Dropbox Mot. at 20–23. Claim 1 demonstrates this dispute, and thus is worth repeating here:

| **Claim 1** |
|---|
| 1. A method of transferring media data to a network coupled apparatus, comprising: |
| (a) maintaining a personal information space identified with a user including **media data comprising a directory of digital media files**, the personal information space being coupled to a server and a network; |
| (b) generating a first version of the media data in the personal information space; |
| (c) **generating a <u>digital media file</u>**, in response to an input from the user, **comprising a second version of the <u>media data</u> in a same format as the first version** in the personal information space, the second version including an update not included in the first version; |
| (d) obtaining difference information comprising differences between the first version of the media data and the second version of the media data; and |

---

[2] Because the Court otherwise grants Dropbox's request for summary judgment as to the '446 Patent's system claims, the Court here need only address the '446 Patent's method claims. The analysis that follows, however, applies equally to the system and method claims. Thus, even if Dropbox did not prevail on its direct infringement argument, summary judgment in Dropbox's favor as to the system claims would be warranted on these independently sufficient grounds.

11

> (e) transferring a digital media file over the network containing the difference information from the personal information space to the network coupled apparatus in response to a sync request made from a web browser at the network-coupled apparatus by the user.

As written, (c) requires generating "a digital media file . . . comprising a second version of the media data in the same format as the first version." The "first version of the media data" referenced in (b), however, relates back to (a), which is described as "comprising a directory of digital media files." Thus, according to Dropbox, the claims recite an impossibility, as a single generated digital media file cannot itself comprise a directory of digital media files. Dropbox Mot. 21.

"[A] patent is invalid for indefiniteness if its claims [under Section 112, ¶ 2] read in light of the specification delineating the patent, and the prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention." *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 901 (2014). "Some modicum of uncertainty" is allowed, but "a patent must be precise enough to afford clear notice of what is claimed, thereby appris[ing] the public of what is still open to them." *Id.* at 909 (internal quotation marks omitted). "Otherwise there would be a zone of uncertainty which enterprise and experimentation may enter only at the risk of infringement claims." *Id.* (internal quotation marks and brackets omitted).

When asked about the apparent impossibility in claim 1, Synchronoss's expert—Mr. Alpaugh—conceded that "[a] digital media file cannot contain a directory of digital media files." *See* Dkt. No. 316-10 ("Alpaugh Tr.") at 154:19–20. And Synchronoss's 30(b)(6) designee echoed that "if someone were to suggest that 'media data' always means 'directory of digital media files' . . . then Clause C would not make sense. *See* Dkt. No. 316-12 at 175:15–176:5. Thus, rather than defend the claim's language, Synchronoss has sought to rewrite the claims. Mr. Alpaugh in particular stated that "**comprising** was admittedly the wrong choice of words and perhaps the better word here would have been **resulting in** a second version or some other choice." Alpaugh Tr. at 156:25–157:3 (emphasis added).

Dropbox contends that such claim redrafting to avoid invalidity under Section 112 contravenes well-settled Federal Circuit law. *See* Dropbox Mot. at 22–23 (citing *Process Control Corp. v. HydReclaim Corp.*, 190 F.3d 1350, 1357 (Fed. Cir. 1999), *Allen Eng'g Corp. v. Bartell*

12

1  *Indus., Inc.*, 299 F.3d 1336, 1349 (Fed. Cir. 2002), and *Trs. of Columbia Univ. v. Symantec Corp.*,
2  811 F.3d 1359 (Fed. Cir. 2016)). In response, Synchronoss argues that it and Mr. Alpaugh do not
3  suggest redrafting the claims, but rather that a person of ordinary skill in the art "would have
4  perceived the claims as drafted" to mean something different than what was written. Dropbox
5  Opp. at 21. But that is a distinction without a difference. To say that a person of ordinary skill
6  would understand that "red" means "blue," is the same thing as rewriting "red" as "blue." *See*
7  *Allen Eng'g Corp.*, 299 F.3d at 1349 ("Allen argues that one of skill in the art would understand
8  that the term 'perpendicular' in the claim should be read to mean 'parallel.' Allen stretches the
9  law too far. It is not our function to rewrite claims to preserve their validity.").

Synchronoss further argues that summary judgment is inappropriate because claims "need not be perfectly clear to be deemed definite." Dropbox Opp. at 19–20 (citing *Nautilus, Inc.*, 572 U.S. at 910, *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 731 (2002), *Minerals Separation v. Hyde*, 242 U.S. 261, 270 (1916), and *Invitrogen Corp. v. Biocrest Mfg., L.P.*, 424 F.3d 1374, 1384 (Fed. Cir. 2005)). But Synchronoss misses the point, as there is a difference between imprecise or ambiguous drafting and retrospective editing. And in this sense, the Court finds this case is most similar to *Allen Engineering Corp.*, where the Federal Circuit rejected a patentee's argument that "one of skill in the art would understand that the term 'perpendicular' in the claim should be read to mean 'parallel.'" 299 F.3d at 1349. The Federal Circuit explained that "[i]t is not our function to rewrite claims to preserve their validity," and "it is of no moment that the contradiction is obvious." *Id.* So too here. That Synchronoss admits that the impossibility of its claim, as written, is apparent such that a person of ordinary skill in the art would understand that it means something other than what is written does not render the claim language definite; it does the opposite.

For these reasons, the Court **GRANTS** Dropbox's motion for summary judgment in its favor as to all asserted claims of the '446 Patent because the claims are invalid as indefinite under Section 112.

//

//

13

## IV. CONCLUSION

The Court **GRANTS** Dropbox's motion for summary judgment as to all claims of infringement on the grounds that (1) Synchronoss failed to show that Dropbox directly infringes any claims of the '757 Patent or the system claims of the '446 Patent, and (2) the asserted claims of the '446 Patent are invalid as indefinite.

Because the Court grants Dropbox's motion for summary judgment, the following motions are **DENIED AS MOOT**: (1) Synchronoss's motion for summary judgment, *see* Dkt. No. 333; (2) the pending motions to strike portions of various expert reports, *see* Dkt. Nos. 275, 297, 306; and (3) the pending *Daubert* motions, *see* Dkt. Nos. 313, 315, 322, 324, 326, 330. A separate order will issue concerning the pending administrative motions to file under seal portions of the briefing on these motions. The clerk is directed to enter judgment in favor of Defendant and to close the file.

**IT IS SO ORDERED.**

Dated: 6/17/2019

HAYWOOD S. GILLIAM, JR.
United States District Judge