1   THOMAS H. L. SELBY (*pro hac vice*)
    DAVID M. KRINSKY (*pro hac vice*)
2   ADAM D. HARBER (*pro hac vice*)
    CHRISTOPHER J. MANDERNACH (*pro hac vice*)
3   SARAH L. O'CONNOR (*pro hac vice*)
    D. SHAYON GHOSH (SBN 313628)
4   WILLIAMS & CONNOLLY LLP
    725 Twelfth Street, N.W.
5   Washington, D.C.  20005
    Telephone:  (202) 434-5000
6   Facsimile:  (202) 434-5029
    E-mail: tselby@wc.com
7   E-mail: dkrinsky@wc.com
    E-mail: aharber@wc.com
8   E-mail: cmandernach@wc.com
    E-mail: soconnor@wc.com
9   E-mail: sghosh@wc.com

10  STEPHEN E. TAYLOR (SBN 058452)
    JONATHAN A. PATCHEN (SBN 237346)
11  KARAN S. DHADIALLA (SBN 296313)
    TAYLOR & PATCHEN, LLP
12  One Ferry Building, Suite 355
    San Francisco, CA 94111
13  Telephone: (415) 788-8200
    Facsimile: (415) 788-8208
14  E-mail: staylor@taylorpatchen.com
    E-mail: jpatchen@taylorpatchen.com
15  E-mail: kdhadialla@taylorpatchen.com

16  Attorneys for Defendant DROPBOX, INC.

17              **IN THE UNITED STATES DISTRICT COURT**

18              **NORTHERN DISTRICT OF CALIFORNIA**

19                      **OAKLAND DIVISION**

20  SYNCHRONOSS TECHNOLOGIES, INC.,          No. 4:16-cv-00119-HSG-KAW

21                          Plaintiff,       **DROPBOX, INC.'S MOTION FOR**
                                             **ATTORNEY'S FEES**
22              v.
                                             Date:   November 14, 2019
23  DROPBOX, INC.,                           Time:   2:00 PM
                                             Place:  Courtroom 2, 4th Floor (Oakland)
24                          Defendant.       Judge:  Hon. Haywood S. Gilliam, Jr.

25

26  ────────────────────────────
          **REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**
27

28
                                    0

## **TABLE OF CONTENTS**

NOTICE OF MOTION AND REQUESTED RELIEF ......................................................1

MEMORANDUM OF POINTS AND AUTHORITIES ....................................................1

I.    INTRODUCTION AND STATEMENT OF ISSUES TO BE DECIDED .........................1

II.   BACKGROUND ..................................................................................................2

    A.    The '757 Patent ........................................................................................3

    B.    The '446 Patent ........................................................................................5

    C.    Subsequent Procedural History................................................................6

III.  LEGAL STANDARD............................................................................................7

IV.   ARGUMENT ......................................................................................................8

    A.    Synchronoss's Substantive Positions Were Objectively Unreasonable..................8

        1.    Synchronoss's Position on Direct Infringement of the '757 and '446 Patent Systems Claims Was Objectively Meritless............................8

        2.    Synchronoss's Position on the "Previous State of Said Data" Limitation of the Asserted '757 Patent Claims Was Objectively Meritless................................................................11

        3.    Synchronoss's Position on the Indefiniteness of the '446 Patent Was Objectively Meritless............................................12

    B.    Synchronoss Engaged in Litigation Misconduct Justifying an Exceptional Case Designation ..............................................................13

        1.    Synchronoss Unreasonably Multiplied the Proceedings...........................14

        2.    Synchronoss Asserted Falsely Inflated Licenses in this Case and Attempted to Obscure that Fact with False Testimony............................18

    C.    Dropbox's Fee Request Is Reasonable ..................................................23

V.    CONCLUSION..................................................................................................25

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## TABLE OF AUTHORITIES

### FEDERAL CASES

*AdjustaCam, LLC v. Newegg, Inc.*, 861 F.3d 1353 (Fed. Cir. 2017) ...................................8, 10, 12

*Akamai Technologies, Inc. v. Limelight Networks, Inc.*, 797 F.3d 1020 (Fed. Cir. 2015) (en banc) (per curiam) ................................................10

*Cave Consulting Grp., Inc. v. Truven Health Analytics Inc.*, 293 F. Supp. 3d 1038 (N.D. Cal. 2018)............................................13

*Cent. Soya Co. v. Geo. A. Hormel & Co.*, 723 F.2d 1573 (Fed. Cir. 1983)....................................25

*Chi. Bd. Options Exch., Inc. v. Sec. Exch., LLC*, No. 07 C 623, 2014 WL 6978644 (N.D. Ill. Dec. 10, 2014) ............................................10, 12

*City of Burlington v. Dague*, 505 U.S. 557 (1992) ........................................23

*Cognex Corp. v. Microscan Sys., Inc.*, No. 13-CV-2027 JSR, 2014 WL 2989975 (S.D.N.Y. June 30, 2014)............................................14, 18

*Eon-Net LP v. Flagstar Bancorp*, 653 F.3d 1314 (Fed. Cir. 2011) ..............................................18

*Hensley v. Eckerhart*, 461 U.S. 424 (1983) ........................................23

*ICU Med., Inc. v. Alaris Med. Sys., Inc.*, No. SA CV 04-00689 MRP, 2007 WL 6137003 (C.D. Cal. Apr. 16, 2007)............................................13

*Intex Recreation Corp. v. Team Worldwide Corp.*, 77 F. Supp. 3d 212 (D.D.C. 2015) ............................................§10, 11

*Kilopass Tech., Inc. v. Sidense Corp.*, 738 F.3d 1302 (Fed. Cir. 2013) ..................................7, 13

*Kilopass Tech., Inc. v. Sidense Corp.*, 82 F. Supp. 3d 1154 (N.D. Cal. 2015)........................23, 24

*MarcTec, LLC v. Johnson & Johnson*, 664 F.3d 907 (Fed. Cir. 2012) ........................................14

*Maxwell v. Angel-Etts of Cal., Inc.*, 53 F. App'x 561 (Fed. Cir. 2002)....................................25

*Monolithic Power Sys., Inc. v. O2 Micro Int'l Ltd.*, 726 F.3d 1359 (Fed. Cir. 2013) ............................................8, 18, 22, 23

*Nova Chems. Corp. (Can.) v. Dow Chem. Co.*, 856 F.3d 1012 (Fed. Cir. 2017) ...........................8

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545 (2014).............................7, 8

*Rembrandt Techs., LP v. Comcast of Fla./Pa., LP*, 899 F.3d 1254 (Fed. Cir. 2018) ....................7

ii

*San Diego Comic Convention v. Dan Farr Prods.*, No. 14-cv-1865-AJB, 2019
WL 1599188 (S.D. Cal. Apr. 15, 2019)..........................................................8, 14, 18

*Spitz Techs. Corp. v. Nobel Biocare USA LLC*, No. SACV 17-00660 JVS, 2018
WL 6164300 (C.D. Cal. June 7, 2018) ........................................................8, 10, 11

*ThermoLife Int'l LLC v. GNC Corp.*, 922 F.3d 1347 (Fed. Cir. 2019)..........................................11

*Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292 (Fed. Cir. 2011).........................................10

*Yufa v. TSI, Inc.*, No. 09-cv-01315-KAW, 2014 WL 4071902 (N.D. Cal. Aug. 14,
2014) ..........................................................................................................................23

## OTHER AUTHORITIES

35 U.S.C. § 285............................................................................................. passim

American Intellectual Property Law, 2017 Report of the Economic Survey ..........................23, 24

Civ. L.R. 54-1 ............................................................................................................25

Civ. L.R. 54-5(b)(2).....................................................................................................25

Patent L.R. 4-2(b) ........................................................................................................17

Patent L.R. 4-3(b) ........................................................................................................17

**NOTICE OF MOTION AND REQUESTED RELIEF**

**TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on November 14, 2019, at 2:00 p.m., in the courtroom of the Honorable Haywood S. Gilliam, Jr., 1301 Clay Street, Oakland, California, defendant Dropbox, Inc. will and hereby does move this Court for attorney's fees under 35 U.S.C. § 285.

Based on this Notice and Memorandum, the accompanying exhibits, the Declaration of Adam D. Harber in Support of Dropbox Inc.'s Motion for Attorney's Fees, the pleadings on file in this case, matters on which this Court may take judicial notice, and such oral argument as the Court permits, Dropbox respectfully requests that the Court award Dropbox all of the attorney's fees it has incurred since the Court issued its Claim Construction Order on December 7, 2017.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.     INTRODUCTION AND STATEMENT OF ISSUES TO BE DECIDED**

This case bears all the hallmarks of the prototypical "exceptional case" under 35 U.S.C. § 285.  By any objective measure, Synchronoss's allegations were not just meritless, but exceptionally so.  The case should have ended when the Court rendered a claim construction that established that Dropbox did not infringe the patents, and that one of the remaining patents was an invalid impossibility.  But rather than reconsider its positions after receiving the order that unambiguously foreclosed its case, Synchronoss chose to carry on as if the Court's order never happened.  Synchronoss continued to assert that Dropbox infringed claims that the Court held "unambiguously" required hardware by selling software alone; that Dropbox's use of "hashes of previous copies of files" practiced a limitation the Court held did not cover "hash values"; and that Synchronoss could save the validity of one of the two remaining patents-in-suit, U.S. Patent No. 7,587,446 ("the '446 patent"), by literally rewriting the claims, in contravention of blackletter Federal Circuit law.  Synchronoss appears to have known that its position on the '446 patent was frivolous given that its attorney did not ask Dropbox's non-infringement expert *a single question* about that patent in his seven-hour deposition.

These objectively meritless positions were compounded with pervasive litigation misconduct of the type courts regularly find justifies fee awards.  At every turn, Synchronoss

1  unreasonably multiplied fees, forcing Dropbox—on multiple occasions—to brief the same issues

2  repeatedly, because Synchronoss had disregarded clear Court orders.   Synchronoss also

3  attempted to assert sham patent licenses in this case, and its Chief Legal Officer and Rule

4  30(b)(6) designee made misrepresentations under oath about the circumstances of those licenses.

5        Dropbox has been forced to spend millions of dollars in legal fees defending itself against

6  objectively baseless allegations that Synchronoss pursued with abusive and improper tactics.

7  Section 285 exists to address precisely this conduct.   For the reasons below, Dropbox

8  respectfully requests that the Court direct Synchronoss to reimburse Dropbox for the fees it has

9  incurred defending this case since the Court issued its claim construction order.

10  **II.   BACKGROUND**

11        Synchronoss filed this lawsuit in March 2015 asserting that Dropbox infringed three

12  patents related to data synchronization:   U.S. Patent Nos. 6,671,757 ("the '757 patent"),

13  6,757,696 ("the '696 patent"), and 7,587,446 ("the '446 patent").   Exs. 1 ('757 patent) and 2

14  ('446 patent) to Decl. of Christopher J. Mandernach (hereinafter, "Ex.").   Pursuant to this

15  District's Local Rules, Synchronoss served its initial infringement contentions on February 15,

16  2017.  Ex. 3.  Dropbox made the source code for its accused products available to Synchronoss

17  for inspection on May 5, 2017—a month before it was required to do so under the parties'

18  agreed-upon schedule.   Dkt. No. 133 at 4.   Thereafter, each and every time Synchronoss

19  requested access to Dropbox's source code, Dropbox consented.  *See, e.g.*, Dkt. No. 170 at 6–7;

20  Dkt. No. 178 at 7–8.   In sum, Synchronoss and its expert spent approximately three weeks

21  reviewing the source code—four days before the *Markman* proceedings and two and a half

22  weeks after the Court issued its *Markman* order.   Dkt. No. 170 at 6–7; Dkt. No. 178 at 7–8.

23  Dropbox even offered to provide Synchronoss with an early 30(b)(6) deposition—before fact

24  depositions had commenced—regarding the structure and organization of Dropbox's source code

25  to assist Synchronoss in its review.  Ex. 4.  Synchronoss declined that offer.  Ex. 5; Ex. 6.

26        Claim construction proceedings took place through the summer and fall of 2017.   The

27  Court issued its claim construction order on December 7, 2017.  Dkt. No. 168.  In that order, the

28  Court invalidated all of the claims of the '696 patent as indefinite under 35 U.S.C. § 112(6).  *Id.*

2

at 10–24.  With respect to the two remaining patents-in-suit, the '757 and '446 patents, the Court adopted all of Dropbox's claim construction positions and rejected Synchronoss's, with the exception of one term.  *Id.* at 5–8, 25–28.  On that term, the Court adopted Synchronoss's proposed construction, but clarified that this construction nevertheless substantially agreed with Dropbox's position.  *Id.* at 9–10.  Several of those issues warrant mention here.

### A.     The '757 Patent

The '757 patent claims a particular system for synchronizing data between networked devices through a central storage server.  Ex. 1, Abstract.  Synchronoss asserted that Dropbox infringed claims 1, 8, 9, 14, 16, 21, 24, 26, and 28 of the '757 patent.  Ex. 7, ¶ 2 (Infringement Expert Report); Ex. 8 at 3.  Claim 1 is illustrative.  It recites:

> A system for synchronizing data between a first system and a second system, comprising:
>
>> a first sync engine on the first system interfacing with data on the first system to provide difference information in a difference transaction;
>>
>> a data store coupled to the network and in communication with the first and second systems; and
>>
>> a second sync engine on the second system coupled to receive the difference information in the difference transaction from the data store via the network, and interfacing with data on the second system to update said data on the second system with said difference information;
>>
>> wherein each said sync engine comprises a data interface, a copy of a previous state of said data, and a difference transaction generator.

Ex. 1, 46:58–47:8.  The remaining independent claims, claims 16 and 24, differ slightly in their terminology—they claim a first and second "device" instead of a first and second "system"—but otherwise are identical in all respects relevant to this motion.  *Id.* at 48:1–24, 48:51–64.

Two terms appearing in all of the asserted claims of the '757 patent were the focus of the parties' disputes during *Markman* and are particularly relevant here:  the term "system" or "device," and the term "copy of a previous state of said data."

With respect to the terms "system" and "device," the dispute between the parties at *Markman* centered on whether the claimed system could consist of software alone without any hardware.  In that regard, Dropbox criticized Synchronoss's proposed construction on the basis that "[s]tandalone software . . . cannot be 'coupled' to a network" as the claims require.  Dkt. No.

3

149-3 at 8. At the *Markman* hearing, however, Synchronoss's counsel told the Court that "no one's arguing that a device could be software completely detached from hardware." Dkt. 165 at 30:16–19. The Court therefore adopted Synchronoss's proposed construction for the terms "system" and "device": "a collection of elements or components organized for a common purpose, and may include hardware components of a computer system, personal information devices, handheld computers, notebooks, or any combination of hardware which may include a processor and memory which is adapted to receive or provide information to another device; or any software containing such information residing on a single collection of hardware or on different collections of hardware." Dkt. 168 at 9–10. In so doing, the Court emphasized that Dropbox's criticisms of that construction "do[] not apply" because "the Court understands the '757 Patent's use of the term 'software' to reference software in combination with a hardware component or element." *Id.* at 10. In its recent summary judgment order, the Court again emphasized that its "claim construction order unambiguously held that '[first/second] system' did not cover software alone." Dkt. No. 406 at 7.

As to the "previous state of said data" limitation, the parties' claim construction dispute focused on whether the term, as Synchronoss argued, "include[d] not just previous versions of the data to be copied, but also 'information about the data being synchronized that would permit the device engine to determine if data has been updated and, if so, what data packages to update.'" Dkt. No. 168 at 5. At issue specifically was whether the term could cover a "hash" value that was generated from the prior version of data. Dkt. No. 165 at 14–17. A "hash" is a numerical value of fixed length that is calculated from a piece of data using a mathematical algorithm. Dkt. No. 150 at 3. Dropbox argued that there was no information in the specification or prosecution history to support the view that "hash value[s]" were part of the claimed "previous state of said data." *Id.* at 2–6. This Court agreed. It held that "[t]he '757 Patent does not indicate that differencing information is generated by using *other* data, beyond the previous version of that data," and that "the specification itself does not state that hash values . . . are part of the 'previous state of said data.'" Dkt. No. 168 at 6. The Court adopted Dropbox's construction.

**B.      The '446 Patent**

The '446 patent purports to address the scenario where a user wants to transfer digital media files on one network-coupled device, such as a personal computer, to other network-coupled devices.  Ex. 2, 1:26–41.  Synchronoss asserted that Dropbox infringed claims 1, 2, 6–15, 18, and 19.  Ex. 7, ¶ 2 (Infringement Expert Report); Ex. 8 at 3.  Claim 1 is illustrative:

A method of transferring media data to a network coupled apparatus, comprising:

(a) maintaining a personal information space identified with a user including media data comprising a directory of digital media files, the personal information space being coupled to a server and a network;

(b) generating a first version of the media data in the personal information space;

(c) generating a digital media file, in response to an input from the user, comprising a second version of the media data in a same format as the first version in the personal information space, the second version including an update not included in the first version;

(d) obtaining difference information comprising differences between the first version of the media data and the second version of the media data; and

(e) transferring a digital media file over the network containing the difference information from the personal information space to the network coupled apparatus in response to a sync request made from a web browser at the network-coupled apparatus by the user.

Ex. 2, 13:47–14:2.  Claim 11, the only other independent claim of the '446 patent, is directed to a system for transferring digital media between network-coupled devices using the same steps as the method recited in claim 1.  *Id.* at 14:35–57.

By their plain terms, the claims of the '446 patent require maintaining a "personal information space" containing "media data," which "compris[es] a directory of digital media files."  The claims then recite generating a single "digital media file" that itself comprises a second version of the "media data" (*i.e.*, a "directory of digital media files") in the same format as the first version.  As written, the claims thus require the generation of a ***single*** "digital media file" that itself at the same time "compris[es] a ***directory*** of digital media files."

During *Markman*, Synchronoss attempted to overcome this impossibility by arguing that the term "digital media file" should be defined contrary to its plain meaning.  In particular, Synchronoss urged the Court to construe that term as simply "a file comprising digital media

content." Dkt. No. 144 at 26–28. Synchronoss clarified during the *Markman* hearing that its proposal was aimed at ensuring that the term was not limited to "single files." Dkt. No. 165 at 85:10–12 (Synchronoss's counsel arguing that "there's no indication in the record for limiting 'digital media' to types or even single files"). Dropbox, on the other hand, argued that the term should be defined according to its plain meaning in light of the specification—as "digital audio or video content in the form of an individual file such as an MPEG, MP3, RealAudio, or Liquid Audio file." Dkt. No. 150 at 28–29. The Court adopted Dropbox's proposed construction, with the removal of the word "individual"—*i.e.*, "digital audio or video content in the form of a file such as an MPEG, MP3, RealAudio, or Liquid Audio file." Dkt. No. 168 at 25–27.

## C.     Subsequent Procedural History

Following the Court's *Markman* order, which removed any objective doubt as to the merits of Synchronoss's case, Synchronoss and its expert Christopher Alpaugh again inspected Dropbox's source code for two and a half weeks in early 2018. Dkt. No. 178 at 7. Synchronoss, however, did not withdraw its claims as to the '757 or '446 patents. Instead, when Synchronoss served its supplemental infringement contentions on March 30, 2018, it made no modifications to account for the Court's *Markman* order. Ex. 3; Ex. 8. It continued to assert that Dropbox directly infringed claims requiring hardware by making, selling, or using only software, Ex. 9 at 3–4, 18; continued to assert that Dropbox literally infringed a limitation that the Court held did not cover "hash values" by using librsync "signatures," *id.* at 30, which Synchronoss admits are "hashes of previous copies of files," Dkt. No. 367 at 5; and continued to assert infringement of the '446 patent claims notwithstanding that they recited an impossibility, Ex. 8 at 3. Dropbox emphasized that these positions (among others) were meritless in responding to an interrogatory about its non-infringement positions in August 2018. Ex. 10 at 6–8, 13, 23. The case proceeded through discovery, where the parties took a total of twenty-six fact depositions, retained six experts, and generated thousands of pages of expert reports. The parties also filed a total of eight summary judgment and *Daubert* motions—five of them coming from Synchronoss. Dkt. Nos. 313, 315, 317, 322, 324, 326, 330, 333.

On June 17, 2019, the Court granted Dropbox's motion for summary judgment. Dkt. No.

6

406.  With respect to the '757 patent, the Court held that there was no evidence that Dropbox made, used, or sold the hardware components of the accused system, rejecting Synchronoss's position that "the asserted claims are claiming the 'software' residing on hardware, but not the hardware itself," Dkt. No. 367-4 at 8.  In so holding, the Court emphasized that its "claim construction order unambiguously held that '[first/second] system' did not cover software alone."  Dkt. No. 406 at 7.  The Court also found the asserted claims of the '446 patent indefinite in light of its construction of "digital media file."  *Id.* at 11.  The Court held that, as a matter of law, Synchronoss could not "s[eek] to rewrite the claim" to preserve its validity.  *Id.* at 12–13. Given its disposition of the '757 and '446 patents, the Court denied the remaining outstanding substantive motions as moot.  *Id.* at 14.  Judgment issued on June 19, 2019.  Dkt. No. 411.

## III.    LEGAL STANDARD

"The court in exceptional cases may award reasonable attorney fees to the prevailing party."  35 U.S.C. § 285.  "[A]n 'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated."  *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014).  For example, "a case presenting . . . exceptionally meritless claims may sufficiently set itself apart from mine-run cases to warrant a fee award."  *Id.* at 555.  In this context, "the aim of § 285 is to compensate a defendant for attorneys' fees it should not have been forced to incur."  *Kilopass Tech., Inc. v. Sidense Corp.*, 738 F.3d 1302, 1313 (Fed. Cir. 2013).  "District courts may determine whether a case is 'exceptional' in the case-by-case exercise of their discretion, considering the totality of the circumstances."  *Octane Fitness*, 572 U.S. at 554.

In determining whether a case is "exceptional," "[r]elevant considerations may include 'frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence.'"  *Rembrandt Techs., LP v. Comcast of Fla./Pa., LP*, 899 F.3d 1254, 1277 (Fed. Cir. 2018) (quoting *Octane Fitness*, 572 U.S. at 554 n.6).  A party need not establish all, or even multiple, of these factors to support a fee award under § 285.  Rather, "[t]he substantive strength

7

of a party's litigating position—i.e., whether it is objectively baseless—[can] independently support an exceptional-case determination." *Nova Chems. Corp. (Can.) v. Dow Chem. Co.*, 856 F.3d 1012, 1017 (Fed. Cir. 2017).

Under this standard, courts have awarded defendants fees where a plaintiff's infringement position following a claim construction order "not only lacked merit, but flouted the Court's construction." *Spitz Techs. Corp. v. Nobel Biocare USA LLC*, No. SACV 17-00660 JVS, 2018 WL 6164300, at *4–6 (C.D. Cal. June 7, 2018); *see also AdjustaCam, LLC v. Newegg, Inc.*, 861 F.3d 1353, 1360 (Fed. Cir. 2017) (reversing a district court's denial of fees under § 285 where the plaintiff's "suit became baseless after the district court's *Markman* order"). Courts also have awarded fees where a plaintiff unreasonably multiplied the proceedings with frivolous motion practice, *San Diego Comic Convention v. Dan Farr Prods.*, No. 14-cv-1865-AJB, 2019 WL 1599188, at *6 (S.D. Cal. Apr. 15, 2019), or engaged in other types of litigation misconduct, up to and including misrepresentations of critical facts, *Monolithic Power Sys., Inc. v. O2 Micro Int'l Ltd.*, 726 F.3d 1359, 1367 (Fed. Cir. 2013). Patent litigants need only establish their entitlement to fees by a preponderance of the evidence. *Octane Fitness*, 572 U.S. at 557–58.

## IV.   ARGUMENT

In this case, the objective unreasonableness of Synchronoss's litigation positions following the *Markman* are sufficient on their own to justify an exceptional case designation. As described below, Synchronoss pressed on following the Court's order using arguments that were expressly and unambiguously foreclosed by the Court. Dropbox should not have been forced to incur fees to defend against these plainly baseless allegations. Synchronoss compounded the burden of its objectively meritless positions through its unreasonable litigation conduct—conduct that courts regularly find justifies fee awards. Any one of these factors would be enough to award Dropbox fees under § 285. Together, they leave no doubt that this is an exceptional case.

### A.   Synchronoss's Substantive Positions Were Objectively Unreasonable

#### 1.   Synchronoss's Position on Direct Infringement of the '757 and '446 Patent Systems Claims Was Objectively Meritless

During the recent summary judgment proceedings, Synchronoss did not take issue with

8

1    two key points that reveal the objective unreasonableness of its infringement allegations in this

2    case.  First, Synchronoss did not dispute that it was asserting only direct infringement by

3    Dropbox, and not indirect infringement based on any actions by Dropbox's customers.  *See* Dkt.

4    No. 405 at 17:1–6; *see also, e.g.*, Dkt. No. 1, ¶¶ 11–12, 17–18 (referring only to "Defendant's

5    direct infringement of the" asserted patents); Ex. 3 at 1; Ex. 8 at 1.  And second, Synchronoss did

6    not dispute that its direct infringement allegations for the asserted system claims (every asserted

7    claim of the '757 patent and claims 11–15, 18, and 19 of the '446 patent) were premised on

8    Dropbox's distribution of software alone.  Dkt. No. 367-4 at 7–9, 11.

9         As the Court held when granting summary judgment, the *Markman* order in this case did

10   not just foreclose this argument—it did so "unambiguously."  Dkt. No. 406 at 7.  In particular,

11   when the parties raised a dispute during *Markman* as to whether the claimed systems and devices

12   of the '757 and '446 patents could consist of software alone, Synchronoss assured the Court that

13   "no one's arguing that a device could be software completely detached from hardware."  Dkt.

14   No. 165 at 30:16–19.  Based in part on this concession, the Court adopted Synchronoss's

15   construction of the terms "device" and "system," but expressly stated that it "understands the

16   '757 Patent's use of the term 'software' [in that construction] to reference software in

17   combination with a hardware component or element."  Dkt. No. 168 at 9–10.  Following the

18   Court's order, Dropbox pointed out the flaw in Synchronoss's software-only infringement

19   position.  *See* Ex. 10 at 13 (explaining that the "devices" claimed in the '757 patent "are not

20   made, used, sold, or offered for sale by Dropbox"); *id.* at 23 (same for "systems" and "devices"

21   claimed in the '446 patent).

22        After *Markman*, Dropbox should not have been forced to spend millions of dollars in fees

23   defending against Synchronoss's assertion that Dropbox directly infringed the asserted system

24   claims by distributing only software.  This is not a case where there is a reasonable dispute about

25   what the *Markman* order means, or how it applies.  The Court has already dispatched with that

26   argument, holding that its "claim construction order unambiguously held that '[first/second]

27   system' did not cover software alone."  Dkt. No. 406 at 7.  Nor can Synchronoss resort to the law

28   regarding direct infringement to support its objectively baseless position.  It is blackletter law

9

1    that a party may not be liable for direct infringement under 35 U.S.C. § 271(a) unless it makes,

2    sells, or uses *the complete claimed system*.  Dkt. No. 316-4 at 7–12.  Synchronoss has identified

3    no law to the contrary.  Instead, it misconstrued the Federal Circuit's holding in *Uniloc USA, Inc.*

4    *v. Microsoft Corp.*, 632 F.3d 1292 (Fed. Cir. 2011)—which, as this Court acknowledged, "in fact

5    rejected an argument similar to Synchronoss's here," Dkt. No. 406 at 8.  Synchronoss also

6    misapplied *Akamai Technologies, Inc. v. Limelight Networks, Inc.*, 797 F.3d 1020 (Fed. Cir.

7    2015) (en banc) (per curiam), which the Court found did not bear on any allegations or evidence

8    Synchronoss had advanced in the case, Dkt. No. 406 at 8–9.  But Synchronoss did not merely

9    misapply binding Federal Circuit precedent.  Its arguments about these cases *expressly* depended

10   on its flagrant misinterpretation of the Court's claim construction to read on software alone—

11   after it had represented to the Court that "no one's arguing that."  Dkt. No. 165 at 30:16–19.

12       Synchronoss's advancement of a software-only infringement case after the Court

13   explicitly held, based in part on Synchronoss's own statements, that the asserted claims require

14   hardware renders this case exceptional under § 285.  Courts routinely award "fees for work

15   performed after the Court issued its [claim construction] order" in light of the patentee's refusal

16   to abandon an infringement position that "not only lacked merit, but flouted the Court's

17   construction."  *Spitz Techs.*, 2018 WL 6164300, at *4–6; *see also, e.g.*, *Intex Recreation Corp. v.*

18   *Team Worldwide Corp.*, 77 F. Supp. 3d 212, 217 (D.D.C. 2015) (awarding fees where the

19   "Court's claim construction foreclosed any reasonable [infringement] argument" but the plaintiff

20   pressed toward summary judgment "seeking only to re-litigate [the] Court's construction"); *Chi.*

21   *Bd. Options Exch., Inc. v. Sec. Exch., LLC*, No. 07 C 623, 2014 WL 6978644, at *5–6 (N.D. Ill.

22   Dec. 10, 2014) (awarding fees in part because defendant's litigation was premised on "arguments

23   that had clearly been foreclosed by previous rulings"); *AdjustaCam*, 861 F.3d at 1360 (vacating

24   district court's denial of fees where the plaintiff's "suit became baseless after the district court's

25   *Markman* order").  As in *Spitz Technologies*, Synchronoss's "choice to maintain its infringement

26   position after claim construction and to disregard the Court's construction of [disputed terms]

27   was objectively baseless" and merits an award of fees under § 285.  2018 WL 6164300, at *6.

28

2.    **Synchronoss's Position on the "Previous State of Said Data" Limitation of the Asserted '757 Patent Claims Was Objectively Meritless**

Synchronoss's position on the "previous state of said data" limitation appearing in all of the asserted claims of the '757 patent was also directly contrary to the Court's *Markman* order and therefore objectively baseless.[1]   As noted above, the precise point of dispute between the parties during claim construction was whether the term could cover "hash values" that were generated from a prior version of a file being synchronized.   Synchronoss argued that the term covered hashes.  Dkt. No. 144 at 8; Dkt. No. 153 at 2.  Dropbox disagreed.  Dkt. No. 149-3 at 2–6.  The Court heard that dispute and decided it in Dropbox's favor.   In adopting Dropbox's proposed construction, the Court emphasized that "[t]he '757 Patent does not indicate that differencing information is generated by using *other* data, beyond the previous version of that data," and that "the specification itself does not state that hash values . . . are part of the 'previous state of said data.'"  Dkt. No. 168 at 6 (emphasis in original).

Synchronoss was not free after that point to disregard the Court's order.   Yet that is precisely what it did.  Even after Dropbox informed Synchronoss that Synchronoss "ha[d] no credible basis for maintaining its infringement claims as to the '757 patent" in light of the Court's construction of the "previous state of said data" limitation, Ex. 11 at 1, Synchronoss served supplemental infringement contentions, expert reports, and then a responsive summary judgment brief making the stunning allegation that Dropbox could literally infringe a limitation that the Court held did not cover "hash values" by using "hashes of previous copies of files," Dkt. No. 367 at 5.  This is a textbook example of an objectively unreasonable position.

Because Synchronoss's infringement position on the "previous state of said data" limitation "not only lacked merit, but flouted the Court's construction," it independently renders this case exceptional under § 285.  *Spitz Techs.*, 2018 WL 6164300, at *4–6; *see also Intex*, 77 F.

---

[1] Although the Court did not reach this issue in granting summary judgment, the Court may consider it in deciding whether to award fees under § 285.  *See ThermoLife Int'l LLC v. GNC Corp.*, 922 F.3d 1347, 1350 (Fed. Cir. 2019) (affirming grant of fees where "the basis for the fee award had nothing to do with the only issues litigated to reach the judgment on the merits").

Supp. 3d at 217; *Chicago Board*, 2014 WL 6978644, at \*5; *AdjustaCam*, 861 F.3d at 1360.

### 3. Synchronoss's Position on the Indefiniteness of the '446 Patent Was Objectively Meritless

Synchronoss's arguments regarding the validity of the '446 patent provide yet another example of the objective baselessness of its substantive positions. As the Court held in its summary judgment order, "[a]s written, [the '446 patent claims] require[] generating 'a digital media file . . . comprising a second version of the media data in the same format as the first version.'" Dkt. No. 406 at 12 (third alteration in original). But the "first version of the media data" in this limitation "relates back to" a previous limitation, where "media data" is "described as 'comprising a directory of digital media files.'" *Id.* The parties and their experts were in agreement that a single digital media file cannot comprise a directory of digital media files. *Id.*

After Dropbox pointed out this problem in its June 9, 2017 invalidity contentions, Ex. 12 at 60–61, Synchronoss sought during *Markman* to direct the Court away from the ordinary meaning of the term "digital media file" in an attempt to save the validity of the claims. In particular, Synchronoss urged the Court to construe that term to mean "a file comprising digital media content," Dkt. No. 168 at 25, arguing that this definition did not limit the term to "single files," Dkt. No. 165 at 85:10–11. The Court rejected Synchronoss's position. It construed "digital media file" to mean "digital audio or video content in the form of a file such as an MPEG, MP3, RealAudio, or Liquid Audio file." Dkt. No. 168 at 25–27. Under the Court's construction, therefore, the plain language of the claims recited an impossibility.

Consistent with its pattern throughout the litigation, Synchronoss was undeterred by the Court's order. It chose to proceed by ignoring the plain language of the claims and attempting to rewrite them. Its own expert admitted as much, explaining that the "choice of the word 'comprising' [in the claims] appears to be misleading and would have been better represented by a different choice of words." Ex. 13 at 157:21–25. Because "*comprising* was admittedly the wrong choice of words," he explained, "perhaps the better word here would have been *resulting*

*in* a second version or some other choice." *Id.* at 156:24–157:3.[2]  Even Synchronoss appears to have known that this position was meritless:  when deposing Dropbox's non-infringement expert, Synchronoss ended the deposition early without asking him a ***single question*** about the '446 patent.

Synchronoss's apparent lack of confidence in its position on the '446 patent was justified.  As the Court found in granting summary judgment, Synchronoss's arguments were indistinguishable from those the Federal Circuit has squarely, and repeatedly, rejected.  Dkt. No. 406 at 12–13.  By no objective measure was Synchronoss's decision to press a defense squarely foreclosed by the Federal Circuit reasonable.  As another court in this District observed, "[a]sserting patent claims that 'a cursory review . . . would have revealed' to be invalid may constitute 'gross negligence or studied ignorance, neither of which justifies placing the burden' of litigation on the defendant."  *Cave Consulting Grp., Inc. v. Truven Health Analytics Inc.*, 293 F. Supp. 3d 1038, 1045–46 (N.D. Cal. 2018) (quoting *ICU Med., Inc. v. Alaris Med. Sys., Inc.*, No. SA CV 04-00689 MRP (VBKx), 2007 WL 6137003, at *5 (C.D. Cal. Apr. 16, 2007)).  Synchronoss's position on the '446 patent thus further supports an award of fees under § 285.

\* \* \*

Any one of these meritless positions would be enough to render this case exceptional under § 285.  But Synchronoss did not just run Dropbox down a single blind alley, it made a habit of it.  Every dollar that Dropbox spent on this case after the Court issued its *Markman* order was an expense "it should not have been forced to incur."  *Kilopass Tech.*, 738 F.3d at 1313.  Failing to impose a cost on Synchronoss for its conduct in this case would grant parties a license to ignore court orders they do not like.  The very point of § 285 is to deter such behavior.  The Court should therefore exercise its discretion to award Dropbox fees.

### B.   Synchronoss Engaged in Litigation Misconduct Justifying an Exceptional Case Designation

In addition to taking objectively unreasonable substantive positions in this case,

---

[2] All emphasis is added unless otherwise noted.

Synchronoss engaged in pervasive misconduct throughout the litigation that supports an award of fees under § 285.  As detailed below, Synchronoss needlessly and repeatedly multiplied motions practice in this case—a factor courts regularly use to justify exceptional case designations.  In addition, Synchronoss introduced evidence in this case that falsely inflated the value of the patents-in-suit and, when questioned about it, Synchronoss's Chief Legal Officer and Rule 30(b)(6) designee made misstatements under oath in an attempt to cover up Synchronoss's conduct.  It is "well-established that litigation misconduct and unprofessional behavior may suffice, by themselves, to make a case exceptional"; the combination of this conduct with Synchronoss's objectively meritless substantive positions leaves no doubt that this is an exceptional case.  *MarcTec, LLC v. Johnson & Johnson*, 664 F.3d 907, 919 (Fed. Cir. 2012).

### 1.    Synchronoss Unreasonably Multiplied the Proceedings

In determining whether a case is exceptional under § 285, courts regularly look to whether a party "engaged in unreasonable litigation tactics that have wasted the Court's time and have required [the opposing party] to expend significant resources."  *Cognex Corp. v. Microscan Sys., Inc.*, No. 13-CV-2027 JSR, 2014 WL 2989975, at *4 (S.D.N.Y. June 30, 2014) (awarding fees against a party that multiplied the proceedings though needless motion practice); *see also San Diego Comic Convention*, 2019 WL 1599188, at *5–6 (same).  Synchronoss's tactics throughout this case are the archetype of wasteful and unnecessarily duplicative litigation conduct.  Repeatedly and consistently, Synchronoss forced Dropbox to fight motions multiple times, often because Synchronoss simply disregarded Court orders it did not like.  Four examples of this conduct are particularly illustrative.

***First***, Synchronoss forced Dropbox to respond to not one, but ***three*** separate motions on the singular issue of whether Dropbox's expert Gregor Purdy was really a late-disclosed fact witness.  It first moved in a Joint Letter before Judge Westmore to preclude Dropbox from relying on Mr. Purdy's opinions.  Dkt. No. 273.  Judge Westmore terminated Synchronoss's request, holding that the dispute "is a motion *in limine* disguised as a discovery dispute" and indicating that Synchronoss "may refile this dispute as a motion *in limine* before the presiding judge should the case proceed to trial."  Dkt. No. 280.  Instead of complying with or appealing

1   Judge Westmore's order, Synchronoss simply ignored it.  Synchronoss did not file a motion *in*

2   *limine*, as Judge Westmore directed.  Instead, Synchronoss refiled its motion to strike before this

3   Court.  Dkt. No. 297.  And then, to make matters worse, Synchronoss filed a separate *Daubert*

4   motion **on the same issue**.  Dkt. No. 313.  So, to litigate an issue that Judge Westmore held

5   should have been raised as a motion *in limine*, Synchronoss filed three separate motions—none

6   of which was a motion *in limine*.

7       **Second**, Synchronoss took the same, unreasonably cumulative tack with respect to certain

8   usage data Dropbox's experts relied on in their expert reports.  To litigate its (incorrect) position

9   that Dropbox's experts could not rely on data about usage rates for various Dropbox features that

10  had not been produced during fact discovery because it was not clear from Synchronoss's

11  infringement contentions that the information was relevant, *see* Dkt. No. 356, Synchronoss did

12  not file a single motion raising its objection to the data.  It included the issue in ***three separate***

13  motions:  a motion to strike and two separate *Daubert* motions.  Dkt. Nos. 304-5, 321-4, 323-4.

14      **Third**, Synchronoss openly disregarded Judge Westmore's order that documents about

15  how Synchronoss valued its licenses ████████████ were "overwhelming[ly]" relevant and

16  should be produced.  Dkt. No. 225 at 10–11.  In so doing, Synchronoss forced Dropbox to file

17  multiple, unnecessary motions.  In particular, in July 2018, Synchronoss filed a Form 10-K with

18  the SEC, in which it expressly adjusted the purported value of multiple licenses ████████████

19  ████.  Dropbox requested documents concerning the valuation of these licenses, as they directly

20  related to the damages analysis in this litigation.  *See* Dkt. No. 219 at 1–3. Synchronoss refused,

21  contending that the restatement was "for accounting purposes only."  *See id.* at 4.   Judge

22  Westmore handily dismissed this argument and ordered Synchronoss to "produce the documents

23  relating to the accounting treatment of its licenses."  Dkt. No. 225 at 11.   In response,

24  Synchronoss produced only a handful of ████████████████████████—orders of

25  magnitude fewer than the "well over 100,000 documents in the possession of over 50

26  custodians" that Synchronoss represented fell within the scope of Dropbox's request when it

27  opposed Dropbox's motion to compel.  Dkt. No. 219 at 5.  Synchronoss's production did not

28  include any ████████████████████████████████████

15

1    ███████████████████.    Nonetheless, Synchronoss represented to both this Court and Judge

2    Westmore that it had "complied with the Magistrate Judge Westmore's order and produced all

3    relevant documents." Dkt. No. 241 at 10–11; *accord* Dkt. No. 259-6 at 4.

4         These representations were false.  Nearly five months after Judge Westmore's original

5    order—and only after Dropbox was forced to file a ***second*** motion to compel, Dkt. No. 259-6—

6    Synchronoss produced 45 plainly non-privileged documents that go to the core of the accounting

7    treatment and valuation of Synchronoss's licenses.  *See, e.g.*, Exs. 29, 30.  These documents

8    should have been produced after Judge Westmore's first order, if not sooner.[3]

9         At the same time, Synchronoss engaged in similar gamesmanship when pressed to

10   confirm ███████████████████████████████████████████████████████,

11   repeatedly and improperly invoking privilege as a basis to refuse discovery.  For example,

12   Synchronoss's 30(b)(6) designee and Chief Legal Officer was asked at his deposition to confirm

13   the simple fact of ████████████████████████████████████████████████████████

14   ██████████████████████.    The witness, without any instruction from litigation

15   counsel, refused to answer on the basis of privilege.  Ex. 14 at 263:4–14 ("████████████

16   █████████████████████████████████████████████████████████████████████

17   █████████████████████████████████████████████████████████████████████

18   █████████████████████████████████████████████████████████████████████").

19   Synchronoss continued to refuse to answer this basic question following Mr. Prague's

20   deposition, forcing Dropbox to burden Judge Westmore to compel a response.  Dkt. No. 246-5.

21   Once again, Judge Westmore easily dismissed Synchronoss's attempts to avoid its discovery

22   obligations, holding that "[t]he Court disagrees with Synchronoss' argument that the attorney-

23   client privilege extends *carte blanche* to the requested issue."  Dkt. No. 265 at 2.

24        In the end, Dropbox was forced to file multiple motions to obtain basic and plainly

25   ─────────────────────────

26   [3]  Even after Synchronoss produced these documents, it indicated that it was withholding further
     responsive materials but declined to provide a privilege log, citing the parties' agreement not to
     produce such logs for materials dated after the filing of the complaint.  Dkt. No. 298-4 at 3–5.

27   Dropbox was thus forced to file an additional motion before Judge Westmore, who denied the
     motion as untimely given that fact discovery had closed months before.  Dkt. No. 308.

28

16

relevant information about the valuation of licenses ████████████ and to enforce court orders that Synchronoss chose to simply ignore.

**Fourth**, Synchronoss needlessly multiplied the proceedings concerning the submission of expert testimony in support of claim construction.[4]  As the deadline for the parties' joint claim construction statement approached, Dropbox wrote Synchronoss to reach agreement about when expert declarations were due.  In particular, Dropbox explained that it was somewhat unclear from the Patent Local Rules whether expert declarations were due on the Rule 4-2(b) deadline to provide "a description of the substance of [an expert] witness' proposed testimony," or whether such declarations were due on the Rule 4-3(b) deadline to submit the "testimony of percipient and expert witnesses."  Dropbox indicated that it believed such testimony was due on the Rule 4-3(b) deadline, but it suggested that the parties "work out a mutually agreeable timetable that eliminates the ambiguities in the Patent Local Rules [and] is reasonable for all of the parties."  Ex. 15.  Synchronoss refused to negotiate such a timetable, asserting that it "disagree[d] that there is any ambiguity" in the Patent Local Rules.  Ex. 16.  Dropbox was thus forced to file a motion with Judge Westmore on the issue.  Judge Westmore agreed with Dropbox:  she ordered that "claim construction-related expert reports and declarations, if any, must be served by August 8, 2017, the Patent Local Rule 4-3 disclosure date."  Dkt. No. 135 at 3.  On that day, Dropbox submitted its declaration, but Synchronoss did not serve one at all.  Instead, Synchronoss belatedly served a declaration on August 25, 2017—more than two weeks after the Court-ordered deadline.  *See* Dkt. No. 140 at 1.  Dropbox was then forced to move to strike the declaration to enforce the order that Synchronoss necessitated in the first place.  Judge Westmore found that Synchronoss had disregarded her earlier order by failing timely to serve its expert's declaration, and struck it.  *Id.*  Synchronoss appealed that order to this Court, which did not disturb Judge Westmore's ruling.  Dkt. Nos. 142, 157.  Dropbox was thus forced to file or respond to **three separate motions** to enforce a schedule it was willing to negotiate with Synchronoss in the first place.

---

[4]  Although this conduct occurred before the period for which Dropbox is seeking its fees, it provides further evidence of Synchronoss's behavior throughout the litigation.

While these examples do not capture all of the improper litigation tactics employed by Synchronoss in this case, they illustrate a pattern of unreasonably and needlessly multiplying these proceedings in a manner that justifies an exceptional case designation. "This type of cyclical motions practice" is precisely the sort of "objectively unreasonable" behavior that courts have found to justify awarding attorney's fees under *Octane*. *See San Diego Comic Convention*, 2019 WL 1599188, at *2–3, 6 (awarding fees under *Octane* standard in Lanham Act case). This is true particularly where, as here, many of Synchronoss's motions simply rehashed issues that it had already lost. *See Cognex*, 2014 WL 2989975, at *4 (awarding attorney's fees in part because defendants filed "post-trial motions simply [to] relitigate issues that had already been decided").

### 2. Synchronoss Asserted Falsely Inflated Licenses in this Case and Attempted to Obscure that Fact with False Testimony

As this Court is aware, Dropbox alleged in its unclean hands defense that Synchronoss engaged in a scheme to inflate the value of the patents-in-suit by fabricating licenses purporting to value Synchronoss's patents at tens of millions of dollars. As discovery revealed that Synchronoss engaged in a pattern of creating sham licenses that it could then assert in litigation, Synchronoss undertook to conceal the contours of its scheme through evasion, hiding relevant documents, and providing false testimony attempting to cover up the license scheme. Although the Court did not reach the merits of the defense (and need not do so for this motion), Synchronoss's pattern of litigation misconduct in attempting to defend against an unclean hands finding serves as an additional ground to deem this case exceptional under § 285. *See, e.g.*, *Monolithic*, 726 F.3d at 1367 (deeming case exceptional where defendant misrepresented the date of certain evidence and then attempted to obscure that fact using motions practice); *Eon-Net LP v. Flagstar Bancorp*, 653 F.3d 1314, 1325 (Fed. Cir. 2011) (affirming exceptional case designation where plaintiff "lodged incomplete and misleading . . . evidence with the [district] court").

The pattern of creating fake licenses is well documented and addressed in Dropbox's opposition to Synchronoss's summary judgment motion. Dkt. No. 361-4 at 14–19. In particular, Synchronoss engaged in a scheme to artificially inflate the value of the patents-in-suit by

repeatedly a entering license agreement covering those patents while simultaneously acquiring the party to whom it was giving the license.  This pattern played out over multiple transactions— three of which are documented in Dropbox's summary judgment opposition.  In the midst of discussions about acquiring an entity, Synchronoss would insist on a $10 million license for the patents-in-suit.  Synchronoss would then license the patents to the entity that it was acquiring, or to an entity it knew was not practicing the patents.  The purchase price would be adjusted upward so that the seller/licensee got the same amount of money as it would have absent the fake license.  Synchronoss then asserted those licenses in this litigation as support for its damages contentions.  Ex. 17 at 6.

Through discovery, particularly from third parties, Dropbox was able to establish the evidence supporting these parallel license-then-purchase transactions.  As these facts were unfolding in discovery, Synchronoss attempted to defend itself with testimony from its Chief Legal Officer and Rule 30(b)(6) designee Ronald Prague, who repeatedly misrepresented under oath the circumstances of the relevant transactions.  For example, Dropbox asked Mr. Prague about the Openwave Agreement, where the license and acquisition proceeded simultaneously.  During his deposition, Mr. Prague first attempted evasion, and then outright misrepresented that



Ex. 14 at 295:25–296:8.  The evasion (" ") is from the same Rule 30(b)(6) designee who improperly self-asserted privilege over a non-privileged fact, *see supra* p. 16, and is a hallmark of litigation misconduct.  The assertion that is directly contradicted by e-mails Dropbox obtained from third-party Marlin Equities, the private equity fund that owned Openwave, after Mr. Prague's deposition.  Those e-mails establish that . Synchronoss set the purchase price

1  ████████████ the license and stated that ██████████████████████████████████

2  ████████████████████████████████████████. Ex. 18 at Marlin0000082.  In fact, Mr.

3  Prague himself ███████████████████████████████████████████████████████████████

4  ████████████████████████████████████. Ex. 19 at Marlin0000216.   And the

5  misrepresentations under oath did not stop there.  Mr. Prague went on to state:



11  Ex. 14 at 298:25–299:11.  These statements are refuted, verbatim, by Synchronoss's Form 10-K,

12  which Synchronoss was forced to amend, and which states that Synchronoss "entered into $10.0

13  million patent settlement agreement" and "that the transaction was *negotiated in the overall*

14  *consideration paid for the purchase of Openwave*." Ex. 20 at SYNCH_DROPBOX0027740.

15      Synchronoss followed the same pattern with respect to its agreement with the other

16  transactions, including those with NewBay and RIM.  The effective date of Synchronoss's

17  license  agreement  with  NewBay  and  RIM  was  ████████████, Ex.  21  at

18  SYNCH_DROPBOX0005135, ██████  before the closing of a share purchase agreement to

19  acquire NewBay, Ex. 22.  Again, evidence shows that Synchronoss ███████████████████

20  ████████████████████████ Ex. 23 at 38:5–6.  In fact, ███████████████████████████

21  ████████████████████████████████████████████████████████████████████████████████

22  ████████████████████████████ *Id.* at 52:5–8.  Synchronoss insisted ████████████████

23  ████████████████████████████████████████████████████████████████████████████████

24  ██████████████████. *Id.* at 49:7–11.  But ██████████████████████████████████████

25  ████████████████████████████ Ex. 24 at DBX0024656; Ex. 23 at 96:13–17, 97:10–12.

26  ████████████████████████████████████████████████████████████████████████████████

27  ████████████████████ Ex. 23 at 58:13–15. ███████████████████████████████████████

28  ████████████████████████████████████████████. As such, the $10 million

license was entirely illusory.

In fact, Mr. Prague admitted as much.  Mr. Prague told RIM that

Ex. 25 at DBX0023660.   At his deposition, he explained that "

" Ex. 14 at 209:10–16.

Ex. 23 at 52:5–8; Ex. 25 at DBX0023683, -707, -815.  That is licensing it to yourself, but with an added layer of misdirection to make it appear to be an arms-length transaction.

Nonetheless, Mr. Prague attempted to falsely suggest

, as reflected in these three separate excerpts:

. . .

. . .

Ex. 14 at 177:3–11, 183:5–12, 224:18–22.  Again, these assertions are directly refuted by an abundance of evidence.  RIM confirmed that

Ex. 23 at 51:20–23, and that Synchronoss



21



1       *id.* at 40:13–16.  E-mails obtained from RIM confirm as much.  Ex. 25 at DBX0023625

2  (stating that                                                                          ); *id.* at DBX0023638

3  (

4  ); *id.* at DBX0023660 (

5

6

7  .  Ex. 23 at 49:7–11, 52:5–8.

8       Finally, Synchronoss engaged in this same, now-familiar scheme with F-Secure.  On

9  , Synchronoss and F-Secure entered into a license agreement, Ex. 26; on that

10  same day, Synchronoss "acquired certain cloud assets from F-Secure," Ex. 27 at

11  SYNCH_DROPBOX0012264; Ex. 28.  As Synchronoss has admitted, "the settlement and the

12  acquisition were contemplated and negotiated together," Ex. 20 at

13  SYNCH_DROPBOX0027743, a fact that Mr. Prague, again, directly contradicted at his

14  deposition, Ex. 14 at 287:10–13 ("

15  ").

16       Synchronoss's pattern of fabrication, assertion, and misrepresentation amounts to

17  litigation misconduct that further supports an award of attorney's fees.  In *Monolithic*, for

18  example, the Federal Circuit affirmed an award of attorney's fees under § 285 based on similar

19  efforts by a party to fabricate, use, and cover up its fabrication of evidence.  726 F.3d at 1367.

20  There, much like the misrepresented value Synchronoss attributed to its patent licenses in this

21  case at the outset, the defendant misrepresented the date on which a certain schematic had been

22  computer generated.  *Id.*  Then, also like Synchronoss, the defendant advanced its fabrication in

23  the litigation.  Until, that is, plaintiff retained an expert to "debunk [the defendant's] version of

24  events."  *Id.*  But, like Synchronoss, the defendant in *Monolithic* did not back down; instead, it

25  doubled down, attempting to "bury the past."  *Id.*  Just as Synchronoss used Mr. Prague's

26  contradicted testimony to obscure its fabricated licenses, the defendant in *Monolithic* used

27  baseless motions.  *Id.*  In part based on the defendant's misconduct, the district court in

28  *Monolithic*—in a decision affirmed by the Federal Circuit—deemed the case exceptional and

1   awarded attorney's fees.  *Id.*  The same result is appropriate here.

2          C.      **Dropbox's Fee Request Is Reasonable**

3          As a result of the baseless positions and improper litigation conduct by Synchronoss,

4   Dropbox seeks $4,900,866.57 in fees to compensate it for the cost of litigating this matter

5   following the Court's *Markman* order.  This fee request is reasonable.  In determining the

6   amount of a reasonable fee award under any federal fee shifting statute, there is a "strong

7   presumption that the lodestar represents the reasonable fee." *City of Burlington v. Dague*, 505

8   U.S. 557, 562 (1992) (internal quotation marks omitted).  The lodestar is calculated by

9   multiplying "a reasonable hourly rate" by "the number of hours reasonably expended on the

10  litigation." *See Kilopass Tech., Inc. v. Sidense Corp.*, 82 F. Supp. 3d 1154, 1164–65 (N.D. Cal.

11  2015) (internal quotation marks omitted).  In determining the reasonable hourly rate, it is proper

12  to consider "the rate prevailing in the community for similar work performed by attorneys of

13  comparable skill, experience, and reputation." *Id.* at 1165 (internal quotation marks omitted).  In

14  determining the reasonable number of hours, "[t]here is no precise rule or formula," and "[t]he

15  [C]ourt necessarily has discretion in making this equitable judgment." *Hensley v. Eckerhart*, 461

16  U.S. 424, 433–37 (1983).

17         As detailed in the attached Declaration of Adam Harber ("Harber Decl."), Dropbox's fees

18  in this matter are reasonable.  The American Intellectual Property Law Association releases an

19  annual economic survey ("AIPLA Report") detailing attorney's fee rates for intellectual property

20  litigators, stratifying the data by a number of factors including geography.  The AIPLA Report is

21  frequently relied upon by courts in this District for purposes of assessing the reasonableness of

22  attorney's rates.  *See, e.g.*, *Kilopass Tech.*, 82 F. Supp. 3d at 1171 (applying the 2013 AIPLA

23  Report); *Yufa v. TSI, Inc.*, No. 09-cv-01315-KAW, 2014 WL 4071902, at *5 (N.D. Cal. Aug. 14,

24  2014) (applying the 2013 AIPLA Report).  The 2017 AIPLA Report shows that the first quartile,

25  median, third quartile, and ninetieth percentile hourly rates for a partner in the San Francisco Bay

26  area are $634, $525, $798, and $1,022.  For associates in the San Francisco Bay area, the first

27  quartile, median, and third quartile hourly rates are $476, $488, and $529, respectively.

28         The rates charged by Williams & Connolly LLP partners and associates for this matter all

23

fall on this spectrum.  *See* Harber Decl., ¶ 8.  The attorney rates for this matter range between $730.26, for a partner in 2019, and $396.00, for the most junior associate in 2017.  In the same vein, the rates charged by Dropbox's local counsel range from $575 to $385.  *See* Patchen Decl., Ex. A.  These rates, too, are well within the range set forth in the AIPLA Report.  The biographical information contained in the Harber Declaration and in Exhibit A thereto reflect that where Williams & Connolly LLP's rates are at the upper end of the spectrum, that fact is justified by the particular attorney's responsibilities, professional qualifications, and accolades.  Moreover, Williams & Connolly LLP is, as demonstrated by Exhibits B to H to the Harber Declaration, a well-respected firm in the area of patent litigation.  And, in this case, Williams & Connolly LLP provided that same high level of service, obtaining a grant of summary judgment in Dropbox's favor.  *See Kilopass Tech.*, 82 F. Supp. 3d at 1170 (noting that "[i]n establishing a reasonable hourly rate, the court may take into account: (1) the novelty and complexity of the issues; (2) the special skill and experience of counsel; (3) the quality of representation; and (4) the results obtained").

The amount of hours expended in this litigation after December 8, 2017 was likewise reasonable.  During that time period, Dropbox took or defended the depositions of twenty-six fact witnesses and six experts; it made approximately twenty document productions while reviewing productions made by Synchronoss; and it drafted and responded to voluminous expert reports on the disputed issues of infringement, validity, and damages for twenty-three asserted claims of two distinct patents-in-suit.  In addition, the parties engaged in substantial motions practice, in part compounded by Synchronoss's pattern of unnecessarily multiplying these proceedings, which is described above at pages 14–18.  The motions practice in this case included filing or responding to multiple discovery disputes (Dkt. Nos. 134, 140, 207, 247, 258, 260, 271, 273, 299, 307), cross-motions for summary judgment (Dkt. Nos. 317, 333), three motions to strike (Dkt. Nos. 275, 297, 306), and six *Daubert* motions (Dkt. Nos. 313, 315, 322, 324, 326, 330).  The 9,642.80 hours billed by timekeepers working for Dropbox (including local counsel) during the operative period is eminently reasonable in light of the volume of work performed.  Should the Court require further detail, Williams & Connolly LLP and Taylor &

24

1    Patchen, LLP will produce time records *in camera.*

2    In addition, as discussed in the Harber Declaration, all Williams & Connolly LLP

3    timekeepers keep detailed, contemporaneous time records for all time billed to client matters.

4    *See* Civil L.R. 54-5(b)(2).   Attorneys and paralegals record their time to the nearest tenth of an

5    hour in an electronic time record system along with a detailed explanation of the work

6    performed.   Williams & Connolly LLP's electronic time record system enables the firm to track

7    all fees incurred on behalf of its clients, and further allows for generation of monthly invoices

8    detailing the hours worked on a particular matter, the nature of the work performed, and the fees

9    incurred for that work.   The hourly totals set forth in the Harber Declaration are those for which

10   Dropbox was actually billed.   As part of the billing process, preliminary invoices were reviewed

11   for accuracy by the partner responsible for billing the client.   That partner also reviewed the

12   timekeeper entries to ensure that the hours expended working on the case were not excessive,

13   redundant or otherwise unnecessary, and to ensure that the tasks each timekeeper performed

14   were commensurate with his or her experience and seniority.   The Harber Declaration, therefore,

15   reflects that the only hours for which reimbursement is being sought were spent on work

16   necessary to advancing this case.   *See also* Patchen Decl., ¶ 7 (noting that local counsel

17   maintains a similarly rigorous billing system).

18   In short, Dropbox's requests that this Court award it attorney's fees in the total amount of

19   $4,900,866.57 is reasonable.   *See* Harber Decl., ¶ 15; Patchen Decl., ¶ 12, Ex. A.[5]

20   **V.    CONCLUSION**

21   For the foregoing reasons, Dropbox respectfully requests that the Court deem this case

22   exceptional under 35 U.S.C. § 285 and award Dropbox all fees incurred following the Court's

23   *Markman* order on December 7, 2017.

24

25   [5] Pursuant to Civil Local Rule 54-1 and 28 U.S.C. § 1920, Dropbox has concurrently filed its bill
26   of costs.   To the extent the Clerk of the Court does not find the expenses enumerated in
     Dropbox's bill of costs to be taxable, Dropbox requests that the Court award those costs as part
27   of its reasonable fees.  *See Cent. Soya Co. v. Geo. A. Hormel & Co.*, 723 F.2d 1573, 1578 (Fed.
     Cir. 1983); *see also Maxwell v. Angel-Etts of Cal., Inc.*, 53 F. App'x 561, 563 (Fed. Cir. 2002).
28

25

1

Dated: July 3, 2019                    Respectfully submitted,

2
By: */s/ Thomas H.L. Selby*
3
Thomas H.L. Selby (*Pro Hac Vice*)
David M. Krinsky (*Pro Hac Vice*)
Adam D. Harber (*Pro Hac Vice*)
4
Christopher J. Mandernach (*Pro Hac Vice*)
5
Sarah L. O'Connor (*Pro Hac Vice*)
D. Shayon Ghosh (SBN 313628)
6

7
WILLIAMS & CONNOLLY LLP

8
Stephen E. Taylor (SBN 058452)
Jonathan A. Patchen (SBN 237346)
9
Karan S. Dhadialla (SBN 296313)

10
TAYLOR & PATCHEN, LLP
11
Attorneys for Defendant DROPBOX, INC.
12

13
## ATTESTATION
14

15
I, D. Shayon Ghosh, am the ECF user whose ID and password are being used to file the

above **DROPBOX, INC.'S MOTION FOR ATTORNEY'S FEES**.  In compliance with Civil
16
Local Rule 5-1(i)(3), I hereby attest that each listed counsel above has concurred in this filing.
17
*/s/ D. Shayon Ghosh*
18

19

20

21

22

23

24

25

26

27

28